AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

### Southern District of Florida

| | |
|---|---|
| BRADFORD BARFOOT and LEONARD KARPEICHIK, on behalf of themselves and all others similarly situated, | ) ) ) ) |
| *Plaintiff(s)* | ) |
| v. | ) Civil Action No. 15-24662-CV-ALTONAGA |
| DOLGENCORP, LLC (d/b/a DOLLAR GENERAL), a Kentucky Corporation | ) ) ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

Date: 12/22/15
Time: 1000
By: Cmc        101

To: *(Defendant's name and address)*  DOLGENCORP, LLC
By Serving Registered Agent:
Corporation Service Company
1201 Hays Street
Tallahassee, FL 32301-2525

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:     Brian T. Ku, Esq.
Ku & Mussman, P.A.
6001 NW 153 Street, Suite 100
Miami Lakes, FL 33014
Tel: (305) 891-1322
Fax: (305) 891-4512

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.



Date: **December 18, 2015**

**SUMMONS**

s/Ahlai Israel
Deputy Clerk
U.S. District Courts

Steven M. Larimore
Clerk of Court

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*

My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*



**Steven M. Larimore**
**Clerk of Court**

etc:  **December 18, 2015**

## SUMMONS

s/Ahlai Israel
Deputy Clerk
U.S. District Courts

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

BRADFORD BARFOOT and LEONARD ) 
KARPEICHIK, on behalf of themselves )
and all others similarly situated, )
                    )     Case No:
          Plaintiffs, )
                    )     Class Action
vs. )
                    )
DOLGENCORP, LLC (d/b/a DOLLAR, )
GENERAL), a Kentucky corporation, )
                    )
          Defendant. )
_____)

### CLASS ACTION COMPLAINT

Plaintiffs, Bradford Barfoot and Leonard Karpeichik ("Plaintiffs"), individually and on behalf of all others similarly situated, make the following allegations based on their personal knowledge of their own acts and, otherwise, upon information and belief based on investigation of counsel:

### NATURE AND SUMMARY OF THE ACTION

1.     Plaintiffs, by and through undersigned counsel, bring this action both on their own behalf and on behalf of the class defined below, comprised of all individuals similarly situated within the State of Florida, to redress the deceptive and/or unfair trade practices, acts, and/or omissions employed by Defendant, DOLGENCORP, LLC (hereinafter "Dollar General" or "Defendant"), in connection with its marketing and sale of its company-branded motor oil sold in its stores.

2.     Dollar General sells an entire line of company-branded motor oils (labeled "DG") that are obsolete and potentially harmful to its customers' automobiles by using deceptive, misleading and/or unfair sales and marketing tactics including: (a) representations and/or

1

omissions made on the product; (b) the  positioning of its DG line of obsolete motor oils immediately adjacent to the more expensive standard- and premium-quality motor oils manufactured by its competitors; and (c) failing to adequately warn its customers that its DG motor oil is unsuitable for use by the vast majority, if not all, of its customers.

3.     Dollar General deceptive and/or unfair business practices violate Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* ("FDUTPA"); Florida's Misleading Advertising Law, Fla. § Stat. 817.41); and (forthcoming) constitute a breach of the Implied Warranty of Merchantability, Fla. Stat. § 672.317.

## PARTIES

4.     Plaintiff Bradford Barfoot is a Florida citizen residing in Miami-Dade County, Florida in the Southern District of Florida. During the class period, Plaintiff Barfoot purchased Dollar General's DG 10w-30 motor oil from Dollar General's store in Miami, Florida on or around the Spring or Summer of 2015.

5.     Plaintiff Leonard Karpeichik is a Florida citizen residing in Palm Beach County, Florida in the Southern District of Florida. During the class period, Plaintiff Karpeichik purchased Dollar General's DG 10w-40 motor oil from Dollar General's store in West Palm Beach, Florida on or around the Summer of 2015.

6.     Defendant DOLGENCORP, LLC, d/b/a Dollar General Corporation, is incorporated under the laws of the State of Kentucky, with its headquarters located at 100 Mission Ridge, Goodlettsville, Tennessee.

7.     At all relevant times, Defendant has advertised, marketed, provided, offered, distributed, and/or sold its obsolete DG-branded motor oil in its stores throughout the United States, including to individuals in Florida such as Plaintiffs and the Class.

2

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over Defendant since at all relevant times Defendant

has regularly and systematically transacted business within the State of Florida through the

marketing, providing, offering, distributing, and selling of the obsolete DG-branded motor oil.

Defendant maintains over five-hundred (500) stores throughout the State of Florida and derives

substantial revenue from Florida residents.

9.     This Court has subject matter jurisdiction over this class action under the Class

Action Fairness Act ("CAFA") because there are more than one-hundred class members, all of

the members of the class are citizens of a state (Florida) different from that of Defendant

(Tennessee), and the aggregate of class members' claims is more than $5 million. 28 U.S.C. §

1332(d). Notably, in addition to FDUTPA claims (which in and of themselves likely reach the

$5 million threshold), Plaintiffs seek punitive damages for violations of Florida's Misleading

Advertising Law.

10.     Venue is proper in this Court under 28 U.S.C. §1391(b) because a substantial part

of the events or omissions giving rise to the claim occurred in this district and a substantial part

of property that is the subject of the action is situated in this district. Plaintiffs are resident of

this district; the sales of the motor oil products occurred in this district; and Defendant has

received substantial compensation from sales in this district.

## FACTUAL ALLEGATIONS

11.     Dollar General operates a chain of variety stores headquartered in Goodlettsville,

Tennessee. As of January 2015, Dollar General operated over 12,198 stores in 43 states, with

close to five-hundred (500) stores located in the State of Florida.

12.     Dollar General is a discount retailer focused on low and fixed income consumers in small markets. Dollar General's business model includes locating its stores in rural, suburban communities, and in its more densely populated markets, Dollar General's customers are generally from the neighborhoods surrounding the stores. Dollar General's stores are located with the needs of its core customers (low and fixed income households) in mind.

13.     Dollar General offers basic everyday and household goods, along with a variety of general merchandise at low prices to provide its customers with one-stop shopping opportunities generally in their own neighborhoods.

14.     In addition to offering name brand and generic merchandise, Dollar General distributes and markets its own lines of inexpensive household products, which bear the designation "DG." DG lines include "DG Auto," "DG Hardware" "DG Health" and "DG Office."

15.     Dollar General's DG Auto line consists of three types of obsolete motor oil:  DG SAE 10W-30, DG SAE 10W-40 and DG SAE-30 (hereafter, "Motor Oil Products") that fail to protect and can actively damage, modern-day automobiles.

16.     Motor oils lubricate the engines of the automobiles driven by individuals. Their main function is to reduce wear on an engine's moving parts. Motor oils also inhibit corrosion, improve sealing and keep engines properly cooled.

17.     Motor oils have evolved in parallel with the automobiles they are meant to protect. Institutions like the Society of Automotive Engineers ("SAE") employ rigorous tests to ensure that motor oils meet evolving standards relating to, among other criteria, sludge buildup, temperature volatility, resistance to rust, resistance to foaming, resistance to oil consumption, homogeneity and miscibility.

18.    Motor oils designed to protect engines from earlier eras do not protect, and can harm, modern-day engines. Thus, motor oil that would be suitable to use in an engine manufactured in the 1980's or earlier is not suitable for use in modern-day engines.

19.    Dollar General engages in the deceptive and/or unfair trade practices, acts, and/or omissions relating to the marketing, selling and causing to be manufactured obsolete Motor Oil Products without adequate warning that its product is unsuitable for, and can harm, the vehicles driven by the overwhelming majority of Dollar General's customers (and the public at large)

20.    Dollar General also engages in the unfair, unlawful, deceptive and fraudulent practices of concealing the obsolete and harmful nature of its Motor Oil Products from its customers through deceitful product placement tactics and misleading product labels which obscure a critical fact from Dollar General's customers: Dollar General's Motor Oil Products are unfit for, and can harm, the vehicles driven by the vast majority, if not all, of its customers.

21.    Dollar General's in-house Motor Oil Products use the same or similar SAE nomenclature on the front of its labels (*e.g.*, 10W-30, 10W-40, SAE 30) as do the other mainstream, non-harmful, and actually useful brands of motor oil sold by Dollar General.

22.    Dollar General places its DG brand Motor Oil Products next to these useful brand motor oil products on its shelves.

23.    Additionally, the front label of DG's SAE 10w-30 and 10w-40 motor oil says, "Lubricates and protects your engine."

24.    However, among the small print on the back label of Dollar General's Motor Oil Products is the statement that DG SAE 10W-30 and DG SAE 10W-40 are admittedly "not suitable for use in most gasoline powered automotive engines built after 1988" and "may not provide adequate protection against the build-up of engine sludge" and that DG SAE 30 is

admittedly "not suitable for use in most gasoline powered automotive engines built after 1930," and its "use in modern engines may cause unsatisfactory engine performance or equipment harm."

25.    Dollar General conceals this language by rendering it in small font and confining it to the Motor Oil Products' back label, which is not visible when the products are on the store shelves.

26.    Dollar General further conceals this language by placing it below a misleading and contradictory message regarding the product. For the DG SAE 10W-30 and DG SAE 10W-40 products, that message reads, "SAE 10W-30 motor oil is an all-season, multi-viscosity, heavy duty detergent motor oil recommended for gasoline engines in older model cars and trucks. This oil provides oxidation stability, antiwear performance, and protection against deposits, rust and corrosion." For the DG SAE 30 product, that message reads: "DG Quality SAE 30 is a non-detergent motor oil designed for use in older engines where consumption may be high and economical lubricants are preferred."

27.    Few, if any, Dollar General customers drive vehicles for which these products are safe, and the use of the term "older" is a relative term that does not inform a reasonable consumer that these motor oils are not safe for cars manufactured within the past *27 years*, or in the case of Dollar General's DG SAE 30, the past *85 years*.

28.    Dollar General further disguises the obsolete and harmful nature of its motor oils with its positioning of these motor oils on its shelves in a misleading manner. Specifically, Dollar General places similar quantities of its in-house brand motor oils, DG SAE 10W-30, DG SAE 10W-40 and DG SAE 30, none of which are suitable for modern-day automobiles, adjacent

6

to an array of other motor oils which are suitable for modern-day vehicles. The photograph

below illustrates how Dollar General effects this deception:



29.    Dollar General places its in-house brand motor oils on the same shelves, in the

same or similar quantities, as PEAK, Pennzoil, Castrol and/or other legitimate motor oils that are

suitable for modern-day automobiles. Each type of motor oil uses the SAE nomenclature on the

front, *e.g.*, 10W-40. The only apparent difference is the price, as Dollar General's motor oils are

less expensive than the others.

30.    Defendant's product display conceals the fact that the Motor Oil Products have an

extremely obscure and limited use and are likely to cause damage to the engines of most of its

customers' cars. Defendant's product positioning and the deceptive label on the Motor Oil Products are likely to deceive reasonable customers.

31.     Dollar General also fails to warn its customers adequately of the obsolete nature and dangers the Motor Oil Products pose to the very automobiles its customers are trying to protect by purchasing the Motor Oil Products. An adequate warning for Dollar General's obsolete Motor Oil Products would be displayed conspicuously and would inform Dollar General's customers of the appropriate uses, if any, of the various types of Dollar General motor oils. But Dollar General provides its customers with no such conspicuous warnings. Instead, the company buries the aforementioned statements on the back of its Motor Oil Products in small type where customers are unlikely to encounter them.

32.     DG SAE 10W-30 bears the following labels on its front (left) and back (right):



The photograph below is a close-up of DG SAE 10W-30's back label, which includes the warnings, "IT IS NOT SUITABLE FOR USE IN MOST GASOLINE POWERED AUTOMOTIVE ENGINES BUILT AFTER 1988" and "IT MAY NOT PROVIDE ADEQUATE PROTECTION AGAINST THE BUILD-UP OF ENGINE SLUDGE":



33.     DG SAE 10W-40 bears the following labels on its front (left) and back (right):



The following photograph is a close-up of DG SAE 10W-40's back label, which includes the

warnings, "IT IS NOT SUITABLE FOR USE IN MOST GASOLINE POWERED

AUTOMOTIVE ENGINES BUILT AFTER 1988" and "IT MAY NOT PROVIDE ADEQUATE

PROTECTION AGAINST THE BUILD-UP OF ENGINE SLUDGE":



34.    DG SAE 30 bears the following the labels on its front (left) and back (right):



The photograph below is a close-up of DG SAE 30's back label which includes the warnings, "IT IS NOT SUITABLE FOR USE IN MOST GASOLINE POWERED AUTOMOTIVE ENGINES BUILT AFTER 1930" and "USE IN MODERN ENGINES MAY CAUSE UNSATISFACTORY ENGINE PERFORMANCE OR EQUIPMENT HARM":



35.     Dollar General's Motor Oil Products are unsuitable for the modern-day vehicles driven by its customers and have no business being sold, except that Dollar General is successfully deceiving a sufficient number of customers to make this fraudulent practice worthwhile. It is unfair, unlawful, deceptive and fraudulent for Dollar General to distribute, market, and sell an entire line of motor oil that is unfit for, and presents concrete dangers to, the automobiles driven by the vast majority of its customers.

36.     Dollar General knew or should have known that its customers are being deceived by its marketing strategy based on the quantity of its obsolete DG motor oil sold compared to the limited number of automobiles for which these oils are appropriate.

37.     Florida's consumer protection laws are designed to protect consumers from this type of false advertising and unfair and deceptive conduct.

38.     Defendant's unfair and deceptive course of conduct victimized purchasers of Dollar General's motor oil from Dollar General, throughout the country.

39.     As a direct and proximate result of Dollar General's deceptive and fraudulent practices, Plaintiffs and the Class Members suffered a loss of money and suffered actual

damages in the amount of the purchase price (if not damage to their automobiles). Indeed, the Motor Oil Products are worthless.

40.     Plaintiffs therefore bring the statutory and common law claims alleged herein to halt Dollar General's unfair and deceptive practices and to obtain compensation for the losses suffered by Plaintiffs and all Class Members.

## CLASS ACTION ALLEGATIONS

41.     Plaintiffs bring this class action pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of himself and all members of the following Class:

> **All natural persons residing in the State of Florida who after December 18, 2011, purchased Defendant's DG-branded motor oil, DG SAE 10W-30, DG SAE 10W-40 and/or DG SAE 30 ("Motor Oil Products") for personal use and not for re-sale.**

42.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

43.     Specifically excluded from the proposed Class are Dollar General, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, successors, assigns, or other persons or entities related to or affiliated with Dollar General and/or its officers and/or directors, or any of them. Also excluded from the proposed Class are the Court, the Court's immediate family, and Court staff.

### *FRCP 23(a) Factors*

44.     **Numerosity:** Membership in the Class is so numerous that separate joinder of each member is impracticable. The precise number of Class Members is unknown at this time but can be readily determined from Defendant's records. Plaintiffs reasonably estimate that there are thousands if not tens of thousands of persons in the Class.

12

45. **Adequacy of Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class. Plaintiffs have retained counsel highly experienced in complex consumer class action litigation and intend to prosecute this action vigorously. Plaintiffs are members of the Class described herein and do not have interests antagonistic to, or in conflict with, the other members of the Class.

46. **Typicality:** Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and all members of the Class purchased obsolete, harmful, deceptively labeled and deceptively marketed Motor Oil Products from Dollar General and were subjected to Defendant's common course of conduct. Defendant engages in a pervasive advertising scheme, including most importantly the use of common and uniform product packaging, resulting in substantially uniform misrepresentation and/or omissions regarding the suitability of Defendant's DG-branded Motor Oil Products (misrepresentation), and the failure to adequately disclose the true nature and purpose of Defendant's DG-branded Motor Oil Products (omission).

47. **Existence and Predominance of Common Questions of Law and Fact:** There are numerous and substantial questions of law and fact common to all Class Members sufficient to satisfy Rule 23(a), and that control this litigation and predominate over any individual issues for purposes of Rule 23(b)(3). Included within the common questions are:

    a) The amount of Defendant's in-house brand motor oil it sold relative to the other brands of motor oil on its shelves;

    b) The amount of Defendant's in-house brand motor oil it sold relative to the limited number of automobiles for which these motor oils are appropriate;

    c) Whether Defendant studied the effect of its product placement of the Motor Oil Products on its shelves;

d)   Whether Defendant studied or tested its label and the effect of its labels on consumers' perceptions;

e)   Whether Defendant studied the susceptibility of consumers;

f)   The cost to Defendant to manufacture, distribute, market and sell its DG-branded motor oil compared to the revenue it received from its sales;

g)   Whether Defendant's representations regarding the safety and suitability of its DG-branded motor oils are true;

h)   Whether the shelf placement of DG's obsolete motor oil is unfair and/or deceptive in violation of FDUTPA;

i)   Whether the warnings provided on the labels of Dollar General's motor oil were adequate;

j)   Whether Defendant's deceptive conduct regarding its DG-branded motor oils would deceive an objective consumer acting reasonably in the circumstances;

k)   Whether Defendant's uniform representations and omissions constituted deceptive acts in violation of FDUTPA;

l)   Whether Defendant's sale and marketing of its DG-branded motor oils constituted an unfair practice in violation of FDUTPA;

m)   Whether Defendant's uniform advertisements (*i.e.*, product packaging) violated Florida's Misleading Advertising Law, Fla. Stat. 817.41;

n)   Whether Defendant's purported violation of Florida's Misleading Advertising Law constitutes a *per se* violation of FDUTPA;

o)   Whether Defendant's products are worthless;

14

p)   Whether Plaintiffs and the Class Members are entitled to damages, and what is the proper measure of Plaintiffs' and the Class Members' loss;

q)   Whether Plaintiffs and the Class Members are entitled to an award of punitive damages;

r)   Whether Plaintiffs and Class Members are entitled to attorneys' fees and expenses, and in what amount; and

s)   Whether Plaintiffs and the Class Members are entitled to declaratory, injunctive, and/or other equitable relief.

### *FRCP 23(b)(2) Factors*

48.   Defendant has acted on grounds generally applicable to the entire Class and Sub-Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Classes as a whole.  The prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying adjudications with respect to individual member of the Classes that would establish incompatible standards of conduct for Defendant.

49.   Injunctive relief is necessary to prevent further fraudulent and unfair business practices by Defendant.  Money damages alone will not afford adequate and complete relief, and injunctive relief is necessary to restrain Defendant from continuing to commit its deceptive, fraudulent and unfair policies.

### *FRCP 23(b)(3) Factors*

50.   **Common Issues Predominate:** As set forth in detail herein above, common issues of fact and law predominate because all of Plaintiffs' FDUTPA, Misleading Advertising, and forthcoming warranty claim are based on a deceptive and/or unfair common course of conduct. Whether Dollar General's conduct is likely to deceive an objective consumer acting

reasonably in the circumstances and breaches the implied warranty of merchantability is common to all members of the Classes and are the predominate issues, and Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

51.    **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a)    Given the size of the claims of individual Class Members, as well as the resources of Dollar General, few Class Members, if any, could afford to seek legal redress individually for the wrongs alleged herein;

b)    This action will permit an orderly and expeditious administration of the claims of Class Members, will foster economies of time, effort and expense and will ensure uniformity of decisions;

c)    Any interest of Class Members in individually controlling the prosecution of separate actions is not practical, creates the potential for inconsistent or contradictory judgments and would create a burden on the court system;

d)    Without a class action, Class Members will continue to suffer damages, Defendant's violations of law will proceed without remedy, and Defendant will continue to reap and retain the substantial proceeds derived from its wrongful and unlawful conduct. Plaintiffs and Class Members have suffered damages as a result of Defendant's unlawful and unfair conduct. This action presents no difficulties that will impede its management by the Court as a class action.

16

52.   **Notice to the Class:** Notice can be accomplished by publication for most Class Members, and direct notice may be possible for those who are members of Dollar General's rewards program (if any). Further, publication notice can be easily targeted to Dollar General's customers because Defendant only sells the subject Motor Oil Products in its own stores.

53.   The claims asserted herein are applicable to all individuals throughout the State of Florida who purchased obsolete, harmful, deceptively labeled and deceptively marketed motor oil from Dollar General.

## CLAIMS FOR RELIEF

54.   Based on the foregoing allegations, Plaintiffs' claims for relief include the following:

## COUNT I
### Violations of the Florida Deceptive and Unfair Trade Practices Act
### Fla. Stat. § 501.201, *et seq.*
### (deceptive acts or practices)

55.   Plaintiffs hereby incorporate by reference each of the preceding paragraphs as though fully set forth herein.

56.   Plaintiffs and the Class are "consumers" within the meaning of Part II of Chapter 501, Florida Statutes, relating to Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA").

57.   Defendant is a "person" or "entity" as used in FDUTPA.

58.   Pursuant to FDUTPA, unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.

59.     Within four years prior to the filing of this complaint and continuing to the present, Defendant, in the course of trade and commerce, engaged in unconscionable, unfair, and/or deceptive acts or practices harming Plaintiffs and the Class, as described herein.

60.     Plaintiffs and the Class Members purchased Defendant's DG-branded Motor Oil Products as part of a consumer transaction.

61.     Defendant engaged in deceptive conduct in violation of FDUTPA when it made representations and/or omissions regarding the usability of the DG-branded Motor Oil Products that it markets and sells that are likely to mislead consumers acting reasonably under the circumstances, to the consumer's detriment.

62.     Defendant further engaged in deceptive conduct by placing the unsuitable motor oil products next to suitable motor oil products on its store shelves.

63.     Dollar General had a duty to disclose the material characteristics of its motor oil because it (i) knew about these characteristics at the time that Plaintiffs and other Sub-Class Members purchased Dollar General's motor oil; (ii) had exclusive knowledge of material facts that were not known to Plaintiffs; and (iii) made representations regarding the quality its motor oil without adequately disclosing that its motor oil was not suitable for the vehicles driven by most of its customers.

64.     Clearly,   reasonable   consumers   would,   as   a   result   of   Defendant's misrepresentations and omissions, be misled and believe that the DG-branded motor oils were suitable for use in their automobiles.

65.     It is highly probably that these representations and omissions are likely to cause injury to a reasonable consumer, and Defendant's misrepresentations and omissions are likely to mislead consumers.

66.     As a direct and proximate result of Defendant's deceptive conduct, Plaintiffs and the Class Members have suffered damages.

67.     Plaintiffs and the Class Members have been injured in their property by reason of Defendant's deceptive acts alleged herein. The injury consists of purchasing a worthless product that they would not have paid for in the absence of these deceptive acts. This injury is of the type Fla. Stat. § 501.201, *et seq.*, was designed to prevent and directly results from Defendant's deceptive and unlawful conduct.

68.     In addition to actual damages, Plaintiffs and the Class are entitled to declaratory and injunctive relief as well as reasonable attorney's fees and costs pursuant to Fla. Stat. § 501.201, *et seq.*

### COUNT II
### Violations of the Florida Deceptive and Unfair Trade Practices Act
### Fla. Stat. § 501.201, *et seq.*
### (unfair acts or practices)

69.     Plaintiffs hereby incorporate by reference each of the preceding paragraphs as though fully set forth herein.

70.     Defendant further violated FDUTPA by engaging in unfair practices against Plaintiffs and the Class.

71.     Given the unsuitability of Defendant's DG-branded Motor Oil Products for use in automobiles manufactured after 1988, Defendant's sale of the product, especially accompanied by the misrepresentations, omissions, and misleading shelf placement described herein, is a practice that is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers. Defendant has been preying upon individuals with limited income, deceiving them into paying for an unsuitable product.

72.    The practices described herein also offend established public policy regarding the protection of consumers against companies, like Defendant, who engage in unfair methods of competition.

73.    Defendant's conduct, which caused substantial injury to Plaintiffs and the Class could have been avoided, and is not outweighed by countervailing benefits to any consumers or competition.

74.    Dollar General's business acts and practices are also unfair because they have caused harm and injury-in-fact to Plaintiffs and Class Members and for which Dollar General has no justification other than to increase, beyond what Dollar General would have otherwise realized, its market share and revenue from sale of the motor oil.

75.    Dollar General's conduct lacks reasonable and legitimate justification. Dollar General has benefited from such conduct and practices while Plaintiffs and Class Members have been misled as to the nature and integrity of the motor oil and have lost money, including the purchase price of the motor oil.

76.    In addition, Dollar General's *modus operandi* constitutes an unfair practice in that Dollar General knew and should have known that consumers care about maintaining their vehicles and the performance of the vehicles, but are unlikely to be aware of and/or able to detect the means by which Dollar General was conducting itself in a manner adverse to its commitments and its customers' interests.

77.    While Dollar General conveyed the impression to reasonable consumers that its Motor Oil Products were safe to use in their automobiles, in actuality, its motor oil is not suitable for use in the vehicles driven by the vast majority of its customers.

20

78. The practices complained of herein are not limited to a single instance but is rather done pervasively and uniformly at all times as against Plaintiffs and the Class.

79. As a direct and proximate result of Defendant's unfair conduct, Plaintiffs and the Class Members have suffered damages.

80. Plaintiffs and the Class Members have been injured in their property by reason of Defendant's unfair acts alleged herein. The injury consists of purchasing a worthless product that they would not have paid for in the absence of these unfair acts. This injury is of the type Fla. Stat. § 501.201, *et seq.*, was designed to prevent and directly results from Defendant's unfair and unlawful conduct.

81. In addition to actual damages, Plaintiffs and the Class are entitled to declaratory and injunctive relief as well as reasonable attorney's fees and costs pursuant to Fla. Stat. § 501.201, *et seq.*

## COUNT III
### Violations of the Florida Deceptive and Unfair Trade Practices Act
### Fla. Stat. § 501.201, *et seq.*
### (misleading advertising)

82. Plaintiffs herby incorporate by reference each of the proceeding allegations as if fully set forth herein.

83. Defendant further violated FDUTPA by violating a "statute…which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." Fla. Stat. 501.203(3)(c). Here, Defendant violated Florida's Misleading Advertising Law (Fla. Stat. 817.41), as described in Count IV of this Complaint.

84. Defendant's misrepresentations, omissions, deceptive acts, unfair practices, and/or violations of other rules or statutes, as described herein as violating FDUTPA, would deceive an objectively reasonable consumer.

85.    As a result of Defendant's misrepresentations, omissions, deceptive acts, unfair

practices, and/or violations of other rules or statutes, Plaintiffs and the Class Members suffered

actual damages by losing money. Defendant's product was worthless and thus the Plaintiffs and

Class Members' damages are the purchase price of the product.

86.    As a result of these FDUTPA violations, Plaintiffs and the Class Members are

entitled to actual damages, attorney's fees, costs, declaratory relief, and injunctive relief.

**COUNT IV**
**Violations of the Florida Misleading Advertising Law**
**Fla. Stat. § 817.41, *et seq.***

87.    Plaintiffs herby incorporate by reference each of the proceeding allegations as if

fully set forth herein.

88.    Through the misrepresentations and omissions made in Defendant's product

regarding the suitability of DG-branded motor oils for use in automobiles, Defendant unlawfully

disseminated or caused to be made misleading advertisements in Florida, in violation of Fla. Stat.

817.41.

89.    Though described above, Plaintiffs reiterate the specific circumstances

surrounding Defendant's misleading advertising:

    a.    ***Who.*** Defendant made (or caused to be made) the material

        misrepresentations and omissions described herein. Plaintiffs are unaware,

        and therefore unable to identify, the true names and identities of those

        individuals at Dollar General who are responsible for drafting the language

        comprising the false and/or misleading advertisements.

    b.    ***What.*** Defendant's product packaging made material misrepresentations,

        such as:

i.    the front of the packaging, which represents that the Motor Oil Product "[l]ubricates and protects your engine";

ii.    the back of the packaging, which represents that the Motor Oil Product "is an all-season, multi-viscosity, heavy duty detergent motor oil recommended for gasoline engines in older model cars and trucks"; and

iii.    the back of the 10w-30 and/or 10w-40 packaging, which represents that the Motor Oil Product "provides oxidation stability, antiwear performance, and protection against deposits, rust and corrosion";

iv.    the back of the SAE 20 packaging, which represents that "DG Quality SAE 30 is a non-detergent motor oil designed for use in older engines where consumption may be high and economical lubricants are preferred"; and

v.    the placement of the Motor Oil Products next to products that are actually suitable for use in Plaintiffs' and the Class Members' automobiles.

c.    ***Where.*** The false advertising occurred on Defendant's product packaging and/or product placement which were transmitted, displayed, and/or occurred throughout the State of Florida.

d.    ***When.*** Upon information and belief, Defendant engaged in the false advertising detailed herein continuously during the Class Period.

e.    ***Why.*** Defendant made the false advertisements with the intent to induce Plaintiffs to rely upon them and purchase the product.

90.     The misrepresentations and omissions as to the suitability of the Motor Oil Products for use in automobiles are material to Plaintiffs, the Class Members, and the average consumers.

91.     Defendant knew or should have known (through the exercise of reasonable care or investigation) that the advertisements were false, untrue, or misleading.

92.     Defendant's misrepresentations and omissions were designed and intended, either directly or indirectly, for obtaining money from Plaintiffs and the Class Members under false pretenses by inducing them to purchase Defendant's product. Defendant intended that the representations would induce Plaintiffs and the Class Members to rely upon it and purchase Defendant's product.

93.     Plaintiffs and the Class Members relied to their detriment on Defendant's false advertising, by purchasing a motor oil product that they would not otherwise have purchased.

94.     Plaintiffs and the Class Members suffered injury in justifiable reliance on Defendant's false advertising; namely they lost money by purchasing a product that they would not otherwise (but for the false advertising) have purchased.

95.     Pursuant to Fla. Stat. 817.41, Plaintiffs and the Class Members are entitled to costs, reasonable attorney's fees, actual damages, and punitive damages

96.     Punitive damages are appropriate here, given that Defendant knowingly misled consumers including Plaintiffs and the Class and engaged in the willful, wanton, and/or reckless conduct described herein. Here, Defendant engaged in intentional misconduct (or alternatively, gross negligence) as to the misrepresentations and omissions concerning the suitability the Motor Oil Products for use in automobiles that form the heart of Plaintiffs' claims.

## NOTICE OF BRACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### Breach of Implied Warranty of Merchantability
### Fla. Stat. § 672.317

97.   Plaintiffs incorporate the above allegations by reference as if fully set forth herein.

98.   Given Defendants' concealment, Plaintiffs were unaware of any potential claims against Defendant for breaches of the implied warranty of merchantability.

99.   Plaintiffs have only recently become aware of the legal situation.

100.   This filing and service of this lawsuit serves as notice complying with notice provisions of Florida's Uniform Commercial Code, and Plaintiffs will amend their complaint accordingly to add this cause of action.

### DEMAND/PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves and Members of the Class defined herein, pray for judgment and relief as follows:

A.   An order certifying that this action may be maintained as a class action;

B.   The acts and/or omissions alleged herein be adjudged and decreed to be an unfair, deceptive, and/or fraudulent business practice violating FDUTPA;

C.   That judgment be entered against Defendant and in favor of Plaintiffs and the Class on the Plaintiffs' FDUTPA and (forthcoming) implied warranty claim, for actual and consequential damages and equitable relief (including restitution and/or restitutionary disgorgement);

D.   That judgment be entered against Defendant and in favor of Plaintiffs and the Class on Plaintiffs' Misleading Advertising claim, for actual and punitive damages;

E.   An order enjoining Defendant from engaging in the unfair and/or deceptive acts

     or practices, as set forth in this Complaint;

F.   Compensatory damages;

G.   Punitive Damages;

H.   Restitution and disgorgement of the unlawful profits collected by the Defendant;

I.   Prejudgment and post-judgment interest at the prevailing legal rate;

J.   Plaintiffs' attorneys' fees and costs of suit; and

K.   Such other and further relief as the Court may deem necessary and appropriate.

**JURY TRIAL DEMANDED**

December 18, 2015                          Respectfully submitted,

                                          **KU & MUSSMAN, PA**

                                          By: /s/ Brian T. Ku
                                          Brian T. Ku, Esq. (Fla. # 610461)
                                          brian@kumussman.com
                                          Louis Mussman, Esq. (Fla # 597155)
                                          louis@kumussman.com
                                          6001 NW 153rd Street, Suite 100
                                          Miami Lakes, Florida 33014
                                          Tel: (305) 891-1322
                                          Fax: (305) 891-4512

                                          *and*

                                          **KANNER & WHITELEY, LLC**
                                          Allan Kanner, Esq. (*PHV forthcoming*)
                                          a.kanner@kanner-law.com
                                          701 Camp Street
                                          New Orleans, Louisiana 70130
                                          Tel: (504) 524-5777
                                          Fax: (504) 524-5763

                                          *Attorneys for Plaintiffs and the Class*

1   **DAVID W. PACE** (State Bar No. 15393000)
   dpace63@gmail.com
2   707 Omar Street
   Houston, TX 77009
3   Telephone:  (832) 582-5078
   Facsimile:   (832) 582-5078
4

5   Allan Kanner, Esq. (State Bar No. 109152)
   a.kanner@kanner-law.com
6   Conlee Whiteley, Esq. (*Pro Hac Vice*)
   c.whiteley@kanner-law.com
7   Cynthia St. Amant, Esq. (State Bar No. 24002176) (*Pro Hac Vice*)
   c.stamant@kanner-law.com
8   **KANNER & WHITELEY, L.L.C.**
   701 Camp Street
9   New Orleans, LA 70130
   Telephone: (504) 524-5777
10   Facsimile: (504) 524-5763

11   Attorneys for Plaintiff

12

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| MILTON M. COOKE, JR., individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>V.<br><br>DOLLAR GENERAL CORPORATION (d/b/a Dolgencorp of Texas, Inc.), a Tennessee corporation,<br><br>      Defendant. | CASE NO. 15-CV-03680<br><br>FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL<br><br>1. Deceptive Trade Practices, *Texas Business and Commerce Code Sec. 17.41, et seq.*<br>2. Breach of Warranty and Unconscionable Conduct, *Texas Business and Commerce Code Sec. 17.41, et seq.*<br>3. Breach of Implied Warranty of Merchantability<br>4. Breach of Implied Warranty of Fitness for a Particular Purpose<br>5. Unjust Enrichment |

Plaintiff Milton M. Cooke, Jr. ("Plaintiff"), individually and on behalf of all others similarly situated, makes the following allegations based on his personal

Class Action Complaint               1

knowledge of his own acts and, otherwise, upon information and belief based on investigation of counsel.

## NATURE AND SUMMARY OF THE ACTION

1. Plaintiff, by and through undersigned counsel, brings this action both on his own behalf and on behalf of the class defined below, comprised of all individuals similarly situated within the State of Texas, to redress the unlawful and deceptive practices employed by Defendant Dollar General Corporation, a Tennessee corporation doing business in Texas as Dolgencorp of Texas, Inc. (hereinafter "Dollar General" or "Defendant") in connection with its marketing and sale of its company-branded motor oil sold in its stores.

2. Dollar General sells an entire line of company-branded motor oils (labeled "DG") that are obsolete and potentially harmful to its customers' automobiles by using deceptive and misleading tactics including the positioning of its line of obsolete motor oils immediately adjacent to the more expensive standard- and premium-quality motor oils manufactured by its competitors and failing to adequately warn its customers that its DG motor oil is unsuitable for use by the vast majority, if any, of its customers.

3. Dollar General's unlawful and deceptive business practices violate the Deceptive Trade Practices – Consumer Protection Act, *Texas Business and Commerce Code Sec. 17.41, et seq.* ("DTPA") and the contractual rights of consumers.

Class Action Complaint                    2

## JURISDICTION AND VENUE

4. Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. §§1332(d), because members of the proposed Class are citizens of States different from Defendant's home state of Tennessee, there are more than 100 Class Members, and the amount-in-controversy exceeds $5,000,000 exclusive of interest and costs.

5. This Court has jurisdiction over Defendant because Defendant is a foreign corporation or association authorized to do business in Texas through its wholly owned subsidiary Dolgencorp of Texas, Inc. which is registered with the Texas Secretary of State, does sufficient business in Texas, and has sufficient minimum contacts with Texas or otherwise intentionally avails itself of the laws and markets of Texas, through the promotion, sale, marketing and distribution of its merchandise in Texas, to render the exercise of jurisdiction by the Texas courts permissible.

6. Venue is proper in this District under 28 U.S.C. §1391(b) and (c) because Defendant's improper conduct alleged in this complaint occurred in, was directed from, and/or emanated from this judicial district, because Defendant has caused harm to Class Members residing in this district, and/or because the Defendant is subject to personal jurisdiction in this district.

7. In addition, Defendant operates numerous stores in Texas and has received substantial compensation from Texas consumers who purchase goods from Defendant.

Class Action Complaint                              3

1

## **PARTIES**

2
3      8. Plaintiff Milton M. Cooke, Jr.  is an individual adult resident citizen of

4      Houston, Harris County, Texas and is a member of the Class alleged herein.

5      9. Plaintiff purchased Dollar General's DG-branded motor oil from a Dollar
6
7      General store in Houston, Texas in December 2015.

8      10.  Defendant Dollar General Corporation is incorporated under the laws of the

9      State of Tennessee, with its corporate headquarters located at 100 Mission Ridge,
10
11     Goodlettsville, Tennessee.

12     11.  At all relevant times, Defendant produced, marketed, distributed and sold

13     its obsolete DG-branded motor oil in its stores throughout the United States,
14
15     including in the State of Texas, utilizing deceptive and misleading marketing and

16     sales practices to induce Plaintiff and Class Members into purchasing its obsolete

17     motor oil for use in their modern-day vehicles knowing that its motor oil is obsolete
18
19     and likely to cause damage to any such vehicle.

20

21

## **FACTUAL ALLEGATIONS**

22
23     12.  Dollar General operates a chain of variety stores headquartered in

24     Goodlettsville, Tennessee.  As of January 2015, Dollar General operated over 12,198

25     stores in 43 states. Dollar General does business in Texas through 1246 retail stores
26
27     located throughout the State of Texas.

28

Class Action Complaint                          4

13.  Dollar General is a discount retailer focused on low and fixed income consumers in small markets. Dollar General's business model includes locating its stores in rural, suburban communities, and in its more densely populated markets, Dollar General's customers are generally from the neighborhoods surrounding the stores. Dollar General's stores are located with the needs of its core customers (low and fixed income households) in mind.

14.  Dollar General offers basic every day and household goods, along with a variety of general merchandise at low prices to provide its customers with one-stop shopping opportunities generally in their own neighborhoods.

15.  In addition to offering name brand and generic merchandise, Dollar General manufactures and markets its own lines of inexpensive household products, which bear the designation "DG." DG lines include "DG Auto," "DG Hardware" "DG Health" and "DG Office."

16.  Dollar General's DG Auto line consists of three types of obsolete motor oil: DG SAE 10W-30, DG SAE 10W-40 and DG SAE-30 that fail to protect and can actively damage, modern-day automobiles.

17.  Motor oils lubricate the engines of the automobiles driven by individuals. Their main function is to reduce wear on an engine's moving parts. Motor oils also inhibit corrosion, improve sealing and keep engines properly cooled.

18.  Motor oils have evolved in parallel with the automobiles they are meant to protect. Institutions like the Society of Automotive Engineers ("SAE") employ

1
2
3
4

rigorous tests to ensure that motor oils meet evolving standards relating to, among other criteria, sludge buildup, temperature volatility, resistance to rust, resistance to foaming, resistance to oil consumption, homogeneity and miscibility.

5
6
7
8
9

19.   Motor oils designed to protect engines from earlier eras do not protect, and can harm, modern-day engines.  Thus, motor oil that would be suitable to use in an engine manufactured in the 1980's or earlier is not suitable for use in modern-day engines.

10
11
12
13
14
15
16

20.   Dollar General engages in the unfair, unlawful, deceptive and fraudulent practice of marketing, selling and causing to be manufactured, obsolete motor oil without adequately warning that its product is unsuitable for, and can harm, the vehicles driven by the overwhelming majority of Dollar General's customers (and the public at large)

17
18
19
20
21
22

21.   Dollar General misleads customers using product placement tactics and misleading product labels which obscure a critical fact from Dollar General's customers:  Dollar General's motor oil is unfit for, and can harm, the vehicles driven by the vast majority, if not all, of its customers.

23
24
25
26
27
28

22.   Dollar General's in-house motor oils use the same or similar SAE nomenclature on the front of its labels (*e.g.*, 10W-30, 10W-40, SAE 30) as do the other mainstream, non-harmful, and actually useful brands of motor oil sold by Dollar General and beside which Dollar General places its DG brand motor oil on its shelves.

23. Additionally, the front label of DG's SAE 10W-30 and SAE 10W-40 motor oils says, "Lubricates and protects your engine."

24. However, among the small print on the back label of Dollar General's motor oils is the statement that DG SAE 10W-30 and DG SAE 10W-40 are admittedly "not suitable for use in most gasoline powered automotive engines built after 1988" and "may not provide adequate protection against the build-up of engine sludge" and that DG SAE 30 is admittedly "not suitable for use in most gasoline powered automotive engines built after 1930," and its "use in modern engines may cause unsatisfactory engine performance or equipment harm."

25. Dollar General conceals this language by rendering it in small font and confining it to the product's back label.

26. Dollar General further conceals this language by placing it below a message that presents a misleading impression of the product. For the DG SAE 10W-30 and DG SAE 10W-40 products, that message reads, "SAE 10W-30 motor oil is an all-season, multi-viscosity, heavy duty detergent motor oil recommended for gasoline engines in older model cars and trucks. This oil provides oxidation stability, anti-wear performance, and protection against deposits, rust and corrosion." For the DG SAE 30 product, that message reads: "DG Quality SAE 30 is a non-detergent motor oil designed for use in older engines where consumption may be high and economical lubricants are preferred."

27.   Few, if any, Dollar General customers drive vehicles for which these products are safe, and the use of the term "older" is a relative term that does not inform a reasonable consumer that these motor oils are not safe for cars manufactured within the past *27 years*, or in the case of Dollar General's DG SAE 30, the past *85 years*.

28.   Dollar General further disguises the obsolete and harmful nature of its motor oils with its positioning of these motor oils on its shelves in a misleading manner. Specifically, Dollar General places similar quantities of its in-house brand motor oils, DG SAE 10W-30, DG SAE 10W-40 and DG SAE 30, none of which are suitable for modern-day automobiles, adjacent to an array of other motor oils which are suitable for modern-day vehicles. The photograph below illustrates how Dollar General effects this deception:



29. As the photograph above illustrates, Dollar General places its in-house brand motor oils on the same shelves, in the same or similar quantities, as PEAK, Pennzoil, Castrol and other legitimate motor oils that are suitable for modern-day automobiles. Each type of motor oil uses the SAE nomenclature on the front, *e.g.*, 10W-40. The only apparent difference is the price, as Dollar General's motor oils are less expensive than the others.

30. Defendant's product display conceals the fact that its DG-brand motor oils have an extremely obscure and limited use and are likely to cause damage to the

Class Action Complaint                    9

engines of most of their customer's cars. Defendant's product positioning and the deceptive label on the motor oil are likely to deceive reasonable consumers.

31.   Dollar General also fails to warn its customers adequately of the obsolete nature of DG-branded motor oils or of the dangers DG-branded motor oils pose to the very automobiles its customers are trying to protect by purchasing Dollar General's motor oil. An adequate warning for Dollar General's obsolete motor oils would be displayed conspicuously and would inform Dollar General's customers of the appropriate uses, if any, of the various types of Dollar General motor oils. But Dollar General provides its customers with no such conspicuous warnings. Instead, the company buries the aforementioned statements on the back of its products in small type where customers are unlikely to encounter them.

32.   DG SAE 10W-30 bears the following labels on its front (left) and back (right):



The photograph below is a close-up of DG SAE 10W-30's back label, which includes the warnings, "IT IS NOT SUITABLE FOR USE IN MOST GASOLINE

POWERED AUTOMOTIVE ENGINES BUILT AFTER 1988" and "IT MAY NOT PROVIDE ADEQUATE PROTECTION AGAINST THE BUILD-UP OF ENGINE SLUDGE":



33. DG SAE 10W-40 bears the following labels on its front (left) and back (right):



The following photograph is a close-up of DG SAE 10W-40's back label, which includes the warnings, "IT IS NOT SUITABLE FOR USE IN MOST GASOLINE POWERED AUTOMOTIVE ENGINES BUILT AFTER 1988" and "IT MAY NOT

1  PROVIDE ADEQUATE PROTECTION AGAINST THE BUILD-UP OF ENGINE

2  SLUDGE":

3

4  

5

6

7

8

9

10

11

12

13  34.   DG SAE 30 bears the following the labels on its front (left) and back (right):

14

15

16

17

18

19

20

21  The photograph below is a close-up of DG SAE 30's back label which includes the

22  warnings, "IT IS NOT SUITABLE FOR USE IN MOST GASOLINE POWERED

23  AUTOMOTIVE ENGINES BUILT AFTER 1930" and "USE IN MODERN

24  ENGINES MAY CAUSE UNSATISFACTORY ENGINE PERFORMANCE OR

25

26  EQUIPMENT HARM":

27

28

**SAE 30 Motor Oil** API SERVICE SA
Non-detergent

DG Quality SAE 30 is a non-detergent motor oil designed for use in older engines where consumption may be high and economical lubricants are preferred.
CAUTION – THIS OIL IS RATED API SA. IT CONTAINS NO ADDITIVES. IT IS NOT SUITABLE FOR USE IN MOST GASOLINE POWERED AUTOMOTIVE ENGINES BUILT AFTER 1930. USE IN MODERN ENGINES MAY CAUSE UNSATISFACTORY ENGINE PERFORMANCE OR EQUIPMENT HARM.
WARNING: Prolonged or repeated contact with used motor oil has been shown to cause skin cancer in lab animals. Promptly wash with soap and water. KEEP OUT OF REACH OF CHILDREN
DON'T POLLUTE – CONSERVE RESOURCES. RETURN USED OIL TO COLLECTION CENTER. This engine oil's service level is in accordance with the designated SAE J300 engine oil viscosity classification and suitable for former SAE J-183 engine oil service classification as designated on this label.
ADVERTENCIA: No contiene aditivos. No adecuados para uso in motores de automóvil de gasolina fabricados después del año 1930. Su uso en motores más modernos puede causar un desempeño no satisfactorio o dañar el equipo.

35. Dollar General's entire line of low-cost motor oil is unsuitable for the modern-day vehicles driven by its customers and has no business being sold, except that Dollar General is successfully deceiving a sufficient number of customers to make this fraudulent practice worthwhile. It is unfair, unlawful, deceptive and fraudulent for Dollar General to distribute, market, and sell an entire line of motor oil that is unfit for, and presents concrete dangers to, the automobiles driven by the vast majority of its customers.

36. Dollar General knew or should have known that its customers are being or will, in reasonable probability, be deceived by its marketing strategy based on the quantity of its obsolete DG motor oil sold compared to the limited number of automobiles for which these oils are appropriate.

37. The Texas DTPA is designed to protect consumers from this type of false, deceptive, misleading and predatory unconscionable conduct.

Class Action Complaint                    13

38. Defendant's unfair and deceptive course of conduct victimized all purchasers of Dollar General's motor oil from Dollar General, throughout the country and in the State of Texas.

39. As a direct and proximate result of Dollar General's deceptive and fraudulent practices, Plaintiff and the Class Members purchased a product they would not have otherwise purchased and have suffered and will continue to suffer economic damages.

40. In addition, many Class Members have sustained damage to their automobiles as a result of the use of Dollar General's DG-branded motor oil and have suffered and will continue to suffer economic damage as a result.

41. Plaintiff therefore brings the statutory and common law claims alleged herein to halt Dollar General's deceptive practices and to obtain compensation for the losses suffered by Plaintiff and all Class Members.

**Unjust Enrichment**

42. Plaintiff and Class Members have conferred substantial benefits on the Defendant by purchasing its useless and harmful motor oil, and Dollar General has consciously and willingly accepted and enjoyed these benefits.

43. Defendant knew or should have known that consumers' payments for its obsolete and harmful motor oil were given and received with the expectation that the motor oil would lubricate and protect consumers' engines and would not be harmful to their vehicles.

Class Action Complaint                                    14

44.   Because of the fraudulent misrepresentations, concealments, and other wrongful activities described herein, Defendant has been unjustly enriched by its wrongful receipt of Plaintiff's and Class Members' monies.

45.   As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and Class Members have suffered damages in an amount to be determined at trial.

46.   Defendant should be required to account for and disgorge all monies, profits and gains which they have obtained or will unjustly obtain in the future at the expense of consumers.

## CLASS ACTION ALLEGATIONS

47.   Plaintiff brings this class action pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of himself and all members of the following Class:

**All persons in the State of Texas who purchased Defendant's DG-branded motor oil, DG SAE 10W-30, DG SAE 10W-40 and/or DG SAE 30, for personal use and not for re-sale, since December 2011.**

48.   Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

49.   Specifically excluded from the proposed Class are Dollar General, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, successors, assigns, or other persons or entities related

to or affiliated with Dollar General and/or its officers and/or directors, or any of them. Also excluded from the proposed Class are the Court, the Court's immediate family and Court staff.

## FRCP 23(a) Factors

50. **Numerosity.** Membership in the Class is so numerous that separate joinder of each member is impracticable. The precise number of Class Members is unknown at this time but can be readily determined from Defendant's records. Plaintiff reasonably estimates that there are tens of thousands of persons in the Class.

51. **Adequacy of Representation.** Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained counsel highly experienced in complex consumer class action litigation and intends to prosecute this action vigorously. Plaintiff is a member of the Class described herein and does not have interests antagonistic to, or in conflict with, the other members of the Class.

52. **Typicality.** Plaintiff's claims are typical of the claims of the members of the Class and Sub-Class. Plaintiff and all members of the Class and Sub-Class purchased obsolete, harmful, deceptively labeled and deceptively marketed motor oil from Dollar General and were subjected to Defendant's common course of conduct.

53. **Existence and Predominance of Common Questions of Law and Fact.** There are numerous and substantial questions of law and fact common to all Class

Members sufficient to satisfy Rule 23(a), and that control this litigation and predominate over any individual issues for purposes of Rule 23(b)(3). Included within the common questions are:

    a) The amount of Defendant's in-house brand motor oil it sold relative to the other brands of oil on its shelves;

    b) The amount of Defendant's in-house brand motor oil it sold relative to the limited number of automobiles for which these motor oils are appropriate;

    c) Whether Defendant studied the effect of its product placement on its shelves;

    d) Whether Defendant studied or tested its label and the effect of its labels on consumers' perceptions;

    e) Whether Defendant studied the susceptibility of consumers;

    f) The cost to Defendant to manufacture, distribute, market and sell its DG-branded motor oil compared to the revenue it received from its sales;

    g) Whether Defendant misrepresented the safety and suitability of its DG-branded motor oil sold at its stores nationwide;

    h) Whether Defendant's conduct of placing the obsolete Dollar General motor oil next to legitimate, useful motor oil is likely to deceive reasonable consumers;

i)   Whether the warnings provided on the labels of Dollar General's motor oil were adequate;

j)   Whether Defendant's conduct of hiding the warnings on the back label is likely to deceive reasonable consumers;

k)   Whether Defendant deliberately misrepresented or failed to disclose material facts to Plaintiff and Class Members regarding the obsolete and harmful nature of its DG-branded motor oil;

l)   Whether Dollar General's conduct, as alleged herein, constitutes a false, misleading or deceptive act or practice in the conduct of any trade or commerce under the Texas Deceptive Trade Practices – Consumer Protection Act, Texas Business and Commerce Code §17.41, *et seq.*;

m)  Whether Dollar General's conduct, as alleged herein, constitutes an unconscionable act or practice actionable under the Texas Deceptive Trade Practices – Consumer Protection Act, Texas Business and Commerce Code §17.50(a)(3), *et seq.*;

n)   Whether Dollar General's conduct, as alleged herein, constitutes a breach of an express or implied warranty actionable under the Texas Deceptive Trade Practices – Consumer Protection Act, Texas Business and Commerce Code §17.50(a)(2), *et seq.*;

o) Whether the Class is entitled to injunctive relief prohibiting the wrongful practices alleged herein and enjoining such practices in the future;

p) Whether Plaintiff and members of the Class are entitled to restitution;

q) Whether compensatory, consequential and punitive damages ought to be awarded to Plaintiff and Class Members;

r) Whether Plaintiff and Class Members are entitled to attorneys' fees and expenses, and in what amount;

s) The proper method for calculating damages and restitution classwide; and

t) Whether Plaintiff and Class Members are entitled to declaratory and/or other equitable relief.

## FRCP 23(b)(2)

54. Defendant has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole.  The prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying adjudications with respect to individual member of the Class that would establish incompatible standards of conduct for Defendant.

55. Injunctive relief is necessary to prevent further fraudulent and unfair

business practices by Defendant.  Money damages alone will not afford adequate and complete relief, and injunctive relief is necessary to restrain Defendant from continuing to commit its deceptive, fraudulent and unfair policies.

## FRCP 23(b)(3)

56. **Common Issues Predominate:** As set forth in detail herein above, common issues of fact and law predominate because all of Plaintiff's DTPA and warranty claims are based on a deceptive common course of conduct. Whether Dollar General's conduct is likely to deceive reasonable consumers and breaches the implied warranties of merchantability and fitness for a particular purpose is common to all members of the Class and are the predominate issues, and Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims

57. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

   a) Given the size of the claims of individual Class Members, as well as the resources of Dollar General, few Class Members, if any, could afford to seek legal redress individually for the wrongs alleged herein;

   b) This action will permit an orderly and expeditious administration of the claims of Class Members, will foster economies of time, effort and expense and will ensure uniformity of decisions;

c) Any interest of Class Members in individually controlling the prosecution of separate actions is not practical, creates the potential for inconsistent or contradictory judgments and would create a burden on the court system;

d) Without a class action, Class Members will continue to suffer damages, Defendant's violations of law will proceed without remedy, and Defendant will continue to reap and retain the substantial proceeds derived from its wrongful and unlawful conduct. Plaintiff and Class Members have suffered damages as a result of Defendant's unlawful and unfair conduct. This action presents no difficulties that will impede its management by the Court as a class action.

58. **Notice to the Class:** Notice can be accomplished by publication for most Class Members, and direct notice may be possible for those who are members of a Dollar General's rewards program or for whom Dollar General has specific information. Further, publication notice can be easily targeted to Dollar General customers because Defendant only sells the subject motor oil in its own stores.

59. The Class members have been monetarily damaged and suffered injury in fact as a result of Dollar General's misconduct, in that each member purchased Dollar General's useless and harmful motor oil.

1

## CLAIMS FOR RELIEF

2

3      60. Based on the foregoing allegations, Plaintiff's claims for relief include the

4      following:

5                           **FIRST CAUSE OF ACTION**
6      **VIOLATION OF TEXAS DECEPTIVE TRADE PRACTICES –**
       **CONSUMER PROTECTION ACT SEC'S 17.46(b)(5), 17.46(b)(7) and**
7                                    **17.46(b)(9)**
8      *Texas Business and Commerce Code*§17.46(b)(5), 17.46(b)(7) and 17.46(b)(9)

9      61. Plaintiff incorporates by this reference the allegations contained in the

10
11     preceding paragraphs as if fully set forth herein.

12     62. Plaintiff brings this claim under DTPA Sec.'s 17.46(b)(5),  17.46(b)(7) and

13
14     17.46(b)(9) on behalf of himself and the Class, who were subject to Defendant's

15     above-described false, deceptive or misleading conduct.

16     63. As alleged hereinabove, Plaintiff has standing to pursue this claim as

17
18     Plaintiff has suffered actual economic damages as a proximate result of Defendant's

19     actions as set forth herein.

20     64. Plaintiff and members of the Class are consumers as defined by DTPA Sec.

21
22     17.45(4). The DG-branded motor oils are goods within the meaning of DTPA Sec.

23     17.45(1).

24     65.  This cause of action is asserted on behalf of a subclass of the putative Class,

25
26     comprised of those members who purchased DG-branded motor oil within three

27     (3) years of the commencement of this action.

28

66. Specifically, as described herein, Dollar General made the following representations, expressly or by implication to Plaintiff and Class Members about the deceptively labeled motor oil: (i) that Dollar General's DG-branded motor oil was suitable for use in its customers' automobiles; (ii) that Dollar General's DG-branded motor oil was safe to use in its customers' automobiles; and (iii) that Dollar General's DG-branded motor oil was of similar quality as the other motor oils beside which Dollar General's DG-branded motor oils were positioned on the shelves in Defendant's stores.

67. These representations were materially misleading and deceptive, and were a producing cause of economic damages to consumers.

68. Defendant violated and continues to violate the DTPA by engaging in the following practices proscribed by DTPA Sec's. 17.46(b)(5), 17.46(b)(7) and 17.46(b)(9) in transactions with Plaintiff and members of the Sub-Class, which were intended to result in, and did result in, the sale of DG-branded motor oils:

      a.    By representing that DG branded motor oil "Lubricates and protects your engine," placing the DG-branded motor oils on shelves next to legitimate motor oils intended for use in modern day vehicles, and failing to adequately warn consumers of the harm their products can cause, Defendant is representing that DG-branded motor oils have characteristics, uses and benefits which they do not have, in violation of DTPA Sec. 17.46(b)(5);

    b.    By representing that DG branded motor oil "Lubricates and protects your engine," and placing the DG-branded motor oils on shelves next to legitimate motor oils intended for use in modern day vehicles, and failing to adequately warn consumers of the harm their products can cause, Defendant is representing that DG-branded motor oils are of a particular standard, quality, or grade, when they are of another, in violation of DTPA Sec. 17.46(b)(7);

    c.    By representing that DG branded motor oil "Lubricates and protects your engine," and placing the DG-branded motor oils on shelves next to legitimate motor oils intended for use in modern day vehicles, and failing to adequately warn consumers of the harm their products can cause, Defendant is advertising goods with intent not to sell them as advertised in violation of DTPA Sec. 17.46(b)(9).

69. Defendant violated the DTPA by failing to adequately warn Plaintiff and members of the Class that DG-branded motor oils are not suitable for, and can harm, most vehicles on the road.

70. Defendant's actions as described herein were done knowingly with conscious disregard of Plaintiff's rights, and Defendant was wanton and malicious in its concealment of the same.

71. Defendant's false, deceptive and misleading business practices constituted, and constitute, a continuing course of conduct in violation of the DTPA because

Class Action Complaint          24

1  Defendant continues to sell the obsolete oil without adequate warnings and
2  represent that the DG-branded motor oils have characteristics, uses and benefits
3
4  which the products do not have, and has thus caused economic damage and
5  continues to cause economic damage to Plaintiff and the Class.
6
7      72. Neither Plaintiff nor any reasonable consumer would have purchased the
8  DG-branded motor oil if they were informed it was obsolete and not suitable for
9  their vehicles, was not capable of protecting or lubricating their vehicles' engines,
10
11  and could harm their vehicles.
12      73. Plaintiff seeks injunctive relief pursuant to DTPA Sec. 17.50(b)(2) in the
13  form of enjoining Defendant from (1) selling obsolete oil; (2) expressly or impliedly
14
15  representing to current and potential purchasers of the DG-branded motor oils that
16  the product is suitable for use in modern day vehicles manufactured after 1988, or
17  in the case of SAE-30, after 1930; (3) providing inadequate warnings as to the harm
18
19  the oil can cause.  Plaintiff also seeks injunctive relief in the form of corrective
20  advertising requiring Defendant to disseminate truthful, adequate disclosures and
21  warnings about the actual uses (to the extent there are any) of the DG-branded motor
22
23  oils.
24      74. Plaintiff and members of the Class shall be irreparably harmed if such an
25  order is not granted.
26
27
28

Class Action Complaint                    25

## SECOND CAUSE OF ACTION
### VIOLATION OF TEXAS DECEPTIVE TRADE PRACTICES – CONSUMER PROTECTION ACT SEC'S 17.50(a)(2) and 17.50(a)(3)
*Texas Business and Commerce Code Sec.'s 17.50(a)(2) and 17.50(a)(3)*

75.   Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

76.   Plaintiff brings this claim under DTPA Sec.'s 17.50(a)(2) and 17.50(a)(3) on behalf of himself and the Class, who were subject to Defendant's above-described unconscionable, unfair and deceptive conduct.

77.   The actions of Defendant set forth above constitute breach of an express or implied warranty which was the producing cause of economic damages to Plaintiff and Class Members which is actionable under DTPA Sec. 17.50 (a)(2).

78.   The actions of Defendant set forth above constitute an unconscionable action or course of action which was committed knowingly, and which was the producing cause of economic damages to Plaintiff and Class Members actionable under DTPA Sec. 17.50(a)(3).

## THIRD CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability

79.   Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

80.   Beginning at an exact date unknown to Plaintiff, but at least since four years prior to the filing date of this action, and as set forth above, Defendant represented

to consumers, including Plaintiff and Class Members, by labeling/packaging and other means, that DG SAE 10W-30, DG SAE 10W-40, and DG SAE 30 are safe and suitable for use in the automobiles driven by Dollar General's customers. Plaintiff and Class Members bought those goods from the Defendant.

81. Defendant was a merchant with respect to goods of the kind which were sold to Plaintiff and Class Members, and there was in the sale to Plaintiff and Class Members an implied warranty that those goods were merchantable.

82. However, Defendant breached that warranty implied in the contract for the sale of goods in that Dollar General's DG-branded motor oil is in fact not suitable for use in the vehicles driven by the vast majority, if any, of Dollar General's customers, as set forth in greater detail above.

83. As a result thereof Plaintiff and Class Members did not receive goods as impliedly warranted by Defendant to be merchantable.

84. As a proximate result of this breach of warranty by Defendant, Plaintiff and Class Members have been damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### Breach of Implied Warranty of Fitness for a Particular Purpose

85. Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

86. Beginning at an exact date unknown to Plaintiff, but at least since four years prior to the filing date of this action, and as set forth above, Defendant sold its

Class Action Complaint                                        27

DG-branded motor oils to Plaintiff and Class Members, who bought those goods from Defendant in reliance on Defendant's skill and judgment.

87.  At the time of sale, Defendant had reason to know the particular purpose for which the goods were required, and that Plaintiff and Class Members were relying on Defendant's skill and judgment to select and furnish suitable goods so that there was an implied warranty that the goods were fit for this purpose.

88.  However, Defendant breached the warranty implied at the time of sale in that Plaintiff and Class Members did not receive suitable goods, and the goods were not fit for the particular purpose for which they were required in that Dollar General's DG-branded motor oils are not safe or suitable for use in the vast majority, if any, of vehicles driven by Dollar General's customers, as set forth in detail above.

89.  This breach of warranty by Defendant has been the producing cause of economic damages to Plaintiff and Class Members in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### Unjust Enrichment

90. Plaintiff and Class Members have conferred substantial benefits on the Defendant by purchasing its useless and harmful motor oil, and Dollar General has consciously and willingly accepted and enjoyed these benefits.

91.  Defendant knew or should have known that consumers' payments for its obsolete and harmful motor oil were given and received with the expectation that

Class Action Complaint                          28

1   the motor oil would lubricate and protect consumers' engines and would not be
2   harmful to their vehicles.
3
4   92.   Because of the fraudulent misrepresentations, concealments, and other
5   wrongful activities described herein, Defendant has been unjustly enriched by its
6
    wrongful receipt of Plaintiff's and Class Members' monies.
7
8   93.  As a direct and proximate result of Defendant's wrongful conduct and unjust
9   enrichment, Plaintiff and Class Members have suffered damages in an amount to be
10
    determined at trial.
11
12  94.  Defendant should be required to account for and disgorge all monies, profits
13  and gains which they have obtained or will unjustly obtain in the future at the
14
    expense of consumers.
15
16                          **DEMAND/PRAYER FOR RELIEF**

17          WHEREFORE, Plaintiff on behalf of himself and members of the Class
18
    defined herein, prays for judgment and relief as follows:
19
20          A. An order certifying that this action may be maintained as a class action;
21          B. An award to Plaintiff and Class Members of full restitution;
22
23          C. An order pursuant to DTPA Sec. 17.50(b)(2) enjoining Defendant from
24              engaging in the unfair and/or deceptive acts or practices, as set forth in this
25              Complaint, and requiring Defendant to disseminate corrective advertising;
26
27          D. Compensatory economic damages;
28

Class Action Complaint                    29

E. Punitive Damages and/or additional damages provided in DTPA Sec. 17.50(b)(1) for violations of the DTPA set forth above which were committed knowingly;

F. Restitution and equitable disgorgement of the unlawful profits collected by the Defendant;

G. An order providing for declaratory and/or injunctive relief:

   1. Declaring that Defendant must provide accurate representations of the quality of the motor oil sold at its stores;

   2. Enjoining Defendant from continuing the deceptive practices alleged herein; and

   3. Granting other extraordinary equitable and/or injunctive relief as permitted by law, including specific performance, reformation and imposition of a constructive trust;

H. Prejudgment and post-judgment interest at the prevailing legal rate;

I. Plaintiff's attorneys' fees and costs of suit; and

J. Such other and further relief as the Court may deem necessary and appropriate.

## JURY DEMAND

Plaintiff and Class Members, pursuant to Fed. R. Civ. P. 38(b), hereby demand trial by jury on all issues so triable.

1    DATED: December 23, 2015

2                                                  s/ David W. Pace

3                                                  DAVID W. PACE
                                                   Attorney in Charge
4                                                  Texas Bar # 15393000
                                                   Southern District of Texas Bar #43
5                                                  707 Omar Street
                                                   Houston, TX 77009
6                                                  Telephone: (832) 582-5078
                                                   Facsimile:  (832) 582-5078
7

8                                                  KANNER & WHITELEY, L.L.C.
                                                   Allan Kanner, Esq.
9                                                  Conlee Whiteley, Esq.
                                                   Cynthia St. Amant, Esq.
10                                                 701 Camp Street
                                                   New Orleans, LA 70130
11                                                 Telephone: (504) 524-5777
                                                   Facsimile: (504) 524-5763
12
                                                   *Attorneys for Plaintiff*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Class Action Complaint                    31

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **WILL SISEMORE, Individually and on Behalf of All Others Similarly Situated,** | |
| | **Case No. 15-cv-724-GKF-TLW** |
| **Plaintiff,** | |
| **v.** | **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |
| **DOLGENCORP, LLC, (d/b/a DOLLAR GENERAL, CORPORATION)** | |
| **Defendant.** | |

## CLASS ACTION COMPLAINT

Plaintiff, Will Sisemore ("Plaintiff"), individually and on behalf of all others similarly situated, makes the following allegations based on his personal knowledge of his own acts and, otherwise, upon information and belief based on investigation of counsel.

## NATURE AND SUMMARY OF THE ACTION

1.     Plaintiff brings this action both on his own behalf and on behalf of the class comprised of all individuals similarly situated within the State of Oklahoma, to redress the unlawful and deceptive practices employed by Defendant, DOLGENCORP, LLC, (d/b/a Dollar

1

General, Corporation), (hereinafter "Dollar General" or "Defendant") in connection with its marketing and sale of its company-branded motor oil sold in its Oklahoma stores.

2.      Dollar General sells an entire line of company-branded motor oils (labeled "DG") that are obsolete and potentially harmful to its customers' automobiles by using deceptive and misleading visual representations including the positioning of its line of obsolete motor oils immediately adjacent to the more expensive standard- and premium-quality motor oils manufactured by its competitors and failing to adequately warn its customers that its DG motor oil is unsuitable for use by the vast majority, if any, of its customers.

3.      Plaintiff alleges that Dollar General engaged in these unlawful and deceptive business practices in violation the consumer protection and unfair trade practices statutes of Oklahoma, the common law theories of fraud, concealment, implied warranties and the contractual rights of consumers.

## PARTIES

4.      Plaintiff, Will Sisemore, is an individual adult resident citizen of Mayes County, Oklahoma and is a member of the Oklahoma Class.

5.      Plaintiff purchased Dollar General's motor oil from Dollar General's store in Langley, Oklahoma.

6.      Defendant DOLGENCORP, LLC, d/b/a Dollar General Corporation, is incorporated under the laws of the State of Kentucky, with its headquarters located at 100 Mission Ridge, Goodlettsville, Tennessee.

7.      At all relevant times, Defendant produced, marketed, distributed and sold its obsolete DG-branded motor oil in its stores throughout the United States, including in the State of Oklahoma, utilizing deceptive and misleading marketing and sales practices intended to

2

deceive Plaintiff and Oklahoma consumers into purchasing its obsolete motor oil for use in their modern-day vehicles knowing that its motor oil is obsolete and likely to cause damage to any such vehicle.

8.      Defendant maintains over 50 stores throughout the State of Oklahoma. As such, Oklahoma courts maintain a significant interest in regulating Defendant's conduct within Oklahoma.

## JURISDICTION AND VENUE

9.      Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. §§1332(d), because the Oklahoma Class is made up of Oklahoma consumers and citizens of Oklahoma not from Defendant's home State, there are more than 100 Class Members, and the amount-in-controversy exceeds $5,000,000 exclusive of interest and costs.

10.     This Court has jurisdiction over the Defendant named herein because Defendant is a foreign corporation or association authorized to do business in Oklahoma and registered with the Oklahoma Secretary of State, does sufficient business in Oklahoma, and has sufficient minimum contacts with Oklahoma or otherwise intentionally avails itself of the laws and markets of Oklahoma, through the promotion, sale, marketing and distribution of its merchandise in Oklahoma, to render the exercise of jurisdiction by the Oklahoma courts permissible.

11.     Venue is proper in this District under 28 U.S.C. §1391(b) because Defendant's improper conduct alleged in this complaint occurred in, was directed from, and/or emanated from this judicial district, because Defendant has caused harm to Class Members residing in this district, and/or because the Defendant is subject to personal jurisdiction in this district.

12.     In addition, Defendant operates over 50 stores in Oklahoma and has received substantial compensation from Oklahoma consumers who purchase goods from Defendant.

3

## FACTUAL ALLEGATIONS

13.     Dollar General operates a chain of variety stores headquartered in Goodlettsville, Tennessee. As of January 2015, Dollar General operated over 12,198 stores in 43 states, with over 50 stores located in the State of Oklahoma.

14.     Dollar General is a discount retailer focused on low and fixed income consumers in small markets. Dollar General's business model includes locating its stores in rural, suburban communities, and in its more densely populated markets, Dollar General's customers are generally from the neighborhoods surrounding the stores. Dollar General's stores are generally located with the needs of its core customers (low and fixed income households) in mind.

15.     Dollar General offers basic everyday and household needs, along with a variety of general merchandise at low prices to provide its customers with one-stop shopping opportunities generally in their own neighborhoods.

16.     In addition to offering name brand and generic merchandise, Dollar General manufactures and markets its own lines of inexpensive household products, which bear the designation "DG."  DG lines include "DG Auto," "DG Hardware" "DG Health" and "DG Office."

17.     Dollar General's DG Auto line consists of three types of obsolete motor oil: DG SAE 10W-30, DG SAE 10W-40 and DG SAE-30 that either fail to protect, or can actively damage, modern-day automobiles.

18.     Motor oils lubricate the engines of the automobiles driven by individuals. Their main function is to reduce wear on an engine's moving parts. Motor oils also inhibit corrosion, improve sealing and keep engines properly cooled.

4

19.    Motor oils have evolved in parallel with the automobiles they are meant to protect. Institutions like the Society of Automotive Engineers ("SAE") employ rigorous tests to ensure that motor oils meet evolving standards relating to, among other criteria, sludge buildup, temperature volatility, resistance to rust, resistance to foaming, resistance to oil consumption, homogeneity and miscibility.

20.    Motor oils designed to protect engines from earlier eras do not protect, and can harm, modern-day engines.   Thus, motor oil that would be suitable to use in an engine manufactured in the 1980's or earlier is not suitable for use in modern-day engines.

21.    Plaintiff asserts that Dollar General engages in the unfair, unlawful, deceptive and fraudulent practice of marketing, selling and causing to be manufactured less expensive, obsolete motor oil that is unsuitable for, and can harm, the vehicles driven by the overwhelming majority of Dollar General's customers.  Dollar General also engages in the unfair, unlawful, deceptive and fraudulent practices of concealing the obsolete and harmful nature of its motor oil from its customers through deceitful product placement tactics and misleading labels which obscure a critical fact from Dollar General's customers:  Dollar General's motor oil is unfit for, and can harm, the vehicles driven by the vast majority, if any, of its customers.

22.    Dollar General's in-house motor oils use the same or similar SAE nomenclature on the front of its labels (*e.g.*, 10W-30, 10W-40, SAE 30) as do the other brands of motor oil sold by Dollar General and beside which Dollar General places its DG brand motor oil on its shelves.

23.    However, among the small print on the back label of Dollar General's motor oils is the statement that DG SAE 10W-30 and DG SAE 10W-40 are admittedly "not suitable for use in most gasoline powered automotive engines built after 1988" and "may not provide adequate

5

protection against the build-up of engine sludge" and that DG SAE 30 is admittedly "not suitable for use in most gasoline powered automotive engines built after 1930," and its "use in modern engines may cause unsatisfactory engine performance or equipment harm."

24.     Dollar General conceals this language by rendering it in small font and confining it to the product's back label.

25.     Dollar General further conceals this language by placing it below a message that presents a misleading impression of the product and is likely the only message customers encounter, if they examine the back label at all.  For the DG SAE 10W-30 and DG SAE 10W-40 products, that message reads, "SAE 10W-30 motor oil is an all-season, multi-viscosity, heavy duty detergent motor oil recommended for gasoline engines in older model cars and trucks.  This oil provides oxidation stability, antiwear performance, and protection against deposits, rust and corrosion."  For the DG SAE 30 product, that message reads: "DG Quality SAE 30 is a non-detergent motor oil designed for use in older engines where consumption may be high and economical lubricants are preferred."

26.     Few, if any, Dollar General customers drive vehicles for which these products are safe, and the use of the term "older" is a relative term that does not inform a reasonable consumer that these motor oils are not safe for cars manufactured within the past 27 years, or in the case of Dollar General's DG SAE 30, the past 85 years.

27.     Dollar General further disguises the obsolete and harmful nature of its motor oils with its positioning of these motor oils on its shelves in a misleading manner.  Specifically, Dollar General places similar quantities of its in-house brand motor oils, DG SAE 10W-30, DG SAE 10W-40 and DG SAE 30, none of which are suitable for modern-day automobiles, adjacent

6

to an array of other motor oils which are suitable for modern-day vehicles. The photograph below illustrates how Dollar General effects this deception:



28.     As the photograph above illustrates, Dollar General places its in-house brand motor oils on the same shelves, in the same or similar quantities, as PEAK, Pennzoil, Castrol and other legitimate motor oils that are suitable for modern-day automobiles. Each type of motor oil uses the SAE nomenclature on the front, *e.g.*, 10W-40. The only apparent difference is the price, as Dollar General's motor oils are less expensive than the others.

29.     Defendant's product display conceals the fact that these Dollar General-brand motor oils have an extremely obscure and limited use and are likely to cause damage to the engines of most of the consumers purchasing motor oil. Instead, by using this deceptive method of product positioning, along with its deceptive label, Dollar General misleads consumers into thinking that the quality of the Dollar General-brand motor oils are the same type of oil and are

7

comparable to that of the other motors oils sold by Dollar General. This impression is false and misleading. Dollar General's motor oils are of a much lower quality than non-Dollar General motor oils, and they are only fit for a negligible fraction of the vehicles on the road today. Arguably, Dollar General's motor oils do not belong anywhere on Dollar General's shelves, let alone adjacent to standard- or premium-quality motor oils.

30.     Dollar General also fails to warn its customers adequately of the obsolete nature of DG-branded motor oils or of the dangers DG-branded motor oils pose to the very automobiles its customers are trying to protect by purchasing Dollar General's motor oil. An adequate warning for Dollar General's obsolete motor oils would be displayed conspicuously and would inform Dollar General's customers of the appropriate uses, if any, of the various types of Dollar General motor oils. But Dollar General provides its customers with no such conspicuous warnings. Instead, the company buries the aforementioned statements on the backs of its products in small type where customers are unlikely to encounter them.

31.     DG SAE 10W-30 bears the following labels on its front (left) and back (right):



The photograph below is a close-up of DG SAE 10W-30's back label, which includes the following small print language, "IT IS NOT SUITABLE FOR USE IN MOST GASOLINE POWERED AUTOMOTIVE

ENGINES BUILT AFTER 1988" and "IT MAY NOT PROVIDE ADEQUATE PROTECTION AGAINST THE BUILD-UP OF ENGINE

SLUDGE":



32.    DG SAE 10W-40 bears the following labels on its front (left) and back (right):



The following photograph is a close-up of DG SAE 10W-40's back label, which includes the

following small print language, "IT IS NOT SUITABLE FOR USE IN MOST GASOLINE POWERED AUTOMOTIVE

ENGINES BUILT AFTER 1988" and "IT MAY NOT PROVIDE ADEQUATE PROTECTION AGAINST THE BUILD-UP OF ENGINE

SLUDGE":



33.     DG SAE 30 bears the following the labels on its front (left) and back (right):



The photograph below is a close-up of DG SAE 30's back label which includes the following

small print language, "IT IS NOT SUITABLE FOR USE IN MOST GASOLINE POWERED AUTOMOTIVE ENGINES BUILT

AFTER 1930" and "USE IN MODERN ENGINES MAY CAUSE UNSATISFACTORY ENGINE PERFORMANCE OR EQUIPMENT

HARM":



34.     Dollar General's entire line of low-cost motor oil is unsuitable for the modern-day vehicles driven by its customers and has no business being sold by Dollar General, except that it is successfully deceiving a sufficient number of customers to make this fraudulent practice worthwhile. It is unfair, unlawful, deceptive and fraudulent for Dollar General to manufacture, distribute, market, and sell an entire line of motor oil that is unfit for, and presents concrete dangers to, the automobiles driven by the vast majority of its customers.

35.     Dollar General knew or should have known that its customers are being deceived by its marketing strategy based on the quantity of its obsolete DG motor oil sold compared to the limited number of automobiles for which these oils are appropriate.

36.     Oklahoma's consumer protection laws, and the consumer protection laws of every other State and the District of Columbia, are designed to protect consumers from this type of false advertising and predatory conduct.

37.     Defendant's unfair and deceptive course of conduct victimized all purchasers of Dollar General's motor oil from Dollar General, throughout the country.

11

38.     As a direct and proximate result of Dollar General's deceptive and unfair practices, Plaintiff and the Class Members purchased a product and have suffered and will continue to suffer economic damages.

39.     In addition, many Class Members may have sustained damage to their automobiles as a result of the use of Dollar General's DG-branded motor oil and may have suffered and will continue to suffer economic damage as a result.

40.     Plaintiff therefore brings the statutory and common law claims alleged herein to halt Dollar General's deceptive practices and to obtain compensation for the losses suffered by Plaintiff and all Class Members.

## CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this class action pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of himself and all members of the following Class:

**All persons in the State of Oklahoma who purchased Defendant's DG-branded motor oil, DG SAE 10W-30, DG SAE 10W-40 and/or DG SAE 30, from at least 2010 to present.**

42.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

43.     Specifically excluded from the proposed Class are Dollar General, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, successors, assigns, or other persons or entities related to or affiliated with Dollar General and/or its officers and/or directors, or any of them.  Also excluded from the proposed Class are the Court, the Court's immediate family and Court staff.

12

44.   **Numerosity.** Membership in the Class is so numerous that separate joinder of each member is impracticable.  The precise number of Class Members is unknown at this time but can be readily determined from Defendant's records.  Plaintiff reasonably estimates that there tens of thousands of persons in the Class.

45.   **Adequacy of Representation.** Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiff has retained counsel highly experienced in complex consumer class action litigation and intends to prosecute this action vigorously.  Plaintiff is a member of the Class described herein and does not have interests antagonistic to, or in conflict with, the other members of the Class.

46.   **Typicality.** Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and all members of the Class purchased obsolete, harmful, deceptively labeled and deceptively marketed motor oil from Dollar General and were subjected to Defendant's common course of conduct.

47.   **Existence and Predominance of Common Questions of Law and Fact.** There are numerous and substantial questions of law and fact common to all Class Members that control this litigation and predominate over any individual issues.  Included within the common questions are:

      a) The amount of Defendant's in-house brand motor oil it sold relative to the other brands of oil on its shelves;

      b) The amount of Defendant's in-house brand motor oil it sold relative to the limited number of automobiles for which these motor oils are appropriate;

      c) Whether Defendant studied the effect of its product placement on its shelves;

d) Whether Defendant studied or tested its label and the effect of its labels on consumers' perceptions;

e) Whether Defendant studied the susceptibility of consumers;

f) The cost to Defendant to manufacture, distribute, market and sell its DG-branded motor oil compared to the revenue it received from its sales;

g) Whether Defendant misrepresented the safety and suitability of its DG-branded motor oil sold at its stores nationwide;

h) Whether Defendant maintained a corporate policy of producing and selling obsolete, harmful, deceptively labeled and deceptively marketed motor oil;

i) Whether the placement of the obsolete Dollar General motor oil was unfair or deceptive;

j) Whether the warnings provided on the labels of Dollar General's motor oil were conspicuous;

k) Whether Defendant deliberately misrepresented or failed to disclose material facts to Plaintiff and Class Members regarding the obsolete and harmful nature of its DG-branded motor oil;

l) Whether Defendant's conduct and scheme to defraud Plaintiff and Class Members is unfair, misleading, deceitful, and/or unlawful;

m) Whether the acts of Defendant violated, Oklahoma common and statutory law;

n) Whether Plaintiff and the Classes have been damaged;

o) The proper method for calculating the damages suffered by Plaintiff and Class Members; and

14

    p) Whether Plaintiff and Class Members are entitled to declaratory, injunctive and/or other equitable relief.

48.    **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

    a) Given the size of the claims of individual Class Members, as well as the resources of Dollar General, few Class Members, if any, could afford to seek legal redress individually for the wrongs alleged herein;

    b) This action will permit an orderly and expeditious administration of the claims of Class Members, will foster economies of time, effort and expense and will ensure uniformity of decisions;

    c) Any interest of Class Members in individually controlling the prosecution of separate actions is not practical, creates the potential for inconsistent or contradictory judgments and would create a burden on the court system;

    d) Without a class action, Class Members will continue to suffer damages, Defendant's violations of law will proceed without remedy, and Defendant will continue to reap and retain the substantial proceeds derived from its wrongful and unlawful conduct. Plaintiff and Class Members have suffered damages as a result of Defendant's unlawful and unfair conduct. This action presents no difficulties that will impede its management by the Court as a class action.

49.    Certification is also warranted under Rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief and declaratory relief appropriate with respect to the Classes as a whole.

50.     The claims asserted herein are applicable to all individuals throughout the United

States who purchased obsolete, harmful, deceptively labeled and deceptively marketed motor oil

from Dollar General.

## CLAIMS FOR RELIEF

51.     Based on the foregoing allegations, Plaintiff's claims for relief include the

following:

### COUNT I
### UNFAIR AND DECEPTIVE ACTS IN
### VIOLATION OF THE OKLAHOMA CONSUMER PROTECTION ACT
### (15 O.S. § 752 et seq.)

52.     Plaintiff incorporates by reference, as though fully set forth herein, each and every

allegation and statement in the foregoing paragraphs.

53.     Plaintiff brings this claim on behalf of himself and the Oklahoma Class.

54.     The Oklahoma Consumer Protection Act prohibits unlawful practices, 15 O.S. §

753(20), that are unfair or deceptive as defined in Section 752.

55.     Section 752(13) provides: "'Deceptive trade practice' means a misrepresentation,

omission or other practice that has deceived or could reasonably be expected to deceive or

mislead a person to the detriment of that person. Such a practice may occur before, during or

after a consumer transaction is entered into and may be written or oral." Section 752(14)

provides: "'Unfair trade practice' means any practice which offends established public policy or

if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to

consumers."

16

56.     As Plaintiff alleges in the preceding paragraphs, Defendant has violated the
Oklahoma Consumer Protection Act by engaging in unconscionable commercial practices, using
deception and fraud, false pretenses, false promises, misrepresentations, and knowingly
concealing, suppressing, and omitting material facts, intending that others rely upon the
concealment, suppression and omission of such facts, in connection with the sale of its DG brand
motor oil.

57.     In its advertising for the obsolete DG-branded motor oil, Defendant makes false
and misleading statements the product will "lubricate and protect your engine," deceptively
places the products next to legitimate motor oils, and fails to conspicuously or adequately warn
consumers that the DG-branded motor oil is not suitable for most vehicles and can harm vehicles
manufactured after 1988 (or 1930).

58.     Defendant is aware that its conduct is likely to deceive reasonable consumers. The
misrepresentations, misleading labeling, misleading marketing and placement of its product,
conduct and inadequate disclosures and warnings by Defendant are material and constitute an
unfair and deceptive business practice.

59.     Defendant's business practices as alleged herein are likely to deceive customers
into believing that DG-branded motor oil is actually useful for the purpose for which it is sold (to
protect and lubricate the Class members' motor vehicle engines), and it knows the warnings in
small print on the back of products underneath misleading information about the product
characteristics will deceive consumers into purchasing oil that has no use to them, is worthless,
and which can actually harm their vehicles.

60.     Defendant's use of various forms of advertising media to advertise, call attention
to or give publicity to the sale of goods or merchandise which are not as represented constitutes

17

unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice.

61.     Defendant's misrepresentations and omissions were likely to deceive a reasonable consumer, and the information would be material to a reasonable consumer.

62.     All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Dollar General's business. Dollar General's wrongful conduct is a part of a pattern of generalized course of conduct that is still perpetuated and repeated, in the State of Oklahoma.

63.     Plaintiff and the members of the Class seek an order of this Court enjoining Defendant from engaging in the unfair competition alleged herein and corrective advertising in connection with the sale of DG-motor oil. Additionally, Plaintiff requests an order awarding Plaintiff and the Class restitution of the money wrongfully acquired by Defendant by means of the unfair and deceptive acts alleged herein. Plaintiff and other members of the Class have suffered injury in fact and have lost money as a result of Defendant's unfair and deceptive conduct.

64.     Plaintiff and the Class request that the Court award punitive as well as attorney's fees, costs, and expenses, pursuant to Oklahoma law as well as any and all such additional legal and/or equitable relief to which Plaintiff and the Oklahoma Class Members may be entitled.

## COUNT II

### BREACH OF IMPLIED WARRANTY OF MERCHANTABLITY
### (12A O.S. § 2-314)

65.     Plaintiff incorporates the above allegations by reference as if fully set forth
         herein.

18

66.     Beginning at an exact date unknown to Plaintiff, but at least since four years prior to the filing date of this action, and as set forth above, Defendant represented to consumers, including Plaintiff and Class Members, by labeling/packaging and other means, that DG SAE 10W-30, DG SAE 10W-40, and DG SAE 30 are safe and suitable for use in the automobiles driven by Dollar General's customers. Plaintiff and Class Members bought those goods from the Defendant.

67.     Defendant was a merchant with respect to goods of the kind which were sold to Plaintiff and Class Members, and there was in the sale to Plaintiff and Class Members an implied warranty that those goods were merchantable.

68.     However, Defendant breached that warranty implied in the contract for the sale of goods in that Dollar General's DG-branded motor oil is in fact not suitable for use in the vehicles driven by the vast majority, if any, of Dollar General's customers, as set forth in greater detail above.

69.     As a result thereof Plaintiff and Class Members did not receive goods as impliedly warranted by Defendant to be merchantable.

70.     As a proximate result of this breach of warranty by Defendant, Plaintiff and Class Members have been damaged in an amount to be determined at trial.

## COUNT III

### Breach of Implied Warranty of Fitness for a Particular Purpose
### (12 O.S. § 2-315)

71.     Plaintiff incorporates the above allegations by reference as if fully set forth herein.

72.     Beginning at an exact date unknown to Plaintiff, but at least since four years prior to the filing date of this action, and as set forth above, Defendant sold its DG-branded motor oils

to Plaintiff and Class Members, who bought those goods from Defendant in reliance on Defendant's skill and judgment.

73.     At the time of sale, Defendant had reason to know the particular purpose for which the goods were required, and that Plaintiff and Class Members were relying on Defendant's skill and judgment to select and furnish suitable goods so that there was an implied warranty that the goods were fit for this purpose.

74.     However, Defendant breached the warranty implied at the time of sale in that Plaintiff and Class Members did not receive suitable goods, and the goods were not fit for the particular purpose for which they were required in that Dollar General's DG-branded motor oils are not safe or suitable for use in the vast majority, if any, of vehicles driven by Dollar General's customers, as set forth in detail above.

75.     As a proximate result of this breach of warranty by Defendant, Plaintiff and Class Members have been damaged in an amount to be determined at trial.

## COUNT IV

### Unjust Enrichment

76.     Plaintiff incorporates the above allegations by reference as if fully set forth herein.

77.     A benefit has been conferred upon Dollar General by Plaintiff and Class Members in their purchase of Defendant's DG-branded motor oil.

78.     If Plaintiff and Class Members had been aware that Dollar General's DG-branded motor oil was not suitable for use in their vehicles, they would not have purchased the product.

79.     Under principles of equity and good conscience, Dollar General should not be permitted to retain revenue that they acquired by virtue of their unlawful conduct. All funds,

revenue, and benefits received by Dollar General rightfully belong to Plaintiff and Class Members, which Dollar General has unjustly received as a result of its actions.

## DEMAND/PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself and members of the Class and Sub-Class defined herein, prays for judgment and relief as follows:

A. An order certifying that this action may be maintained as a class action;

B. An award to Plaintiff and Class Members of full restitution;

C. An order enjoining Defendant from engaging in the unfair and/or deceptive acts or practices, as set forth in this Complaint;

D. Compensatory damages;

E. Punitive Damages;

F. Restitution and disgorgement of the unlawful profits collected by the Defendant;

G. An order providing for declaratory and/or injunctive relief:

    1. Declaring that Defendant must provide accurate representations of the quality of the motor oil sold at its stores;

    2. Enjoining Defendant from continuing the deceptive practices alleged herein; and

    3. Granting other extraordinary equitable and/or injunctive relief as permitted by law, including specific performance, reformation and imposition of a constructive trust;

H. Prejudgment and post-judgment interest at the prevailing legal rate;

I. Plaintiff's attorneys' fees and costs of suit; and

J. Such other and further relief as the Court may deem necessary and appropriate.

## JURY DEMAND

       Plaintiff and Class Members, pursuant to Fed. R. Civ. P. 38(b), hereby demand trial by jury.

Dated:   December 21, 2015                    Respectfully submitted,

       /s/   Wilfred K. Wright Jr._____
       Wilfred K. Wright Jr. OBA #16349
       **WRIGHT LAW PLC**
       P.O. BOX 982
       Claremore Oklahoma 74018
       (918) 341-1923 tele/facsimile

       Allan Kanner, Esq. OBA#20948
       Conlee Whiteley Esq.
       Cindy St. Amant, Esq.
       **KANNER & WHITELEY, LLC**
       701 Camp Street
       New Orleans, LA 70130
       (504) 524-5777
       (504) 524-5763 - Facsimile

       *Attorneys for Plaintiff and those similarly situated*

1  Gillian Wade, Esq. (State Bar No. 229124)
   gwade@milsteinadelman.com
2  Sara D. Avila (State Bar. No. 263213)
   savila@milsteinadelman.com
3  **MILSTEIN ADELMAN, LLP**
   10250 Constellation Boulevard, 14th Floor
4  Los Angeles, California 90067
   Telephone: (310) 396-9600
5  Facsimile:  (310) 396-9635

6  Allan Kanner, Esq. (State Bar No. 109152)
   a.kanner@kanner-law.com
7  Conlee Whiteley, Esq. (*Pro Hac Vice*)
   c.whiteley@kanner-law.com
8  Cynthia St. Amant, Esq. (*Pro Hac Vice*)
   c.stamant@kanner-law.com
9  **KANNER & WHITELEY, L.L.C.**
   701 Camp Street
10 New Orleans, LA 70130
   Telephone: (504) 524-5777
11 Facsimile: (504) 524-5763

12  Attorneys for Plaintiff

13              **UNITED STATES DISTRICT COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
14

15  DAVID SANCHEZ, individually and      Case No.  2:15-cv-9730
    on behalf of all others similarly
16  situated,
                                         CLASS ACTION COMPLAINT AND
17          Plaintiff,                   DEMAND FOR JURY TRIAL
            v.
18                                       1. Violations of the Consumer Legal
19  DOLGENCORP, LLC, (d/b/a                 Remedies Act, *California Civil*
    DOLLAR GENERAL,                         *Code* §1750, *et seq.*
20  CORPORATION), a Kentucky limited
    liability company,                   2. Violations of False and Misleading
21                                          Advertising Law, *California*
            Defendant.                      *Business and Professions Code*
22                                          §17500, *et seq.*
23                                       3. Violations of Unfair Competition
                                            Law, *California Business and*
24                                          *Professions Code* §17200, *et seq.*
25                                          (unfair and fraudulent prongs)
26                                       4. Violations of Unfair Competition
                                            Law, *California Business and*
27                                          *Professions Code* §17200, *et seq.*
                                            (unlawful conduct prong)
28

    Class Action Complaint            1

5. Violations of the Song-Beverly Consumer Warranty Act, *California Civil Code* §§1792 & 1791.1(a).
6. Violations of the Song-Beverly Consumer Warranty Act, *California Civil Code* §§1792.1 & 1791.1(b)
7. Breach of Implied Warranty of Merchantability
8. Breach of Implied Warranty of Fitness for a Particular Purpose

Plaintiff David Sanchez ("Plaintiff"), individually and on behalf of all others similarly situated, makes the following allegations based on his personal knowledge of his own acts and, otherwise, upon information and belief based on investigation of counsel.

### NATURE AND SUMMARY OF THE ACTION

1. Plaintiff, by and through undersigned counsel, brings this action both on his own behalf and on behalf of the class and sub-class defined below, comprised of all individuals similarly situated nationwide and within the State of California, to redress the unlawful and deceptive practices employed by Defendant, DOLGENCORP, LLC, (d/b/a Dollar General, Corporation), (hereinafter "Dollar General" or "Defendant") in connection with its marketing and sale of its company-branded motor oil sold in its stores.

2. Dollar General sells an entire line of company-branded motor oils (labeled "DG") that are obsolete and potentially harmful to its customers' automobiles by using deceptive and misleading sales and marketing tactics including: (a) the positioning of its DG line of obsolete motor oils immediately adjacent to the more expensive standard- and premium-quality motor oils manufactured by its competitors and (b) failing to adequately warn its customers that its DG motor oil is unsuitable for use by the vast majority, if not all, of its customers.

3. Dollar General's unlawful and deceptive business practices violate California's Unfair Competition Law, *Business & Professions Code* §17200, *et seq.* ("UCL"); California's False Advertising Law, *Business & Professions Code* §17500, et seq. ("FAL"); California's Consumer Legal Remedies Act, *Civil Code* §1750, *et seq.* ("CLRA"); the Song-Beverly Consumer Warranty Act, *Civil Code* §§ 1792 and 1791, *et seq.;* and the contractual rights of consumers.

## JURISDICTION AND VENUE

4. Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. §§1332(d), because members of the proposed Class and Sub-Class are citizens of States different from Defendant's home states of Kentucky and Tennessee, there are more than 100 Class Members, and the amount-in-controversy exceeds $5,000,000 exclusive of interest and costs.

5. This Court has jurisdiction over Defendant because Defendant is a foreign corporation or association authorized to do business in California and registered

Class Action Complaint                    3

1  with the California Secretary of State, does sufficient business in California, and

2
3  has sufficient minimum contacts with California or otherwise intentionally avails

4  itself of the laws and markets of California, through the promotion, sale, marketing

5  and distribution of its merchandise in California, to render the exercise of

6
7  jurisdiction by the California courts permissible.

8  6. Venue is proper in this District under 28 U.S.C. §1391(b) and (c) because

9
10  Defendant's improper conduct alleged in this complaint occurred in, was directed

11  from, and/or emanated from this judicial district, because Defendant has caused

12  harm to Class Members residing in this district, and/or because the Defendant is

13  subject to personal jurisdiction in this district.

14
15  7. In addition, Defendant operates over 100 stores in California and has

16  received substantial compensation from California consumers who purchase goods

17  from Defendant.

18
19  **PARTIES**

20  8. Plaintiff David Sanchez is an individual adult resident of Norwalk in Los

21  Angeles County, California and is a member of the Class and Sub-Class alleged

22
23  herein.

24  9. Plaintiff purchased Dollar General's DG SAE 10W-30 motor oil from Dollar

25  General's store in Norwalk, California, on three separate occasions in 2014 for his

26
27  1999 Honda Accord.

28

Class Action Complaint                    4

10. Defendant DOLGENCORP, LLC, d/b/a Dollar General Corporation, is incorporated under the laws of the State of Kentucky, with its headquarters located at 100 Mission Ridge, Goodlettsville, Tennessee. Dollar General maintains over 100 stores throughout the state of California.

11. At all relevant times, Defendant produced, marketed, distributed and sold its obsolete DG-branded motor oil in its stores throughout the United States, including in the State of California, utilizing deceptive and misleading marketing and sales practices to induce Plaintiff and Class Members into purchasing its obsolete motor oil for use in their modern-day vehicles knowing that its motor oil is obsolete and likely to cause damage to any such vehicle.

## FACTUAL ALLEGATIONS

12. Dollar General operates a chain of variety stores headquartered in Goodlettsville, Tennessee. As of January 2015, Dollar General operated over 12,198 stores in 43 states, with close to 150 stores located in the State of California.

13. Dollar General is a discount retailer focused on low and fixed income consumers in small markets. Dollar General's business model includes locating its stores in rural, suburban communities, and in its more densely populated markets, Dollar General's customers are generally from the neighborhoods surrounding the stores. Dollar General's stores are located with the needs of its core customers (low and fixed income households) in mind.

14. Dollar General offers basic every day and household goods, along with a variety of general merchandise at low prices to provide its customers with one-stop shopping opportunities generally in their own neighborhoods.

15. In addition to offering name brand and generic merchandise, Dollar General distributes and markets its own lines of inexpensive household products, which bear the designation "DG." DG lines include "DG Auto," "DG Hardware" "DG Health" and "DG Office."

16. Dollar General's DG Auto line consists of three types of obsolete motor oil: DG SAE 10W-30, DG SAE 10W-40 and DG SAE-30 that fail to protect and can actively damage, modern-day automobiles.

17. Motor oils lubricate the engines of the automobiles driven by individuals. Their main function is to reduce wear on an engine's moving parts. Motor oils also inhibit corrosion, improve sealing and keep engines properly cooled.

18. Motor oils have evolved in parallel with the automobiles they are meant to protect. Institutions like the Society of Automotive Engineers ("SAE") employ rigorous tests to ensure that motor oils meet evolving standards relating to, among other criteria, sludge buildup, temperature volatility, resistance to rust, resistance to foaming, resistance to oil consumption, homogeneity and miscibility.

19. Motor oils designed to protect engines from earlier eras do not protect, and can harm, modern-day engines. Thus, motor oil that would be suitable to use in an

1   engine manufactured in the 1980's or earlier is not suitable for use in modern-day

2

3   engines.

4       20.   Dollar General engages in the unfair, unlawful, deceptive and fraudulent

5   practice of marketing, selling and causing to be manufactured, obsolete motor oil

6
7   without adequately warning that its product is unsuitable for, and can harm, the

8   vehicles driven by the overwhelming majority of Dollar General's customers (and

9.  the public at large).

10
11      21.   Dollar General misleads customers by using product placement tactics and

12  misleading product labels which obscure a critical fact from Dollar General's

13  customers:   Dollar General's motor oil is unfit for, and can harm, the vehicles

14
15  driven by the vast majority, if not all, of its customers.

16      22.   Dollar General's in-house motor oils use the same or similar SAE

17  nomenclature on the front of its labels (*e.g.*, 10W-30, 10W-40, SAE 30) as do the

18
19  other mainstream, non-harmful, and actually useful brands of motor oil sold by

20  Dollar General.   Dollar General places its DG brand motor oil next to these brand

21  motor oil products on its shelves.

22
23      23.   Additionally, the front label of DG's SAE 10W-30 and SAE 10W-40

24  motor oils says, "Lubricates and protects your engine."

25      24.   However, among the small print on the back label of Dollar General's

26
27  motor oils is the statement that DG SAE 10W-30 and DG SAE 10W-40 are

28  admittedly "not suitable for use in most gasoline powered automotive engines built

after 1988" and "may not provide adequate protection against the build-up of engine sludge" and that DG SAE 30 is admittedly "not suitable for use in most gasoline powered automotive engines built after 1930," and its "use in modern engines may cause unsatisfactory engine performance or equipment harm."

25.   Dollar General conceals this language by rendering it in small font and confining it to the product's back label, which is not visible when the products are on the store shelves.

26.   Dollar General further conceals this language by placing it below a misleading and contradictory message regarding the product.  For the DG SAE 10W-30 and DG SAE 10W-40 products, that message reads: "SAE 10W-30 motor oil is an all-season, multi-viscosity, heavy duty detergent motor oil recommended for gasoline engines in older model cars and trucks.  This oil provides oxidation stability, antiwear performance, and protection against deposits, rust and corrosion."   For the DG SAE 30 product, that message reads: "DG Quality SAE 30 is a non-detergent motor oil designed for use in older engines where consumption may be high and economical lubricants are preferred."

27.   Few, if any, Dollar General customers drive vehicles for which these products are safe, and the use of the term "older" is a relative term that does not inform a reasonable consumer that these motor oils are not safe for cars manufactured within the past *27 years*, or in the case of Dollar General's DG SAE 30, the past *85 years*.

28.   Dollar General further disguises the obsolete and harmful nature of its motor oils with its positioning of these motor oils on its shelves in a misleading manner.  Specifically, Dollar General places similar quantities of its in-house brand motor oils, DG SAE 10W-30, DG SAE 10W-40 and DG SAE 30, none of which is suitable for modern-day automobiles, adjacent to an array of other motor oils which are suitable for modern-day vehicles.

29.   Dollar General places its in-house brand motor oils on the same shelves, in the same or similar quantities, as PEAK, Pennzoil, Castrol and other legitimate motor oils that are suitable for modern-day automobiles.  Each type of motor oil uses the SAE nomenclature on the front, *e.g.*, 10W-40.  The only apparent difference is the price, as Dollar General's motor oils are less expensive than the others.

30.   Defendant's product display conceals the fact that its DG-brand motor oils have an extremely obscure and limited use and are likely to cause damage to the engines of most of its customers' cars.  Defendant's product positioning and the deceptive label on the motor oil are likely to deceive reasonable consumers.

31.   Dollar General also fails to warn its customers adequately of the obsolete nature of DG-branded motor oils or of the dangers DG-branded motor oils pose to the very automobiles its customers are trying to protect by purchasing Dollar General's motor oil.  An adequate warning for Dollar General's obsolete motor oils would be displayed conspicuously and would inform Dollar General's customers

1    of the appropriate uses, if any, of the various types of Dollar General motor oils.

2    But Dollar General provides its customers with no such conspicuous warnings.

3    Instead, the company buries the aforementioned statements on the back of its

4    products in small type where customers are unlikely to encounter them.

5        32.   DG SAE 10W-30 bears the following labels on its front (left) and back

6    (right):



7    The photograph below is a close-up of DG SAE 10W-30's back label, which

8    includes the warnings, "IT IS NOT SUITABLE FOR USE IN MOST GASOLINE

9    POWERED AUTOMOTIVE ENGINES BUILT AFTER 1988" and "IT MAY

10   NOT PROVIDE ADEQUATE PROTECTION AGAINST THE BUILD-UP OF

11   ENGINE SLUDGE":



33.  DG SAE 10W-40 bears the following labels on its front (left) and back (right):

The following photograph is a close-up of DG SAE 10W-40's back label, which includes the warnings, "IT IS NOT SUITABLE FOR USE IN MOST GASOLINE POWERED AUTOMOTIVE ENGINES BUILT AFTER 1988" and "IT MAY NOT PROVIDE ADEQUATE PROTECTION AGAINST THE BUILD-UP OF ENGINE SLUDGE":



34. DG SAE 30 bears the following the labels on its front (left) and back (right):



The photograph below is a close-up of DG SAE 30's back label which includes the warnings, "IT IS NOT SUITABLE FOR USE IN MOST GASOLINE POWERED AUTOMOTIVE ENGINES BUILT AFTER 1930" and "USE IN MODERN ENGINES MAY CAUSE UNSATISFACTORY ENGINE PERFORMANCE OR EQUIPMENT HARM":

35.  Dollar General's entire line of low-cost motor oil is unsuitable for the modern-day vehicles driven by its customers and has no business being sold by, except that Dollar General is successfully deceiving a sufficient number of customers to make this fraudulent practice worthwhile.  It is unfair, unlawful, deceptive and fraudulent for Dollar General to distribute, market, and sell an entire line of motor oil that is unfit for, and presents concrete dangers to, the automobiles driven by the vast majority of its customers.

36.  Dollar General knew or should have known that its customers are being deceived by its marketing strategy based on the quantity of its obsolete DG motor oil sold compared to the limited number of automobiles for which these oils are appropriate.

37.  California's consumer protection laws, and the consumer protection laws of every other State and the District of Columbia, are designed to protect consumers from this type of false advertising and predatory conduct.

38. Defendant's unfair and deceptive course of conduct victimized all purchasers of Dollar General's motor oil from Dollar General, throughout the country.

39. As a direct and proximate result of Dollar General's deceptive and fraudulent practices, Plaintiff and the Class Members purchased a product they would not have otherwise purchased and have suffered and will continue to suffer economic damages. Indeed, the products are worthless.

40. In addition, many Class Members have sustained damage to their automobiles as a result of the use of Dollar General's DG-branded motor oil and have suffered and will continue to suffer economic damage as a result.

41. Plaintiff therefore brings the statutory and common law claims alleged herein to halt Dollar General's deceptive practices and to obtain compensation for the losses suffered by Plaintiff and all Class Members.

**Unjust Enrichment**

42. Plaintiff and Class Members have conferred substantial benefits on the Defendant by purchasing its useless and harmful motor oil, and Dollar General has consciously and willingly accepted and enjoyed these benefits.

43. Defendant knew or should have known that consumers' payments for its obsolete and harmful motor oil were given and received with the expectation that the motor oil would lubricate and protect consumers' engines and would not be harmful to their vehicles.

Class Action Complaint                    14

44. Because of the fraudulent misrepresentations, concealments, and other wrongful activities described herein, Defendant has been unjustly enriched by its wrongful receipt of Plaintiff's and Class Members' monies.

45. As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and Class Members have suffered damages in an amount to be determined at trial.

46. Defendant should be required to account for and disgorge all monies, profits and gains which it has obtained or will unjustly obtain in the future at the expense of consumers.

## CLASS ACTION ALLEGATIONS

47. Plaintiff brings this class action pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of himself and all members of the following Class:

> **All persons in the United States who purchased Defendant's DG-branded motor oil, DG SAE 10W-30, DG SAE 10W-40 and/or DG SAE 30, for personal use and not for re-sale, since December 2011.**

48. Plaintiff also brings this class action pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of himself and all members of the following Sub-Class:

> **All persons in the State of California who purchased Defendant's DG-branded motor oil, DG SAE 10W-30, DG SAE 10W-40 and/or DG SAE 30, for personal use and not for re-sale, since December 2011.**

49. Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class and Sub-Class may be expanded or narrowed by amendment or amended complaint.

50. Specifically excluded from the proposed Class and Sub-Class are Dollar General, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, successors, assigns, or other persons or entities related to or affiliated with Dollar General and/or its officers and/or directors, or any of them. Also excluded from the proposed Class and Sub-Class are the Court, the Court's immediate family and Court staff.

## FRCP 23(a) Factors

51. **Numerosity.** Membership in the Class and Sub-Class is so numerous that separate joinder of each member is impracticable. The precise number of Class Members is unknown at this time but can be readily determined from Defendant's records. Plaintiff reasonably estimates that there are hundreds of thousands of persons in the Class and tens of thousands of persons in the Sub-Class.

52. **Adequacy of Representation.** Plaintiff will fairly and adequately represent and protect the interests of the members of the Class and Sub-Class. Plaintiff has retained counsel highly experienced in complex consumer class action litigation and intends to prosecute this action vigorously. Plaintiff is a member of the Class and Sub-Class described herein and does not have interests antagonistic to, or in conflict with, the other members of the Class and Sub-Class.

Class Action Complaint                    16

53. **Typicality.** Plaintiff's claims are typical of the claims of the members of the Class and Sub-Class. Plaintiff and all members of the Class and Sub-Class purchased obsolete, harmful, deceptively labeled and deceptively marketed motor oil from Dollar General and were subjected to Defendant's common course of conduct.

54. **Existence and Predominance of Common Questions of Law and Fact.** There are numerous and substantial questions of law and fact common to all Class Members sufficient to satisfy Rule 23(a), and that control this litigation and predominate over any individual issues for purposes of Rule 23(b)(3). Included within the common questions are:

a) The amount of Defendant's in-house brand motor oil it sold relative to the other brands of oil on its shelves;

b) The amount of Defendant's in-house brand motor oil it sold relative to the limited number of automobiles for which these motor oils are appropriate;

c) Whether Defendant studied the effect of its product placement on its shelves;

d) Whether Defendant studied or tested its label and the effect of its labels on consumers' perceptions;

e) Whether Defendant studied the susceptibility of consumers;

Class Action Complaint                    17.

f) The cost to Defendant to manufacture, distribute, market and sell its DG-branded motor oil compared to the revenue it received from its sales;

g) Whether Defendant misrepresented the safety and suitability of its DG-branded motor oil sold at its stores nationwide;

h) Whether Defendant's conduct of placing the obsolete Dollar General motor oil next to legitimate, useful motor oil is likely to deceive reasonable consumers;

i) Whether the warnings provided on the labels of Dollar General's motor oil were adequate;

j) Whether Defendant's conduct of hiding the warnings on the back label is likely to deceive reasonable consumers;

k) Whether Defendant deliberately misrepresented or failed to disclose material facts to Plaintiff and Class Members regarding the obsolete and harmful nature of its DG-branded motor oil;

l) Whether Dollar General's conduct, as alleged herein, is unlawful, unfair, or fraudulent under California's Unfair Competition Law, California Business & Professions Code §17200, *et seq.*;

m) Whether Dollar General's conduct, as alleged herein, violates California's Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.*;

n) Whether Dollar General's conduct, as alleged herein, violates California's False Advertising Law, California Business and Professions Code § 17500, *et. seq.*;

o) Whether the Class is entitled to injunctive relief prohibiting the wrongful practices alleged herein and enjoining such practices in the future;

p) Whether Plaintiff and members of the Class are entitled to restitution;

q) Whether compensatory, consequential and punitive damages ought to be awarded to Plaintiff and Class Members;

r) Whether Plaintiff and Class Members are entitled to attorneys' fees and expenses, and in what amount;

s) The proper method for calculating damages and restitution classwide; and

t) Whether Plaintiff and Class Members are entitled to declaratory and/or other equitable relief.

### FRCP 23(b)(2)

55.  Defendant has acted on grounds generally applicable to the entire Class and Sub-Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Classes as a whole.  The prosecution of separate actions by individual Class Members would create the risk

Class Action Complaint                                19

of inconsistent or varying adjudications with respect to individual member of the Classes that would establish incompatible standards of conduct for Defendant.

56. Injunctive relief is necessary to prevent further fraudulent and unfair business practices by Defendant. Money damages alone will not afford adequate and complete relief, and injunctive relief is necessary to restrain Defendant from continuing to commit its deceptive, fraudulent and unfair policies.

### FRCP 23(b)(3)

57. **Common Issues Predominate:** As set forth in detail herein above, common issues of fact and law predominate because all of Plaintiff's UCL, FAL CLRA, and warranty claims are based on a deceptive common course of conduct. Whether Dollar General's conduct is likely to deceive reasonable consumers and breaches the implied warranties of merchantability and fitness for a particular purpose is common to all members of the Classes and are the predominate issues, and Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims

58. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

    a) Given the size of the claims of individual Class Members, as well as the resources of Dollar General, few Class Members, if any, could afford to seek legal redress individually for the wrongs alleged herein;

b) This action will permit an orderly and expeditious administration of the claims of Class Members, will foster economies of time, effort and expense and will ensure uniformity of decisions;

c) Any interest of Class Members in individually controlling the prosecution of separate actions is not practical, creates the potential for inconsistent or contradictory judgments and would create a burden on the court system;

d) Without a class action, Class Members will continue to suffer damages, Defendant's violations of law will proceed without remedy, and Defendant will continue to reap and retain the substantial proceeds derived from its wrongful and unlawful conduct. Plaintiff and Class Members have suffered damages as a result of Defendant's unlawful and unfair conduct. This action presents no difficulties that will impede its management by the Court as a class action.

59. **Notice to the Class:** Notice can be accomplished by publication for most Class Members, and direct notice may be possible for those who are members of a Dollar General rewards program or for whom Dollar General has specific information. Further, publication notice can be easily targeted to Dollar General customers because Defendant only sells the subject motor oil in its own stores.

Class Action Complaint                      21

60. The Class members have suffered economic harm and suffered injury in fact as a result of Dollar General's misconduct, in that each member purchased Dollar General's useless and harmful motor oil.

## CLAIMS FOR RELIEF

61. Based on the foregoing allegations, Plaintiff's claims for relief include the following:

### FIRST CAUSE OF ACTION
### VIOLATION OF CALIFORNIA CIVIL CODE § 1750, *et seq.*
### *California Civil Code* §1750, *et seq.*
### (on behalf of the California Sub-Class)

62. Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

63. Plaintiff brings this claim under *Civil Code* § 1750, *et seq.*, the CLRA, on behalf of himself and the Class, who were subject to Defendant's above-described unfair and deceptive conduct.

64. As alleged hereinabove, Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and lost money or property as a result of Defendant's actions as set forth herein.

65. Plaintiff and members of the California Sub-Class are consumers as defined by California Civil Code section 1761(d). The DG-branded motor oils are goods within the meaning of California Civil Code section 1761(a).

66. Plaintiff is concurrently filing the declaration of venue required by *Civil Code* § 1780(d) with this complaint. This cause of action is asserted on behalf of a subclass of the putative California Sub-Class, comprised of those members who purchased DG-branded motor oil within three (3) years of the commencement of this action. Plaintiff and members of the Sub-Class are individuals who have purchased the goods (the DG-branded motor oil) for personal use.

67. Specifically, as described herein, Dollar General made the following representations, expressly or by implication to Plaintiff and Sub-Class Members about the deceptively labeled motor oil: (i) that Dollar General's DG-branded motor oil was suitable for use in its customers' automobiles; (ii) that Dollar General's DG-branded motor oil was safe to use in its customers' automobiles; and (iii) that Dollar General's DG-branded motor oil was of similar quality as the other motor oils beside which Dollar General's DG-branded motor oils were positioned on the shelves in Defendant's stores.

68. These representations were materially misleading.

69. Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code section 1770(a) in transactions with Plaintiff and members of the Sub-Class, which were intended to result in, and did result in, the sale of DG-branded motor oils:

> a. By representing that DG-branded motor oils "lubricate[] and protect[] your engine," placing the DG-branded motor oils on

shelves next to legitimate motor oils intended for use in modern day vehicles, and failing to adequately warn consumers of the harm their products can cause, Defendant is representing that DG-branded motor oils have characteristics, uses or benefits which they do not have, in violation of Civ. Code § 1770(a)(5);

b. By representing that DG-branded motor oils "lubricate[] and protect[] your engine," and placing the DG-branded motor oils on shelves next to legitimate motor oils intended for use in modern day vehicles, and failing to adequately warn consumers of the harm their products can cause, Defendant is representing that DG-branded motor oils are of a particular standard, quality, or grade, when they are of another, in violation of Civ. Code § 1770(a)(7);

c. By representing that DG-branded motor oils "lubricate[] and protect[] your engine," and placing the DG-branded motor oils on shelves next to legitimate motor oils intended for use in modern day vehicles, and failing to adequately warn consumers of the harm their products can cause, Defendant is "[a]dvertising goods... with intent not to sell them as advertised," in violation of Civ. C. 1770(a)(9); and,

d. By representing that DG-branded motor oils "lubricate[] and protect[] your engine," and placing the DG-branded motor oils on

shelves next to legitimate motor oils intended for use in modern day vehicles, and failing to adequately warn consumers of the harm their products can cause, Defendant has represented that the products have "been supplied in accordance with a previous representation when it has not," in violation of Civ. C. 1770(a)(16).

70. Defendant violated the CRLA by failing to adequately warn Plaintiff and members of the Sub-Class that DG-branded motor oils are not suitable for, and can harm, most vehicles on the road.

71. Defendant's actions as described herein were done with conscious disregard of Plaintiff's rights, and Defendant was wanton and malicious in its concealment of the same.

72. Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA because Defendant continues to sell the obsolete oil without adequate warnings and represent the DG-branded motor oils have characteristics and abilities which the products do not have, and has thus injured and continues to injure Plaintiff and the Sub-Class.

73. Plaintiff and other members of the putative Sub-Class have suffered injury in fact and have lost money as a result of Defendant's deceptive conduct. Plaintiff would not have purchased the DG-branded motor oil if he had known it was obsolete and not suitable for his vehicle, was not capable of protecting or lubricating his vehicle's engine, and could harm his vehicle.

74. Pursuant to *Civil Code* § 1780(a), Plaintiff seeks injunctive relief in the form of enjoining Defendant from (1) selling obsolete oil; (2) expressly or impliedly representing to current and potential purchasers of the DG-branded motor oils that the product is suitable for use in modern day vehicles manufactured after 1988, or in the case of SAE-30, after 1930; (3) providing inadequate warnings as to the harm the oil can cause. Plaintiff also seeks injunctive relief in the form of corrective advertising requiring Defendant to disseminate truthful, adequate disclosures and warnings about the actual uses (to the extent there are any) of the DG-branded motor oils.

75. Plaintiff and members of the Sub-Class shall be irreparably harmed if such an order is not granted.

76. On December 17, 2015, Plaintiff sent Defendant notice advising Defendant it violated and continues to violate, Section 1770 of the CLRA (the "Notice") concurrently with the filing of this complaint. The Notice complies in all respects with Section 1782 of the CLRA. Plaintiff sent the Notice by Certified U.S. Mail, return-receipt requested to Defendant at Defendant's principal place of business. Plaintiff's Notice advised Defendant they must correct, repair, replace or otherwise rectify its conduct and the product alleged to be in violation of Section 1770, including that Defendant cease falsely and misleadingly advertising its DG brand motor oil, provide corrective advertising and provide restitution to its customers who paid money to Defendant for said products. However, Plaintiff

advised Defendant that if it fails to respond to Plaintiff's demand within thirty (30) days of receipt of this notice, pursuant to Sections 1782(a) and (d) of the CLRA, Plaintiff will amend this complaint to seek restitution, actual damages and punitive damages.

## SECOND CAUSE OF ACTION
### Violations of False and Misleading Advertising Law (FAL)
*California Business and Professions Code* §17500, *et seq.*
(on behalf of the California Sub-Class)

77. Plaintiff herby incorporates by reference each of the proceeding allegations as if fully set forth herein.

78. At all times relevant hereto, Defendant was a "person" as that term is defined in *California Business and Professions Code* §17506.

79. *California Business and Professions Code* §17500 provides that "[i]t is unlawful for any person, firm, corporation or association with intent directly or indirectly to dispose of . . . personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state . . . any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ."

80. In its advertising for the obsolete DG-branded motor oil, Defendant makes false and misleading statements the product will "lubricate and protect your engine," deceptively places the products next to legitimate motor oils, and

Class Action Complaint                     27

fails to conspicuously or adequately warn consumers that the DG-branded motor oil is not suitable for most vehicles and can harm vehicles manufactured after 1988 (or 1930).

81. Defendant engaged in the deceptive conduct alleged hereinabove, which included deceptive and untrue representations regarding DG-branded motor oil made to induce the public to purchase the products.

82. Defendant's act of untrue and misleading advertising presents a continuing threat to members of the public because their advertisements induce consumers to purchase its motor oil, which are unsafe and not suitable for use in their automobiles, instead of other motor oils.

83. By its actions, Dollar General is disseminating uniform advertising concerning its products and services, which by its nature is unfair, deceptive, untrue, or misleading within the meaning of the *California Business and Professions Code* §17500, *et seq*. Such advertisements are likely to deceive, and continue to deceive, the consuming public for the reasons detailed above.

84. Defendant is aware that its advertising is false in that Defendant knows DG-branded motor oil is not suitable for most vehicles on the road today, is not capable of protecting or lubricating the engines of modern day vehicles and that it does not adequately warn consumers about the harmful effects of the product.

85. As a result of the violations of California law described above, Defendant has been, and will be, unjustly enriched by receipt of millions of dollars in monies

received from customers who have purchased and will continue to purchase obsolete and harmful motor oil from its stores which advertise and/or otherwise market in this State and this Country, and which materially misrepresent the quality of its motor oils.

86. These misrepresentations and non-disclosures by Dollar General of the material facts detailed above constitute false and misleading advertising and therefore constitute a violation of *California Business and Professions Code* §17500, *et seq.*

87. Plaintiff and other members of the putative Sub-Class have suffered injury in fact and have lost money as a result of Defendant's deceptive conduct. Plaintiff would not have purchased the DG-branded motor oil if he had known it was obsolete and not suitable for his vehicle, was not capable of protecting or lubricating his vehicle's engine, and could harm his vehicle.

88. Pursuant to *Business & Professions Code* §§ 17203 and 17535, Plaintiff and the members of the Sub-Class seek an order of this Court enjoining Defendant from engaging in the false advertising alleged herein in connection with the marketing and sale of DG-branded motor oil. Additionally, Plaintiff requests the money wrongfully acquired by Defendant by means of the unfair competition and false advertising alleged herein, and will request, in an amended complaint, an order awarding Plaintiff and the Sub-Class restitution.

**THIRD CAUSE OF ACTION**
Violations of the Unfair Competition Law (UCL)
**Unfair and Fraudulent Prongs**
*California Business and Profession Code §17200, et seq.*
(on behalf of the California Sub-Class)

89. Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

90. As alleged hereinabove, Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Defendant's actions as set forth herein.  Specifically, prior to the filing of this action, Plaintiff purchased DG-branded motor oil for his own personal use.  In so doing, he relied upon the false representations referenced above and believed the DG-branded motor oil was legitimate and suitable for use in his vehicle, and was not aware that it could actually harm his vehicle.

91. Defendant is aware that its conduct is likely to deceive reasonable consumers.

92. The misrepresentations, conduct and inadequate disclosures by Defendant are material and constitute an unfair and fraudulent business practice within the meaning of *Business & Professions Code* § 17200, *et seq.*

93. Defendant's business practices, as alleged herein, are unfair because: (1) the injury to the consumer is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) consumers could not

reasonably have avoided the information because Defendant intentionally mislead the consuming public by means of the claims, inadequate warnings and conduct with respect to DG-branded motor oil as set forth herein.

94. Defendant's business practices as alleged herein are fraudulent because they are likely to deceive customers into believing that DG-branded motor oil is actually useful for the purpose for which it is sold (to protect and lubricate vehicle engines), and it knows the warnings in small print on the back of products underneath misleading information about the product characteristics will deceive consumers into purchasing oil that has no use to them, is worthless, and which can actually harm their vehicles.

95. In addition, Defendant's use of various forms of advertising media to advertise, call attention to or give publicity to the sale of goods or merchandise which are not as represented constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of *Business & Professions Code* § 17200, *et seq.*

96. Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct of unfair competition since Defendant is marketing and selling DG-motor oil in a manner likely to deceive the public.

97. Defendant has peddled, and continues to peddle, its misrepresentations through a nationwide advertising campaign.

98. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

99. Plaintiff and the putative class members were misled into purchasing DG-motor oil by Defendant's deceptive and fraudulent conduct as alleged hereinabove.

100. Plaintiff and other putative Sub-Class Members were misled, and, because the misrepresentations and omissions were uniform and material, presumably believed that DG-motor oil was capable of lubricating and protecting modern day vehicle engines and would not harm them.

101. Pursuant to *Business & Professions Code* § 17203, Plaintiff and the members of the Sub-Class seek an order of this Court enjoining Defendant from engaging in the unfair competition alleged herein and ordering corrective advertising in connection with the sale of DG-motor oil. Additionally, Plaintiff will amend this complaint to request an order awarding Plaintiff and the Sub-Class restitution of the money wrongfully acquired by Defendant by means of the unfair competition alleged herein.

102. Plaintiff and other members of the putative Sub-Class have suffered injury in fact and have lost money as a result of Defendant's deceptive conduct. Plaintiff would not have purchased the DG-branded motor oil if he had known it was obsolete and not suitable for his vehicle, was not capable of protecting or lubricating his vehicle's engine, and could harm his vehicle.

**FOURTH CAUSE OF ACTION**
**Violations of the Unfair Competition Law (UCL)**
**Unlawful Conduct Prong**
*California Business and Profession Code* §17200, *et seq.*
**(on behalf of the California Sub-Class)**

103. Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

104. The actions of Defendant, as alleged herein, constitute illegal and unlawful practices committed in violation of *Business & Professions Code* § 17200, *et seq.*

105. Defendant has unlawfully marketed, advertised and sold its DG-branded motor oil because: (1) it is violating sections 1770(a)(5), 1770(a)(7), and 1770(a)(9) of the CLRA, *Civil Code* § 1750, *et seq.*; (2) it is violating *Business & Professions Code* § 17500; and it is violating California *Civil Code* sections 1792 & 1791.1(a).

106. Plaintiff and other putative class members were misled, and, because the misrepresentations and omissions were uniform and material, presumably believed that DG-motor oil was capable of lubricating and protecting modern day vehicle engines and would not harm them.

107. Pursuant to *Business & Professions Code* § 17203, Plaintiff and the members of the Sub-Class seek an order of this Court enjoining Defendant from engaging in the unfair competition alleged herein and corrective advertising in

connection with the sale of DG-motor oil.  Additionally, Plaintiff will amend this complaint to request an order awarding Plaintiff and the Sub-Class restitution of the money wrongfully acquired by Defendant by means of the unfair competition alleged herein.

108.  Plaintiff and other members of the putative Sub-Class have suffered injury in fact and have lost money as a result of Defendant's deceptive conduct. Plaintiff would not have purchased the DG-branded motor oil if he had known it was obsolete and not suitable for his vehicle, was not capable of protecting or lubricating his vehicle's engine, and could harm his vehicle.

## FIFTH CAUSE OF ACTION
### Violation of the Song-Beverly Consumer Warranty Act for Breach of Implied Warranty of Merchantability, §§ 1792 and 1791.1(a) of the California Civil Code
### (on behalf of the California Sub-Class)

109.  Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

110.  Plaintiff and members of the California Sub-Class are "retail buyers" within the meaning of §1791(b) of the California Civil Code.

111.  DG SAE 10W-30, DG SAE 10W-40 and DG SAE 30 are each a "consumer good" within the meaning of §1791(a) of the California Civil Code.

112.  Dollar General is a "distributor", "manufacturer", and/or "retailer" of DG SAE 10W-30, DG SAE 10W-40 and DG SAE 30 within the meaning of §1791(e), (j), and (l) of the California Civil Code.

113. Dollar General impliedly warranted to Plaintiff Sub-Class Members that DG SAE 10W-30, DG SAE 10W-40 and DG SAE 30 were "merchantable" as automotive motor oil within the meaning of §§ 1791.1(a) and 1792 of the California Civil Code.

114. Dollar General breached the implied warranty of merchantability to Plaintiff and Sub- Class Members because DG SAE 10W-30, DG SAE 10W-40 and DG SAE 30 (i) are not fit for the ordinary purpose for which they are used; (ii) are not adequately contained, packaged and labeled (*i.e.*, it lacked a sufficiently conspicuous caution label about the risk posed by the motor oil when used according to the directions on the product packaging); and (iii) do not conform to the promises or affirmations of fact made on the container or label (*i.e.*, that it was at all suitable to use).

115. Dollar General's failure to warn Plaintiff and Sub-Class Members adequately about the defective and unsafe quality of the product was willful.

116. As a proximate result of Dollar General's breach of the implied warranty of merchantability, Plaintiff and Sub-Class Members sustained damages including but not limited to the receipt of goods they would not have otherwise purchased and which have or are likely to cause damage to their automobiles if used in the manner intended.

117. Pursuant to §§ 1791.1(d) and 1794 of the California Civil Code, Plaintiff and the members of the California Sub-Class are entitled to damages, civil

penalties and other legal and equitable relief including, a right of reimbursement, as well as costs, expenses and attorneys' fees. Plaintiff will amend this complaint to seek damages.

## SIXTH CAUSE OF ACTION
### Violations of Song-Beverly Consumer Warranty Act for Breach of Implied Warranty of Fitness, §§ 1792.1 and 1791.1(b) of the California Civil Code (on behalf of the California Sub-Class)

118. Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

119. Plaintiff and members of the California Sub-Class are "retail buyers" within the meaning of §1791(b) of the California Civil Code.

120. DG SAE 10W-30, DG SAE 10W-40 and DG SAE 30 are each a "consumer good" within the meaning of §1791(a) of the California Civil Code.

121. Dollar General is a "distributor", "manufacturer", and/or "retailer" of DG SAE 10W-30, DG SAE 10W-40 and DG SAE 30 within the meaning of §1791(e), (j), and (l) of the California Civil Code.

122. Defendant specifically marketed DG SAE 10W-30, DG SAE 10W-40 and DG SAE 30 as motor oils that could be used in its customer's automobiles. At the time of the sale of the product, Defendants knew or should have known that Plaintiff and members of the California Sub-Class would (i) use DG SAE 10W-30, DG SAE 10W-40 and DG SAE 30 as motor oil and be exposed to these products'

potentially harmful qualities and (ii) reasonably rely on Dollar General's skill or judgment to select or furnish suitable goods.

123.  Plaintiff and members of the California Sub-Class did in fact purchase DG SAE 10W-30, DG SAE 10W-40 and DG SAE 30 with the particular purpose of using them as motor oil for their automobiles.

124.  Plaintiff and members of the California Sub-Class did in fact reasonably rely on Dollar General's skill or judgment to furnish suitable goods.

125.  By manufacturing, marketing, and distributing such products without an adequate warning, Dollar General breached its implied warranty of fitness for a particular purpose and is liable to Plaintiff and the California Sub-Class.

126.  Dollar General's failure to warn Plaintiff and members of the California Sub-Class adequately about the defective and unsafe quality of the product was willful.

127.  As a proximate result of Dollar General's breach of the implied warranty of fitness, Plaintiff and members of the California Sub-Class sustained damages, including but not limited to the receipt of goods whose they would not have otherwise purchased and which have or are likely to cause damage to their automobiles if used in the manner intended.

128. Pursuant to §§ 1791.1(d) and 1794 of the California Civil Code, Plaintiff and members of the California Sub-Class are entitled to and hereby seek damages, civil penalties and other legal and equitable relief including, a right of

reimbursement, as well as costs, expenses and attorneys' fees under this Cause of Action only.

### SEVENTH CAUSE OF ACTION
**Breach of Implied Warranty of Merchantability**
**(on behalf of the Class and Sub-Class)**

129. Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

130. Beginning at an exact date unknown to Plaintiff, but at least since four years prior to the filing date of this action, and as set forth above, Defendant represented to consumers, including Plaintiff and Class Members, by labeling/packaging and other means, that DG SAE 10W-30, DG SAE 10W-40, and DG SAE 30 are safe and suitable for use in the automobiles driven by Dollar General's customers.  Plaintiff and Class Members bought those goods from the Defendant.

131. Defendant was a merchant with respect to goods of the kind which were sold to Plaintiff and Class Members, and there was in the sale to Plaintiff and Class Members an implied warranty that those goods were merchantable.

132. However, Defendant breached that warranty implied in the contract for the sale of goods in that Dollar General's DG-branded motor oil is in fact not suitable for use in the vehicles driven by the vast majority, if any, of Dollar General's customers, as set forth in greater detail above.

133. As a result thereof Plaintiff and Class Members did not receive goods as impliedly warranted by Defendant to be merchantable.

134. As a proximate result of this breach of warranty by Defendant, Plaintiff and Class Members have been damaged.  Plaintiff will amend this complaint to seek damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### Breach of Implied Warranty of Fitness for a Particular Purpose
### (on behalf of the Class and Sub-Class)

135. Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

136. Beginning at an exact date unknown to Plaintiff, but at least since four years prior to the filing date of this action, and as set forth above, Defendant sold its DG-branded motor oils to Plaintiff and Class Members, who bought those goods from Defendant in reliance on Defendant's skill and judgment.

137. At the time of sale, Defendant had reason to know the particular purpose for which the goods were required, and that Plaintiff and Class Members were relying on Defendant's skill and judgment to select and furnish suitable goods so that there was an implied warranty that the goods were fit for this purpose.

138. However, Defendant breached the warranty implied at the time of sale in that Plaintiff and Class Members did not receive suitable goods, and the goods were not fit for the particular purpose for which they were required in that Dollar General's DG-branded motor oils are not safe or suitable for use in the vast

majority, if any, of vehicles driven by Dollar General's customers, as set forth in detail above.

139. As a proximate result of this breach of warranty by Defendant, Plaintiff and Class Members have been damaged. Plaintiff will amend this complaint to seek damages in an amount to be determined at trial.

## DEMAND/PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself and members of the Class and Sub-Class defined herein, prays for judgment and relief as follows:

A. An order certifying that this action may be maintained as a class action;

B. Compensatory damages as to the Sixth Cause of Action only;

C. Punitive Damages as to the Sixth Cause of Action only;

D. Restitution and disgorgement of the unlawful profits collected by the Defendant;

E. An order providing for declaratory and/or injunctive relief:

    1. Declaring that Defendant must provide accurate representations of the quality of the motor oil sold at its stores;

    2. Enjoining Defendant from continuing the deceptive practices alleged herein; and

    3. Granting other extraordinary equitable and/or injunctive relief as permitted by law, including specific performance, reformation and imposition of a constructive trust;

1    F.  Prejudgment and post-judgment interest at the prevailing legal rate;

2    G.  Plaintiff's attorneys' fees and costs of suit; and

3

4    H.  Such other and further relief as the Court may deem necessary and

5        appropriate.

6
                            **JURY DEMAND**
7

8        Plaintiff and Class Members, pursuant to Fed. R. Civ. P. 38(b), hereby

9    demand trial by jury on all issues so triable.

10

11   DATED: December 17, 2015                **MILSTEIN ADELMAN, LLP**

12                                           /s/ Gillian L. Wade
                                             Gillian L. Wade
13                                           Sara D. Avila
                                             10250 Constellation Boulevard
14                                           Suite 1400
                                             Los Angeles, CA 90067
15                                           Telephone: (310) 396-9600
                                             Facsimile: (310) 39609635
16

17                                           **KANNER & WHITELEY, L.L.C.**
                                             Allan Kanner, Esq.
18                                           Conlee Whiteley, Esq.
                                             Cynthia St. Amant, Esq.
19                                           701 Camp Street
                                             New Orleans, LA 70130
20                                           Telephone: (504) 524-5777
                                             Facsimile: (504) 524-5763
21
                                             *Attorneys for Plaintiff*
22

23

24

25

26

27

28

Class Action Complaint                       41

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

JOHN J. McCORMICK, III,
Individually and on behalf of all
others similarly situated,
28 Windemere Parkway
Phoenix, Maryland 21131

      Plaintiff,

      vs.

DOLGENCORP, LLC,
d/b/a DOLLAR GENERAL, CORPORATION,
a Kentucky limited liability company
100 Mission Ridge
Goodlettsville, TN 37072

SERVE ON: RESIDENT AGENT
CSC-Lawyers Incorporating Service Co.
7 St. Paul Street, Suite 820
Baltimore, Maryland 21202

      Defendant.

CIVIL ACTION NO._____

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff John J. McCormick, III ("Plaintiff"), individually and on behalf of all others similarly situated, makes the following allegations based on his personal knowledge of his own acts and, otherwise, upon information and belief based on investigation of counsel.

## NATURE AND SUMMARY OF THE ACTION

1. Plaintiff, by and through undersigned counsel, brings this action both on his own behalf and on behalf of the class defined below, comprised of all individuals similarly situated within the State of Maryland, to redress the unlawful and deceptive practices employed by Defendant, DOLGENCORP, LLC, (d/b/a Dollar General, Corporation), (hereinafter "Dollar General" or "Defendant") in connection with its marketing and sale of its company-branded motor oil sold in its stores.

2. Dollar General sells an entire line of company-branded motor oils (labeled "DG") that are obsolete and potentially harmful to its customers' automobiles by using deceptive and misleading tactics including the positioning of its line of obsolete motor oils immediately adjacent to the more expensive standard- and premium-quality motor oils manufactured by its competitors and failing to adequately warn its customers that its DG motor oil is unsuitable for use by the vast majority, if any, of its customers.

3. Dollar General's unlawful and deceptive business practices violate the Maryland Consumer Protection Act, Md. Code Ann., Commercial Law Article §13-101, *et seq.* (sometimes "MCPA"); and the contractual rights of consumers.

<u>**JURISDICTION AND VENUE**</u>

4. Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d), because members of the proposed Class are citizens of States different from Defendant's home states of Kentucky and Tennessee, there are more than 100 Class Members, and the amount-in-controversy exceeds $5,000,000 exclusive of interest and costs.

5. This Court has jurisdiction over Defendant because Defendant is a foreign corporation or association authorized to do business in Maryland and registered with the Maryland Secretary of State, does sufficient business in Maryland, and has sufficient minimum contacts with Maryland or otherwise intentionally avails itself of the laws and markets of Maryland, through the promotion, sale, marketing and distribution of its merchandise in Maryland, to render the exercise of jurisdiction by the Maryland courts permissible.

6. Venue is proper in this District under 28 U.S.C. §1391(b) and (c) because Defendant's improper conduct alleged in this complaint occurred in, was directed from, and/or emanated

from this judicial district, because Defendant has caused harm to Class Members residing in this district, and/or because the Defendant is subject to personal jurisdiction in this district.

7. In addition, Defendant operates over 12 stores in Maryland and has received substantial compensation from Maryland consumers who purchase goods from Defendant.

## PARTIES

8. Plaintiff John J. McCormick, III is an individual adult resident citizen of Baltimore County, Maryland and is a member of the Class alleged herein.

9. Plaintiff purchased Dollar General's DG SAE 10W-40 motor oil from Dollar General's store in Cockeysville, Maryland, in 2015 for his 2008 Ford 150 truck.

10. Defendant DOLGENCORP, LLC, d/b/a Dollar General Corporation, is incorporated under the laws of the State of Kentucky, with its headquarters located at 100 Mission Ridge, Goodlettsville, Tennessee. Dollar General maintains over 12 stores throughout the state of Maryland.

11. At all relevant times, Defendant produced, marketed, distributed and sold its obsolete DG-branded motor oil in its stores throughout the United States, including in the State of Maryland, utilizing deceptive and misleading marketing and sales practices to induce Plaintiff and Class Members into purchasing its obsolete motor oil for use in their modern-day vehicles knowing that its motor oil is obsolete and likely to cause damage to any such vehicle.

## FACTUAL ALLEGATIONS

12. Dollar General operates a chain of variety stores headquartered in Goodlettsville, Tennessee. As of January 2015, Dollar General operated over 12,198 stores in 43 states, with over 12 stores located in the State of Maryland.

3

13.  Dollar General is a discount retailer focused on low and fixed income consumers in small markets.  Dollar General's business model includes locating its stores in rural, suburban communities, and in its more densely populated markets, Dollar General's customers are generally from the neighborhoods surrounding the stores.  Dollar General's stores are located with the needs of its core customers (low and fixed income households) in mind.

14.  Dollar General offers basic every day and household goods, along with a variety of general merchandise at low prices to provide its customers with one-stop shopping opportunities generally in their own neighborhoods.

15.  In addition to offering name brand and generic merchandise, Dollar General manufactures and markets its own lines of inexpensive household products, which bear the designation "DG."  DG lines include "DG Auto," "DG Hardware" "DG Health" and "DG Office."

16.  Dollar General's DG Auto line consists of three types of obsolete motor oil: DG SAE 10W-30, DG SAE 10W-40 and DG SAE-30 that fail to protect and can actively damage, modern-day automobiles.

17.  Motor oils lubricate the engines of the automobiles driven by individuals.  Their main function is to reduce wear on an engine's moving parts.  Motor oils also inhibit corrosion, improve sealing and keep engines properly cooled.

18.  Motor oils have evolved in parallel with the automobiles they are meant to protect. Institutions like the Society of Automotive Engineers ("SAE") employ rigorous tests to ensure that motor oils meet evolving standards relating to, among other criteria, sludge buildup, temperature volatility, resistance to rust, resistance to foaming, resistance to oil consumption, homogeneity and miscibility.

4

19. Motor oils designed to protect engines from earlier eras do not protect, and can harm, modern-day engines. Thus, motor oil that would be suitable to use in an engine manufactured in the 1980's or earlier is not suitable for use in modern-day engines.

20. Dollar General engages in the unfair, unlawful, deceptive and fraudulent practice of marketing, selling and causing to be manufactured, obsolete motor oil without adequately warning that its product is unsuitable for, and can harm, the vehicles driven by the overwhelming majority of Dollar General's customers (and the public at large).

21. Dollar General misleads customers using product placement tactics and misleading product labels which obscure a critical fact from Dollar General's customers: Dollar General's motor oil is unfit for, and can harm, the vehicles driven by the vast majority, if not all, of its customers.

22. Dollar General's in-house motor oils use the same or similar SAE nomenclature on the front of its labels (*e.g.*, 10W-30, 10W-40, SAE 30) as do the other mainstream, non-harmful, and actually useful brands of motor oil sold by Dollar General and beside which Dollar General places its DG brand motor oil on its shelves.

23. Additionally, the front label of DG's SAE 10W-30 and SAE 10W-40 motor oils says, "Lubricates and protects your engine."

24. However, among the small print on the back label of Dollar General's motor oils is the statement that DG SAE 10W-30 and DG SAE 10W-40 are admittedly "not suitable for use in most gasoline powered automotive engines built after 1988" and "may not provide adequate protection against the build-up of engine sludge" and that DG SAE 30 is admittedly "not suitable for use in most gasoline powered automotive engines built after 1930," and its "use in modern engines may cause unsatisfactory engine performance or equipment harm."

5

25. Dollar General conceals this language by rendering it in small font and confining it to the product's back label.

26. Dollar General further conceals this language by placing it below a message that presents a misleading impression of the product. For the DG SAE 10W-30 and DG SAE 10W-40 products, that message reads, "SAE 10W-30 motor oil is an all-season, multi-viscosity, heavy duty detergent motor oil recommended for gasoline engines in older model cars and trucks. This oil provides oxidation stability, antiwear performance, and protection against deposits, rust and corrosion." For the DG SAE 30 product, that message reads: "DG Quality SAE 30 is a non-detergent motor oil designed for use in older engines where consumption may be high and economical lubricants are preferred."

27. Few, if any, Dollar General customers drive vehicles for which these products are safe, and the use of the term "older" is a relative term that does not inform a reasonable consumer that these motor oils are not safe for cars manufactured within the past *27 years*, or in the case of Dollar General's DG SAE 30, the past *85 years*.

28. Dollar General further disguises the obsolete and harmful nature of its motor oils with its positioning of these motor oils on its shelves in a misleading manner. Specifically, Dollar General places similar quantities of its in-house brand motor oils, DG SAE 10W-30, DG SAE 10W-40 and DG SAE 30, none of which are suitable for modern-day automobiles, adjacent to an array of other motor oils which are suitable for modern-day vehicles. The photograph below was taken at Dollar General's Cockeysville, Maryland store and illustrates how Dollar General effects this deception:

6



29.  As the photograph above illustrates, Dollar General places its in-house brand motor oils on the same shelves, in the same or similar quantities, as PEAK, Pennzoil, Castrol and other legitimate motor oils that are suitable for modern-day automobiles.  Each type of motor oil uses the SAE nomenclature on the front, *e.g.*, 10W-40.  The only apparent difference is the price, as Dollar General's motor oils are less expensive than the others.

30.  Defendant's product display conceals the fact that its DG-brand motor oils have an extremely obscure and limited use and are likely to cause damage to the engines of most of their customer's cars.  Defendant's product positioning and the deceptive label on the motor oil are likely to deceive reasonable consumers.

31.  Dollar General also fails to warn its customers adequately of the obsolete nature of DG-branded motor oils or of the dangers DG-branded motor oils pose to the very automobiles its customers are trying to protect by purchasing Dollar General's motor oil.  An adequate warning for Dollar General's obsolete motor oils would be displayed conspicuously and would inform Dollar General's customers of the appropriate uses, if any, of the various types of Dollar General motor oils.  But Dollar General provides its customers with no such conspicuous warnings.  Instead, the company buries the aforementioned statements on the back of its products in small type where customers are unlikely to encounter them.

32.  DG SAE 10W-30 bears the following labels on its front (left) and back (right):

8



The photograph below is a close-up of DG SAE 10W-30's back label, which includes the warnings, "IT IS NOT SUITABLE FOR USE IN MOST GASOLINE POWERED AUTOMOTIVE ENGINES BUILT AFTER 1988" and "IT MAY NOT PROVIDE ADEQUATE PROTECTION AGAINST THE BUILD-UP OF ENGINE SLUDGE":



33.  DG SAE 10W-40 bears the following labels on its front (left) and back (right):



The following photograph is a close-up of DG SAE 10W-40's back label, which includes the warnings, "IT IS NOT SUITABLE FOR USE IN MOST GASOLINE POWERED AUTOMOTIVE ENGINES BUILT AFTER 1988" and "IT MAY NOT PROVIDE ADEQUATE PROTECTION AGAINST THE BUILD-UP OF ENGINE SLUDGE":



34.   DG SAE 30 bears the following the labels on its front (left) and back (right):

10



The photograph below is a close-up of DG SAE 30's back label which includes the warnings, "IT IS NOT SUITABLE FOR USE IN MOST GASOLINE POWERED AUTOMOTIVE ENGINES BUILT AFTER 1930" and "USE IN MODERN ENGINES MAY CAUSE UNSATISFACTORY ENGINE PERFORMANCE OR EQUIPMENT HARM":



35.  Dollar General's entire line of low-cost motor oil is unsuitable for the modern-day vehicles driven by its customers and has no business being sold by, except that Dollar General is successfully deceiving a sufficient number of customers to make this fraudulent practice worthwhile.  It is unfair, unlawful, deceptive and fraudulent for Dollar General to distribute, market, and sell an entire line of motor oil that is unfit for, and presents concrete dangers to, the automobiles driven by the vast majority of its customers.

11

36.  Dollar General knew or should have known that its customers are being deceived by its marketing strategy based on the quantity of its obsolete DG motor oil sold compared to the limited number of automobiles for which these oils are appropriate.

37.  Maryland's consumer protection laws are designed to protect consumers from this type of false advertising and predatory conduct.

38.  Defendant's unfair and deceptive course of conduct victimized all purchasers of Dollar General's motor oil from Dollar General, throughout the country.

39.  As a direct and proximate result of Dollar General's deceptive and fraudulent practices, Plaintiff and the Class Members purchased a product they would not have otherwise purchased and have suffered and will continue to suffer economic damages.

40.  In addition, many Class Members have sustained damage to their automobiles as a result of the use of Dollar General's DG-branded motor oil and have suffered and will continue to suffer economic damage as a result.

41.  Plaintiff therefore brings the statutory and common law claims alleged herein to halt Dollar General's deceptive practices and to obtain compensation for the losses suffered by Plaintiff and all Class Members.

## CLASS ACTION ALLEGATIONS

42.  Plaintiff brings this class action pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of himself and all members of the following Class:

> **All persons in the State of Maryland who purchased Defendant's DG-branded motor oil, DG SAE 10W-30, DG SAE 10W-40 and/or DG SAE 30, for personal use and not for re-sale, since December 2011.**

12

43.   Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

44.   Specifically excluded from the proposed Class are Dollar General, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, successors, assigns, or other persons or entities related to or affiliated with Dollar General and/or its officers and/or directors, or any of them.   Also excluded from the proposed Class are the Court, the Court's immediate family and Court staff.

### FRCP 23(a) Factors

45.   **Numerosity.** Membership in the Class is so numerous that separate joinder of each member is impracticable.   The precise number of Class Members is unknown at this time but can be readily determined from Defendant's records.   Plaintiff reasonably estimates that there are thousands of persons in the Class.

46.   **Adequacy of Representation.** Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.   Plaintiff has retained counsel highly experienced in complex consumer class action litigation and intends to prosecute this action vigorously. Plaintiff is a member of the Class described herein and does not have interests antagonistic to, or in conflict with, the other members of the Class.

47.   **Typicality.** Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class purchased obsolete, harmful, deceptively labeled and deceptively marketed motor oil from Dollar General and were subjected to Defendant's common course of conduct.

48. **Existence and Predominance of Common Questions of Law and Fact.** There are numerous and substantial questions of law and fact common to all Class Members sufficient to satisfy Rule 23(a), and that control this litigation and predominate over any individual issues for purposes of Rule 23(b)(3). Included within the common questions are:

    a)  The amount of Defendant's in-house brand motor oil it sold relative to the other brands of oil on its shelves;

    b)  The amount of Defendant's in-house brand motor oil it sold relative to the limited number of automobiles for which these motor oils are appropriate;

    c)  Whether Defendant studied the effect of its product placement on its shelves;

    d)  Whether Defendant studied or tested its label and the effect of its labels on consumers' perceptions;

    e)  Whether Defendant studied the susceptibility of consumers;

    f)  The cost to Defendant to manufacture, distribute, market and sell its DG-branded motor oil compared to the revenue it received from its sales;

    g)  Whether Defendant misrepresented the safety and suitability of its DG-branded motor oil sold at its stores nationwide;

    h)  Whether Defendant's conduct of placing the obsolete Dollar General motor oil next to legitimate, useful motor oil is likely to deceive reasonable consumers;

    i)  Whether the warnings provided on the labels of Dollar General's motor oil were adequate;

    j)  Whether Defendant's conduct of hiding the warnings on the back label is likely to deceive reasonable consumers;

14

k)   Whether Defendant deliberately misrepresented or failed to disclose material facts to Plaintiff and Class Members regarding the obsolete and harmful nature of its DG-branded motor oil;

l)   Whether Dollar General's conduct, as alleged herein, is unlawful, unfair, or fraudulent under the provisions of the Maryland's Consumer Protection Act, Md. Code Ann., §13-101, *et seq.*;

m)  Whether the Class is entitled to injunctive relief prohibiting the  wrongful practices alleged herein and enjoining such practices in the future;

n)   Whether Plaintiff and members of the Class are entitled to restitution;

o)  Whether compensatory and consequential damages ought to be awarded to Plaintiff and Class Members;

p)   Whether Plaintiff and Class Members are entitled to attorneys' fees and expenses, and in what amount;

q)   The proper method for calculating damages and restitution classwide; and

r)   Whether Plaintiff and Class Members are entitled to declaratory and/or other equitable relief.

## FRCP 23(b)(2)

49.  Defendant has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole.  The prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying adjudications with respect to individual member of the Class that would establish incompatible standards of conduct for Defendant.

50.  Injunctive relief is necessary to prevent further fraudulent and unfair business practices

15

by Defendant.   Money damages alone will not afford adequate and complete relief, and injunctive relief is necessary to restrain Defendant from continuing to commit its deceptive, fraudulent and unfair policies.

### FRCP 23(b)(3)

51. **Common Issues Predominate:** As set forth in detail herein above, common issues of fact and law predominate because all of Plaintiff's MCPA and warranty claims are based on a deceptive common course of conduct. Whether Dollar General's conduct is likely to deceive reasonable consumers and breaches the implied warranties of merchantability and fitness for a particular purpose is common to all members of the Class and are the predominate issues, and Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims

52. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

      a) Given the size of the claims of individual Class Members, as well as the resources of Dollar General, few Class Members, if any, could afford to seek legal redress individually for the wrongs alleged herein;

      b) This action will permit an orderly and expeditious administration of the claims of Class Members, will foster economies of time, effort and expense and will ensure uniformity of decisions;

      c) Any interest of Class Members in individually controlling the prosecution of separate actions is not practical, creates the potential for inconsistent or contradictory judgments and would create a burden on the court system;

d) Without a class action, Class Members will continue to suffer damages, Defendant's violations of law will proceed without remedy, and Defendant will continue to reap and retain the substantial proceeds derived from its wrongful and unlawful conduct. Plaintiff and Class Members have suffered damages as a result of Defendant's unlawful and unfair conduct. This action presents no difficulties that will impede its management by the Court as a class action.

53. **Notice to the Class:** Notice can be accomplished by publication for most Class Members, and direct notice may be possible for those who are members of Dollar General's rewards program (if any). Further, publication notice can be easily targeted to Dollar General customers because Defendant only sells the subject motor oil in its own stores.

54. The Class members have been monetarily damaged and suffered injury in fact as a result of Dollar General's misconduct, in that each member purchased Dollar General's useless and harmful motor oil.

## CLAIMS FOR RELIEF

55. Based on the foregoing allegations, Plaintiff's claims for relief include the following:

## FIRST CAUSE OF ACTION
### VIOLATION OF MARYLAND CONSUMER PROTECTION ACT
### Md. Code Ann., Commercial Law Article §13-101, *et seq.*

56. Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

57. Plaintiff brings this claim under Md. Code Ann., Commercial Law Article §13-101, *et seq.*, the MCPA, on behalf of himself and members of the Class, who were subject to Defendant's above-described unfair and deceptive conduct.

17

58. As alleged hereinabove, Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and lost money or property as a result of Defendant's actions as set forth herein.

59. Plaintiff and members of the Class are buyers as defined by Md. Code Ann., Commercial Law Article §2-103(1)(a), *et seq.* The DG-branded motor oils are consumer goods within the meaning of Md. Code Ann., Commercial Law Article §9-102(a)(23).

60. This cause of action is asserted on behalf of a subclass of the putative Class, comprised of those members who purchased DG-branded motor oil within four (4) years of the commencement of this action.

61. Specifically, as described herein, Dollar General made the following representations, expressly or by implication to Plaintiff and Class Members about the deceptively labeled motor oil: (i) that Dollar General's DG-branded motor oil was suitable for use in its customers' automobiles; (ii) that Dollar General's DG-branded motor oil was safe to use in its customers' automobiles; and (iii) that Dollar General's DG-branded motor oil was of similar quality as the other motor oils beside which Dollar General's DG-branded motor oils were positioned on the shelves in Defendant's stores.

62. These representations were materially misleading.

63. Defendant violated and continues to violate the MCPA by engaging in the following practices proscribed by §13-301 of the Commercial Law Article in transactions with Plaintiff and members of the Class, which were intended to result in, and did result in, the sale of DG-branded motor oils:

        a.   By representing that DG branded motor oils "lubricate[] and protect[] your engine," placing the DG-branded motor oils on shelves next to legitimate

18

motor oils intended for use in modern day vehicles, and failing to adequately warn consumers of the harm their products can cause, Defendant is representing that DG-branded motor oils have characteristics and uses which do they not have;

b.  By representing that DG branded motor oils "lubricate[] and protect[] your engine," and placing the DG-branded motor oils on shelves next to legitimate motor oils intended for use in modern day vehicles, and failing to adequately warn consumers of the harm their products can cause, Defendant is representing that DG-branded motor oils are of a particular standard, quality, or grade, when they are of another;

c.  By representing that DG branded motor oils "lubricate[] and protect[] your engine," and placing the DG-branded motor oils on shelves next to legitimate motor oils intended for use in modern day vehicles, and failing to adequately warn consumers of the harm their products can cause, Defendant is "[a]dvertising goods... with intent not to sell them as advertised;"

d.  By engaging in false and misleading advertising for its sale of the obsolete DG-branded motor oil. Defendant makes false and misleading statements the product will "lubricate and protect your engine," deceptively places the products next to legitimate motor oils, and fails to conspicuously or adequately warn consumers that the DG-branded motor oil is not suitable for most vehicles and can harm vehicles manufactured after 1988 (or 1930); and

e.  By engaging in the deceptive conduct alleged hereinabove, Defendant made deceptive and untrue representations regarding DG-branded motor oil for the

19

purpose of inducing the public to purchase the products.

f.  By engaging in the deceptive conduct alleged hereinabove, Defendant's untrue
and misleading advertising presents a continuing threat to members of the public
because their advertisements induce consumers to purchase its motor oil, which
are unsafe and not suitable for use in their automobiles, instead of other motor
oils.

64. Defendant violated the MPCA by failing to adequately warn Plaintiff and members of
the Class that DG-branded motor oils are not suitable for, and can harm, most vehicles on the
road.

65. Defendant's actions as described herein were done with conscious disregard of
Plaintiff's rights, and Defendant was wanton and malicious in its concealment of the same.

66. Defendant's wrongful business practices constituted, and constitute, a continuing
course of conduct in violation of the MPCA because Defendant continues to sell the obsolete
oil without adequate warnings and represent the DG-branded motor oils have characteristics
and abilities which the products do not have, and has thus injured and continues to injure
Plaintiff and the Class.

67. Plaintiff and other members of the putative Class have suffered injury in fact and have
lost money as a result of Defendant's deceptive conduct. Plaintiff would not have purchased
the DG-branded motor oil if he had known it was obsolete and not suitable for his vehicle, was
not capable of protecting or lubricating his vehicle's engine, and could harm his vehicle.

68. As a result of the violations of Maryland law described above, Defendant has been, and
will be, unjustly enriched by receipt of millions of dollars in monies received from customers
who have purchased and will continue to purchase obsolete and harmful motor oil from its stores

which advertise and/or otherwise market in this State and this Country, and which materially misrepresent the quality of its motor oils.

69. Plaintiff and other members of the putative Class have suffered injury in fact and have lost money as a result of Defendant's deceptive conduct. Plaintiff would not have purchased the DG-branded motor oil if he had known it was obsolete and not suitable for his vehicle, was not capable of protecting or lubricating his vehicle's engine, and could harm his vehicle.

70. Defendant's business practices, as alleged herein, are unfair because: (1) the injury to the consumer is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) consumers could not reasonably have avoided the information because Defendant intentionally mislead the consuming public by means of the claims, inadequate warnings and conduct with respect to DG-branded motor oil as set forth herein.

71. Defendant's business practices as alleged herein are fraudulent because they are likely to deceive customers into believing that DG-branded motor oil is actually useful for the purpose for which it is sold (to protect and lubricate vehicle engines), and it knows the warnings in small print on the back of products underneath misleading information about the product characteristics will deceive consumers into purchasing oil that has no use to them, is worthless, and which can actually harm their vehicles.

72. In addition, Defendant's use of various forms of advertising media to advertise, call attention to or give publicity to the sale of goods or merchandise which are not as represented constitutes unfair, deceptive, untrue or misleading advertising, and an unlawful trade practice within the meaning of the MPCA.

73. Plaintiff and the putative class members were misled into purchasing DG-motor oil by Defendant's deceptive and fraudulent conduct as alleged hereinabove.

21

74. Plaintiff and other members of the putative Class have suffered injury in fact and have lost money as a result of Defendant's deceptive conduct. Plaintiff would not have purchased the DG-branded motor oil if he had known it was obsolete and not suitable for his vehicle, was not capable of protecting or lubricating his vehicle's engine, and could harm his vehicle.

75. Plaintiff requests an order awarding Plaintiff and the Class restitution of the money wrongfully acquired by Defendant by means of the unfair and deceptive trade practices alleged herein.

## SECOND CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability, § 2-314
### of the Maryland Uniform Commercial Code

76. Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

77. Plaintiff and members of the Class are each a "buyer" within the meaning of §2-103(1)(a) of the Commercial Law Article, Md. Ann. Code.

78. DG SAE 10W-30, DG SAE 10W-40 and DG SAE 30 are each a "consumer good" within the meaning of §13-101(d) of the Commercial Law Article.

79. Dollar General is a "seller" of DG SAE 10W-30, DG SAE 10W-40 and DG SAE 30 within the meaning of §2-103(1)(d) and a "merchant" within the meaning of §2-104 of the Commercial Law Article.

80. Beginning at an exact date unknown to Plaintiff, but at least since four years prior to the filing date of this action, and as set forth above, Defendant represented to consumers, including Plaintiff and Class Members, by labeling/packaging and other means, that DG SAE 10W-30, DG SAE 10W-40, and DG SAE 30 are safe and suitable for use in the automobiles driven by Dollar General's customers. Plaintiff and Class Members bought those goods from the Defendant.

22

81. Defendant was a merchant with respect to goods of the kind which were sold to Plaintiff and Class Members, and there was in the sale to Plaintiff and Class Members an implied warranty that those goods were merchantable.

82. However, Defendant breached that warranty implied in the contract for the sale of goods in that Dollar General's DG-branded motor oil is in fact not suitable for use in the vehicles driven by the vast majority, if any, of Dollar General's customers, as set forth in greater detail above.

83. As a result thereof Plaintiff and Class Members did not receive goods as impliedly warranted by Defendant to be merchantable.

84. As a proximate result of this breach of warranty by Defendant, Plaintiff and Class Members have been damaged in an amount to be determined at trial.

85. Pursuant to §§ 2-714 and 2-715 of the Commercial Law Article, Plaintiff and the members of the Class are entitled to damages, and other legal and equitable relief including, a right of reimbursement, as well as costs, expenses and attorneys' fees.

86. As required by § 2-607 of the Commercial Law Article, Plaintiff gave written notice to Dollar General of its breach of its implied warranty of merchantability relating to the goods he purchased.

### THIRD CAUSE OF ACTION
### Breach of Implied Warranty of Fitness for a Particular Purpose, § 2-315
### of the Maryland Uniform Commercial Code

87. Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

88. Beginning at an exact date unknown to Plaintiff, but at least since four years prior to the filing date of this action, and as set forth above, Defendant sold its DG-branded motor oils to

23

Plaintiff and Class Members, who bought those goods from Defendant in reliance on Defendant's skill and judgment.

89. At the time of sale, Defendant had reason to know the particular purpose for which the goods were required, and that Plaintiff and Class Members were relying on Defendant's skill and judgment to select and furnish suitable goods so that there was an implied warranty that the goods were fit for this purpose.

90. However, Defendant breached the warranty implied at the time of sale in that Plaintiff and Class Members did not receive suitable goods, and the goods were not fit for the particular purpose for which they were required in that Dollar General's DG-branded motor oils are not safe or suitable for use in the vast majority, if any, of vehicles driven by Dollar General's customers, as set forth in detail above.

91. As a proximate result of this breach of warranty by Defendant, Plaintiff and Class Members have been damaged in an amount to be determined at trial.

92. As required by § 2-607 of the Commercial Law Article, Plaintiff gave written notice to Dollar General of its breach of its implied warranty of fitness for a particular purpose with regard to the goods he purchased.

## FOURTH CAUSE OF ACTION
### Unjust Enrichment

93. Plaintiff and Class Members have conferred substantial benefits on the Defendant by purchasing its useless and harmful motor oil, and Dollar General has consciously and willingly accepted and enjoyed these benefits.

94. Defendant knew or should have known that consumers' payments for its obsolete and harmful motor oil were given and received with the expectation that the motor oil would lubricate and protect consumers' engines and would not be harmful to their vehicles.

24

95.  Because of the fraudulent misrepresentations, concealments, and other wrongful activities described herein, Defendant has been unjustly enriched by its wrongful receipt of Plaintiff's and Class Members' monies.

96.  As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and Class Members have suffered damages in an amount to be determined at trial.

97. Defendant should be required to account for and disgorge all monies, profits and gains which they have obtained or will unjustly obtain in the future at the expense of consumers.

## DEMAND/PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself and members of the Class defined herein, prays for judgment and relief as follows:

A.  An order certifying that this action may be maintained as a class action;

B.  An award to Plaintiff and Class Members of full restitution;

C.  An order enjoining Defendant from engaging in the unfair and/or deceptive acts or practices, as set forth in this Complaint  and requiring Defendant to disseminate corrective advertising;

D.  Compensatory damages;

E.  Restitution and disgorgement of the unlawful profits collected by the Defendant;

F.  An order providing for declaratory and/or injunctive relief:

1.  Declaring that Defendant must provide accurate representations of the quality of the motor oil sold at its stores;

2.  Enjoining Defendant from continuing the deceptive practices alleged herein; and

3.   Granting other extraordinary equitable and/or injunctive relief as permitted by
     law, including specific performance, reformation and imposition of a
     constructive trust;

G.  Prejudgment and post-judgment interest at the prevailing legal rate;

H.  Plaintiff's attorneys' fees and costs of suit; and

I.   Such other and further relief as the Court may deem necessary and appropriate.

**JURY DEMAND**

Plaintiff and Class Members, pursuant to Fed. R. Civ. P. 38(b), hereby demand trial by
jury on all issues so triable.

December 23, 2015

**STEPHEN J. NOLAN, CHARTERED**
Stephen J. Nolan, Esquire    Bar No. 0578
Courthouse Commons, Suite A-1
222 Bosley Avenue
Baltimore, Maryland 21204
Telephone: (410) 821-8600
Facsimile: (410) 821-8613
steve@sjnolan.com

Motions for Admission Will be filed on
Behalf of
**KANNER & WHITELEY, L.L.C.**
Allan Kanner, Esquire
Conlee Whiteley, Esquire
Cynthia St. Amant, Esquire
701 Camp Street
New Orleans, Louisiana 70130
Telephone (504) 524-5777
Facsimile:(504) 524-5763

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**WILLIAM FLINN,**
*Plaintiff*

V.

**SUMMONS IN A CIVIL CASE**

**DOLGENCORP, LLC,**
*Defendant*

CASE
NUMBER: **1:15–CV–08713–RMB–AMD**

TO: *(Name and address of Defendant):*

DOLGEN CORP, LLC.
100 Mission Ridge
Goodlettsville,TN,37072

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States Agency, or an office or employee of the United States described in Fed. R. civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

**WILLIAM T. WALSH**
CLERK

**JAIME KASSELMAN**
(By) DEPUTY CLERK

ISSUED ON 2015–12–18 10:34:57, Clerk
USDC NJD

## RETURN OF SERVICE

| Service of the Summons and complaint was made by me(1) | DATE |
|---|---|
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served: _____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and
   discretion then residing therein.

☐ Name of person with whom the summons and complaint were left:_____

☐ Returned unexecuted:_____

☐ Other (specify) :_____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information
contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____       _____
           Date             *Signature of Server*

                                *Address of Server*

JS 44 (Rev. 12/12) Case 1:15-cv-08713-RMB-AMD Document 1-2 Filed 12/17/15   Page 1 of 2 PageID: 32

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
William Flinn, Individually and on Behalf of All Others Similarly Situated,

**DEFENDANTS**
Dolgencorp, LLC (d/b/a Dollar General Corporation)

**(b)** County of Residence of First Listed Plaintiff    Gloucester
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Davidson/Sumner
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, Email and Telephone Number)*
Clark Law Firm
811 Sixteenth Avenue, Belmar, NJ 07719
info@clarklawnj.com; 732-443-0333

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☐ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government
Defendant

☒ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                    *and One Box for Defendant)*

|                                              | PTF | DEF |                                                          | PTF | DEF |
|----------------------------------------------|-----|-----|----------------------------------------------------------|-----|-----|
| Citizen of This State                        | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State                     | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country      | ☐ 3 | ☐ 3 | Foreign Nation                                           | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|----------|-------|---|--------------------|-----------|----------------|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original Proceeding
☐ 2  Removed from State Court
☐ 3  Remanded from Appellate Court
☐ 4  Reinstated or Reopened
☐ 5  Transferred from Another District *(specify)*
☐ 6  Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C 1391(a)

Brief description of cause:
Defendant Dollar General misleading and/or deceiving consumers in purchasing obsolete store brand motor oil

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE   12-17-15

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a)  **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b)  **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c)  **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.  **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; NOTE: federal question actions take precedence over diversity cases.)

III.  **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.  **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.  **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

VI.  **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553   Brief Description: Unauthorized reception of cable service

VII.  **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.  **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

# UNITED STATES DISTRICT COURT

# NEW JERSEY DISTRICT COURT

| | |
|---|---|
| WILLIAM FLINN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | Case No. _____ |
| Plaintiff, | |
| v. | CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL |
| DOLGENCORP, LLC; (d/b/a DOLLAR GENERAL, CORPORATION) | |
| Defendant. | |

Plaintiff William Flinn ("Plaintiff"), individually and on behalf of all others similarly situated, makes the following allegations based on his personal knowledge of his own acts and, otherwise, upon information and belief including based on investigation of counsel.

## NATURE AND SUMMARY OF THE ACTION

1. Plaintiff, by and through undersigned counsel, brings this action both on his own behalf and on behalf of the class defined below, comprised of all individuals similarly situated within the State of New Jersey, to redress the unlawful commercial practices employed by Defendant, DOLGENCORP, LLC, (d/b/a Dollar General, Corporation), (hereinafter "Dollar General" and/or "Defendant") at its stores whereby Dollar General: a) sells an entire line of company-branded motor oils (labeled "DG") that are obsolete and potentially harmful to its customers' automobiles; b) positions this line of obsolete motor oils immediately adjacent to the standard- and premium-quality motor oils sold by its competitors; and c) fails to adequately warn its customers that DG motor oil is unsuitable for the vast majority, if not all, of its customers to use in their modern day automobiles.

1

2.  Dollar General engaged in these unlawful, unconscionable, misrepresentative, fraudulent and/or deceptive business practices in connection with the sale and/or advertisement of this merchandise in violation of New Jersey's Consumer Fraud Act ("CFA"), *N.J.S.A.* 56:8-1 *et seq.*, the Uniform Commercial Code and certain common law standards.

## PARTIES

3.  Plaintiff William Flinn is an individual adult resident citizen of the City of Woodbury, County of Gloucester, State of New Jersey and is a member of the Class alleged herein.

4.  Plaintiff purchased Dollar General's 10W-30 store brand motor oil from Dollar General's store in Woodbury, New Jersey, on approximately three occasions over the course of 2014 and 2015 for his 2003 Dodge Ram 2500.

5.  Defendant DOLGENCORP, LLC, d/b/a Dollar General, Corporation, is incorporated under the laws of the State of Kentucky, with its headquarters located at 100 Mission Ridge, Goodlettsville, Tennessee.

6.  At all relevant times, Defendant produced, marketed, advertised and sold its obsolete DG-branded motor oil in its stores throughout the United States, including in the State of New Jersey, utilizing unconscionable, deceptive, fraudulent, false and/or misrepresentative sales practices in connection with the sale, marketing and/or deceptive placement of this merchandise. These practices were employed with the intent to deceive Plaintiff and Class Members into purchasing its obsolete motor oil for use in their modern-day vehicles, knowing that its motor oil is obsolete and likely to cause damage to any such vehicle.

7.  As such, purchasers of DG-branded motor oil have suffered ascertainable losses as a result of Defendant's unconscionable, deceptive, fraudulent, and misrepresentative acts.

2

8. Defendant maintains approximately 76 stores throughout the State of New Jersey. As such, New Jersey courts maintain a significant interest in regulating Defendant's conduct which emanates from New Jersey, yet deceives consumers nationwide.

## JURISDICTION AND VENUE

9. Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d), because members of the proposed Class are citizens of states different from Defendant's home state, there are more than 100 Class Members, and the amount-in-controversy exceeds $5,000,000 exclusive of interest and costs.

10. This Court has jurisdiction over the Defendant named herein because Defendant is a foreign corporation or association authorized to do business in New Jersey and registered with the New Jersey Secretary of State, does sufficient business in New Jersey, and has sufficient minimum contacts with New Jersey and/or otherwise intentionally avails itself of the laws and markets of New Jersey, through the promotion, sale, marketing and distribution of its merchandise in New Jersey, to render the exercise of jurisdiction by the New Jersey courts permissible.

11. Venue is proper in this District under 28 U.S.C. §1391(b) because Defendant's improper conduct alleged in this complaint occurred in, was directed from, and/or emanated from this judicial district, because Defendant has caused harm to Class Members residing in this district, and/or because the Defendant is subject to personal jurisdiction in this district

12. In addition, Defendant operates approximately 76 stores in New Jersey and has received substantial compensation from New Jersey consumers who purchase goods from Defendant.

3

## FACTUAL ALLEGATIONS

13. Dollar General operates a chain of variety stores headquartered in Goodlettsville, Tennessee. As of January 2015, Dollar General operated over 12,198 stores in 43 states, including 76 stores in the State of New Jersey.

14. Dollar General is a discount retailer focused on low and fixed income consumers in small markets. Dollar General's business model includes locating its stores in rural, suburban communities, and in its more densely populated markets. Dollar General's customers are generally from the neighborhoods surrounding the stores. Dollar General's stores are located with the needs of its core customers (low and fixed income households) in mind.

15. Dollar General offers basic, every day and household goods, along with a variety of general merchandise at low prices to provide its customers with one-stop shopping opportunities, generally in their own neighborhoods.

16. In addition to offering name brand and generic merchandise, Dollar General manufactures and markets its own lines of inexpensive household products, which bear the designation "DG." DG lines include "DG Auto," "DG Hardware" "DG Health" and "DG Office."

17. Dollar General's DG Auto line consists of three types of obsolete motor oils: DG SAE 10W-30, DG SAE 10W-40 and DG SAE-30 that fail to protect and can actively damage, modern day automobiles.

18. Motor oils are supposed to properly lubricate the engines of the automobiles driven by individuals. Their main function is to reduce wear on an engine's moving parts. Motor oils also inhibit corrosion, improve sealing and keep engines properly cooled.

4

19. Motor oils have evolved in parallel with the automobiles they are meant to protect. Institutions like the Society of Automotive Engineers ("SAE") employ rigorous tests to ensure that motor oils meet evolving standards relating to, among other criteria, sludge buildup, temperature volatility, resistance to rust, resistance to foaming, resistance to oil consumption, homogeneity and miscibility.

20. Motor oils designed to protect engines from earlier eras do not protect, and can harm, modern-day engines. Thus, motor oil that would be suitable to use in an engine manufactured in the 1980's or earlier is not suitable for use in modern-day engines.[1]

21. Defendant engaged in unconscionable, unlawful, deceptive, sharp and/or fraudulent acts and/or omissions in connection with the sale of less expensive obsolete motor oil that is unsuitable for, and can harm, the vehicles driven by the overwhelming majority of Dollar General's customers.

22. Dollar General also engages in the unfair, unlawful, deceptive, sharp and/or fraudulent sales practice of concealing the obsolete and harmful nature of its motor oil from its customers through deceitful product placement tactics and misleading labels which obscure a critical fact from Dollar General's customers:  Dollar General's motor oil is unfit for and wholly obsolete in the vehicles driven by the vast majority, if not all, of its customers.

23. Dollar General's in-house motor oils use the same or similar SAE nomenclature on the front of its labels (e.g., 10W-30, 10W-40, SAE 30) as do the other mainstream, non-harmful, and actually useful brands of motor oil sold by Dollar General.  Dollar General places its DG brand motor oil next to these brand motor oil products on its shelves.

---

[1] *See, e.g.* The Petroleum Quality Institute of America, *Some Engine Oils Currently on the Shelves Can Harm Your Engine*, http://www.pqiamerica.com/apiserviceclass.htm.

24.   Additionally, the front label of DG's SAE 10W-30 and SAE 10W-40 motor oils says, "Lubricates and protects your engine."

25. The labels of all "DG" brand motor oils also contain a prominent checkered flag on the front, suggestive of auto racing and winning.

26.   However, among the small print on the back label of Dollar General's motor oils is the statement that DG SAE 10W-30 and DG SAE 10W-40 are admittedly "not suitable for use in most gasoline powered automotive engines built after 1988" and "may not provide adequate protection against the build-up of engine sludge" and that DG SAE 30 is admittedly "not suitable for use in most gasoline powered automotive engines built after 1930," and its "use in modern engines may cause unsatisfactory engine performance or equipment harm."

27.   Dollar General conceals this language by rendering it in small font and confining it to the product's back label, which is not visible when the products are on the store shelves.

28.   Dollar General further conceals this language by placing it below a misleading and contradictory message regarding the product.  For the DG SAE 10W-30 and DG SAE 10W-40 products, that message reads: "SAE 10W-30 motor oil is an all-season, multi-viscosity, heavy duty detergent motor oil recommended for gasoline engines in older model cars and trucks.  This oil provides oxidation stability, antiwear performance, and protection against deposits, rust and corrosion."  For the DG SAE 30 product, that message reads: "DG Quality SAE 30 is a non-detergent motor oil designed for use in older engines where consumption may be high and economical lubricants are preferred."

29.   Few, if any, Dollar General customers drive vehicles for which these products are safe, and the use of the term "older" is a relative term that does not inform a reasonable consumer that

these motor oils are not safe for cars manufactured within the past 27 years, or in the case of

Dollar General's DG SAE 30, the past 85 years.

30. Dollar General further disguises the obsolete and harmful nature of its motor oils with its

positioning of these motor oils on its shelves in a misleading manner.   Specifically, Dollar

General places similar quantities of its in-house brand motor oils, DG SAE 10W-30, DG SAE

10W-40 and DG SAE 30, none of which is suitable for modern-day automobiles, adjacent to an

array of other motor oils which are suitable for modern-day vehicles.   The photograph below

illustrates how Dollar General effects this deception:



As the photograph above illustrates, Dollar General places its in-house brand motor oils on the same shelves, in the same or similar quantities, as PEAK, Pennzoil, Castrol and other legitimate motor oils that are suitable for modern-day automobiles. Each type of motor oil uses the SAE nomenclature and checkered flag on the front, e.g., 10W-40. The bottle also contains the same kind of shape to allow an easy pour into a car engine. The only apparent difference being the price, as Dollar General's motor oils are less expensive than the others.

31. Defendant's product display and packaging conceals the fact that these DG-brand motor oils have an extremely obscure and limited use and are likely to cause damage to the engines of most of the consumers purchasing motor oil. Instead, by using this deceptive method of product placement, Dollar General misleads consumers into thinking that the quality of the Dollar General-brand motor oils is the same or similar to that of the other motors oils sold by Dollar General.

32. Dollar General also fails to warn its customers adequately of the obsolete nature of DG-branded motor oils or of the dangers DG-branded motor oils pose to the very automobiles its customers are trying to protect by purchasing Dollar General's motor oil. An adequate warning for Dollar General's obsolete motor oils would be displayed conspicuously and would inform Dollar General's customers of the appropriate uses, if any, of the various types of Dollar General motor oils. But Dollar General provides its customers with no such conspicuous warnings. Instead, the company buries the aforementioned statements on the back of its products in small type where customers are unlikely to encounter them.

33. DG SAE 10W-30 bears the following labels on its front (left) and back (right):

8



The photograph below is a close-up of DG SAE 10W-30's back label, which includes the warnings, "IT IS NOT SUITABLE FOR USE IN MOST GASOLINE POWERED AUTOMOTIVE ENGINES BUILT AFTER 1988" and "IT MAY NOT PROVIDE ADEQUATE PROTECTION AGAINST THE BUILD-UP OF ENGINE SLUDGE":



34. DG SAE 10W-40 bears the following labels on its front (left) and back (right):



The following photograph is a close-up of DG SAE 10W-40's back label, which includes the warnings, "IT IS NOT SUITABLE FOR USE IN MOST GASOLINE POWERED AUTOMOTIVE ENGINES BUILT AFTER 1988" and "IT MAY NOT PROVIDE ADEQUATE PROTECTION AGAINST THE BUILD-UP OF ENGINE SLUDGE":



35. DG SAE 30 bears the following the labels on its front (left) and back (right):



The photograph below is a close-up of DG SAE 30's back label which includes the warnings, "IT IS NOT SUITABLE FOR USE IN MOST GASOLINE POWERED MOTORED ENGINES BUILT AFTER 1930" and "USE IN MODERN ENGINES MAY CAUSE UNSATISFACTORY ENGINE PERFORMANCE OR EQUIPMENT HARM":



36. Dollar General's entire line of low-cost motor oil is unsuitable for the modern-day vehicles driven by its customers and has no business being sold by Dollar General in this deceptive manner, except that Dollar General is successfully deceiving a sufficient number of customers to make this fraudulent practice worthwhile. It is unfair, unlawful, deceptive, sharp and/or fraudulent for Dollar General to distribute, market, and sell an entire line of motor oil in this manner that is unfit for, and presents concrete dangers to, the automobiles driven by the vast majority of its customers.

11

37.   Dollar General knew or should have known that its customers are being deceived by its marketing strategy based on the quantity of its obsolete DG motor oil sold compared to the limited number of automobiles for which these oils are appropriate.

38. New Jersey consumer protection laws are designed to protect consumers from this type of deceptive advertising and predatory conduct.

39. Defendant's unfair, unlawful, unconscionable, misleading and deceptive course of conduct victimized all purchasers of Dollar General's motor oil from Dollar General, throughout the country and in the State of New Jersey.

40. Defendant's scheme to deceive and defraud consumers violates the New Jersey's Consumer Fraud Act ("CFA"), *N.J.S.A.* 56:8-1, *et seq.*, and consumers' contractual rights.

41. As a direct and proximate result of Dollar General's deceptive, unlawful, misleading, fraudulent and unconscionable practices, Plaintiff and the Class Members purchased a product they would not have otherwise purchased and have suffered and will continue to suffer economic damages. Indeed, the products are useless in all but the most outdated automotive engines. Had Plaintiff and Class Members not been deceived by Defendant they would not have purchased this virtually obsolete oil.

42.  In addition, many Class Members have sustained damage to their automobiles as a result of the use of Dollar General's DG-branded motor oil and have suffered and will continue to suffer economic damage as a result.

43. Plaintiff therefore brings the statutory and common law claims alleged herein to halt Dollar General's deceptive, unconscionable, unlawful, fraudulent, sharp and misleading practices and to obtain compensation for the losses suffered by Plaintiff and all Class Members.

## CLASS ACTION ALLEGATIONS

44.  Plaintiff brings this class action pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal

Rules of Civil Procedure on behalf of himself and all members of the following Class:

> **All persons in the State of New Jersey who purchased Defendant's DG-branded motor oil, DG SAE 10W-30, DG SAE 10W-40 and/or DG SAE 30, for personal use and not for re-sale, since December 2009.**

45.  Subject to additional information obtained through further investigation and discovery,

the foregoing definition of the Class may be expanded or narrowed by amendment or amended

complaint.

46.  Specifically excluded from the proposed Class are Dollar General, its officers, directors,

agents, trustees, parents, children, corporations, trusts, representatives, employees, successors,

assigns, or other persons or entities related to or affiliated with Dollar General and/or its officers

and/or directors, or any of them.  Also excluded from the proposed Class are the Court, the

Court's immediate family and Court staff.

### FRCP 23(a) Factors

47. **Numerosity.** Membership in the Class is so numerous that separate joinder of each

member is impracticable.  The precise number of Class Members is unknown at this time but can

be readily determined from Defendant's records.  Plaintiff reasonably estimates that there are

tens of thousands of persons in the Class.

48. **Adequacy of Representation.** Plaintiff will fairly and adequately represent and protect

the interests of the members of the Class.  Plaintiff has retained counsel highly experienced in

complex consumer class action litigation and intends to prosecute this action vigorously.

Plaintiff is a member of the Class described herein and does not have interests antagonistic to, or

in conflict with, the other members of the Class.

49. **Typicality.** Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class purchased obsolete, harmful, deceptively labeled and deceptively marketed motor oil from Dollar General and were subjected to Defendant's common course of conduct.

50. **Existence and Predominance of Common Questions of Law and Fact.** There are numerous and substantial questions of law and fact common to all Class Members that control this litigation and predominate over any individual issues. Included within the common questions are:

    a) The amount of Defendant's in-house brand motor oil it sold relative to the other brands of oil on its shelves;

    b) The amount of Defendant's in-house brand motor oil it sold relative to the limited number of automobiles for which these motor oils are appropriate;

    c) Whether Defendant studied the effect of its product placement on its shelves;

    d) Whether Defendant studied or tested its label and the effect of its labels on consumers' perceptions;

    e) Whether Defendant studied the susceptibility of consumers;

    f) The cost to Defendant to manufacture, distribute, market and sell its DG-branded motor oil compared to the revenue it received from its sales;

    g) Whether Defendant misrepresented the safety and suitability of its DG-branded motor oil sold at its stores nationwide;

    h) Whether Defendant's conduct of placing the obsolete Dollar General motor oil next to legitimate, useful motor oil is likely to deceive reasonable consumers;

i) Whether the warnings provided on the labels of Dollar General's motor oil were adequate;

j) Whether Defendant's conduct of hiding the warnings on the back label is likely to deceive reasonable consumers;

k) Whether Defendant deliberately misrepresented or failed to disclose material facts to Plaintiff and Class Members regarding the obsolete and harmful nature of its DG-branded motor oil;

l) Whether Defendant knowingly concealed, suppressed, omitted or failed to disclose the harmful and obsolete nature of its company-branded motor oil with the intent Plaintiff and Class Members rely on this concealment, suppression or omission in connection with their purchase of the "DG" brand motor oil;

m) Whether Defendant's conduct and scheme to defraud Plaintiff and Class Members is unlawful, unfair, fraudulent, misleading and/or deceitful;

n) Whether the acts of Defendant violated, inter alia, the *New Jersey Consumer Fraud Act, N.J.S.A.* 56:8-1, *et seq.* and/or any other applicable state, common and statutory law;

o) Whether the Class is entitled to injunctive relief prohibiting the wrongful practices alleged herein and enjoining such practices in the future;

p) Whether Plaintiff and members of the Class are entitled to restitution;

q) Whether compensatory, consequential and punitive damages ought to be awarded to Plaintiff and Class Members;

r) Whether Plaintiff and Class Members are entitled to treble damages;

s) Whether Plaintiff and Class Members are entitled to attorneys' fees and expenses, and in what amount;

t) The proper method for calculating damages and restitution classwide; and

u) Whether Plaintiff and Class Members are entitled to declaratory and/or other equitable relief.

## FRCP 23(b)(2)

51.  Defendant has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole.  The prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendant.

52.  Injunctive relief is necessary to prevent further fraudulent and unfair business practices by Defendant.  Money damages alone will not afford adequate and complete relief, and injunctive relief is necessary to restrain Defendant from continuing to commit its deceptive, fraudulent and unfair policies.

## FRCP 23(b)(3)

53. Common Issues Predominate: As set forth in detail herein above, common issues of fact and law predominate because all of Plaintiff's NJCFA and warranty claims are based on a deceptive common course of conduct. Whether Dollar General's conduct is likely to deceive reasonable consumers and breaches the implied warranties of merchantability and fitness for a particular purpose is common to all members of the Class and are the predominate issues, and Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims

16

54. Superiority. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

    a) Given the size of the claims of individual Class Members, as well as the resources of Dollar General, few, if any, could afford to seek legal redress individually for the wrongs alleged herein;

    b) This action will permit an orderly and expeditious administration of the claims of Class Members, will foster economies of time, effort and expense and will ensure uniformity of decisions;

    c) Any interest of Class Members in individually controlling the prosecution of separate actions is not practical, creates the potential for inconsistent or contradictory judgments and would create a burden on the court system;

    d) Without a class action, Class Members will continue to suffer damages, Defendant's violations of law will proceed without remedy, and Defendant will continue to reap and retain the substantial proceeds derived from its wrongful and unlawful conduct. Plaintiff and the Classes have suffered damages as a result of Defendant's unlawful and unfair conduct. This action presents no difficulties that will impede its management by the Court as a class action.

55. Certification is also warranted under Rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief and declaratory relief appropriate with respect to the Class as a whole.

56. The claims asserted herein are applicable to all individuals and entities throughout New Jersey who purchased obsolete, harmful, deceptively labeled and deceptively marketed motor oil

from Dollar General. The State of New Jersey has sufficient state interest through a significant contact or aggregation of contacts to the claims asserted by each member of the Class so that the choice of New Jersey law is not arbitrary or unfair.

<u>CLAIMS FOR RELIEF</u>

Based on the foregoing allegations, Plaintiff's claims for relief include the following:

<u>COUNT I</u>
**Violations of the New Jersey Consumer Fraud Act ("NJCFA")**
*N.J.S.A.* 56:8-1, *et seq.*

57. Plaintiff hereby incorporates by reference each of the preceding paragraphs as though fully set forth herein.

58. The NJCFA declares unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby[.]" *N.J.S.A.* 56:8-2.

59. Defendant has violated the New Jersey Consumer Fraud Act, *inter alia*:

  a) Engaging in unconscionable commercial practices as well as deceptive, fraudulent, false and misrepresentatives acts in connection with the sale and marketing of its store brand "DG" motor oil to consumers by, among other things, placing their obsolete product on the same shelf as legitimate motor oils; and

  b) Engaging in unconscionable commercial practices as well as deceptive, fraudulent, false and misrepresentatives acts in connection with the sale and

18

marketing of its store brand "DG" motor oil to consumers by inadequately, inconspicuously and deceptively failing to sufficiently warn consumers of the dangers of their "DG" brand motor oil; and

c) Engaging in unconscionable commercial practices as well as deceptive, fraudulent, false and misrepresentatives acts in connection with the sale and marketing of its store brand "DG" motor oil to consumers by deceptively and/or misleadingly packaging their product in the same manner as legitimate motor oils, including an SAE label comparable to legitimate motor oils, using misleading and/or deceptive language, including but not limited to "[l]ubricates and protects your engine" on their packaging as well as including a checkered flag on their product, likely to mislead and/or deceive an average consumer into believing the product was safe and effective in their modern day automobile; and

d) Knowingly concealing, hiding/suppressing, keeping from consumers, omitting or leaving out the material fact that "DG" motor oil is virtually obsolete and/or harmful to consumers' engines, with the purpose and/or intent that others would rely on this concealment, suppression and/or omission in connection with the purchase of "DG" brand motor oil.

60. Plaintiff and Class Members are "persons" as defined by *N.J.S.A.* 56:8-1(d).

61. Defendant engaged in the "sale" of "merchandise" when they offered for sale and in fact sold to Plaintiff and Class Members the "DG" store brand oil. *N.J.S.A.* 56:8-1(c)&(e).

62. By placing this obsolete oil on the shelf next to legitimate motor oils that are

19

suitable for modern-day automobiles, Defendant attempted to directly and/or indirectly induce consumers to purchase "DG" brand oil through "advertisement" of this product as defined by *N.J.S.A. 56:8-1(a)*.

63. As a result of Defendant's unconscionable, deceptive, fraudulent, false and/or misrepresentatives practices, Plaintiff and Class Members were caused to suffer an ascertainable loss in that they were caused to purchase obsolete and potentially harmful motor oil they otherwise would not have purchased but for Defendant's unlawful actions.

64. Pursuant to *N.J.S.A. 56:8-8*, *N.J.S.A. 56:8-13* and *N.J.S.A. 56:8-19* Plaintiff and the Class are entitled to (a) actual damages; (b) treble damages; (c) declaratory and injunctive relief, including but not limited to an Order requiring Defendant to cease the acts of unfair competition alleged herein; (d) an Order enjoining Defendant from continuing to utilize its deceptive scheme; (e) full restitution and disgorgement by Defendant of all profits received by Defendant as a result of its wrongful practices; (d) interest at the highest rate allowable by law; (e) costs; and (f) the payment of their attorneys' fees.

65. Dollar General's business acts and practices are unlawful, in part, because they violate *N.J.S.A. 56:8-1, et seq.*, which prohibits, among other things, deceptive conduct that is misleading to an average consumer. Here, Defendant violated the NJCFA by engaging in conduct in connection with the sale and/or marketing of "DG" brand motor oil which was capable of misleading and likely to mislead an average consumer into purchasing motor oil they believe to be useful and safe in their automobile.

66. By placing obsolete "DG" store brand motor oil on the shelf next to and in similar packaging as legitimate motor oils that are suitable for modern-day automobiles, and/or providing only an inconspicuous and unlikely to be noticed/read warning that its product was

obsolete, Defendant engaged in unlawful conduct capable of misleading the average consumer into purchasing their "DG" brand oil. As a result of this unlawful conduct, Plaintiff and Class Members suffered an ascertainable loss in purchasing this deceptively marketed and obsolete product.

67. Defendant's actions are unjust, unfair, materially depart from the standards of good faith, honesty in fact and fair dealing in the public marketplace and are thereby unconscionable under the NJCFA. By placing obsolete brand oils, with little more than a fine print and inconspicuous warning, on their shelves next to and in the same kind of packaging as legitimate oils, Defendant engaged in unfair and bad faith tactics of advertising and selling their "DG" brand oil as if it were a legitimate and useful oil for modern day engines. This conduct in connection with the sale and/or advertisement of "DG" brand motor oil caused Plaintiff and Class Members to suffer an ascertainable loss.

68. Plaintiff reserves the right to identify additional provisions of the law violated by Dollar General as further investigation and discovery warrants.

69. Dollar General's business acts and practices are also unlawful under *N.J.S.A.*56:8-1, *et seq.*, because the unconscionable, fraudulent, misrepresentative, deceptive acts perpetuated by Defendant in connection with the sale of their "DG" brand motor oil had the capacity to mislead and/or deceive and in fact, did mislead and/or deceive Plaintiff and Class Members. Defendant's unlawful acts caused Plaintiff and Class Members to suffer an ascertainable loss including but not limited to the loss of monies spent on the purchase price of "DG" brand motor oils, monies which would have been spent on legitimate oils, and monies spent to repair and/or replace engine and/or automotive damage. Dollar General has no justification for its unlawful acts other than to

increase, beyond what Dollar General would have otherwise realized, its market share and revenue from sale of the motor oil.

70. Dollar General's conduct lacks reasonable and legitimate justification. Dollar General has benefited from such conduct and practices while Plaintiff and Class Members have been misled as to the nature and integrity of the motor oil and have suffered ascertainable losses, namely, the purchase price of this deceptively marketed and sold obsolete motor oil as well as ascertainable losses in the damage to property affected by this obsolete oil.

71. In addition, Dollar General's *modus operandi* constitutes a sharp practice in that Dollar General knew and should have known that consumers care about maintaining their vehicles and the performance of the vehicles, but are unlikely to be aware of and/or able to detect the means by which Dollar General was conducting itself in a manner adverse to its commitments and its customers' interests. Dollar General is therefore in violation of the unconscionable prong of the NJCFA.

72. While Dollar General conveyed the impression to reasonable consumers that its motor oil was safe to use in their automobiles, in actuality, its motor oil is not suitable for use in the vehicles driven by the vast majority of its customers.

73. By engaging in the above-described unconscionable, fraudulent, unfair, deceptive misleading and misrepresentative acts and practices, Dollar General has committed one or more unlawful acts within the meaning of the NJCFA. Plaintiff and Class Members have suffered an ascertainable loss and have lost money and property, including, but not limited to, the expected utility and performance of their vehicle and/or the difference between the price Class Members paid and the actual worth of the product had Dollar General disclosed the true nature of its motor oil.

74. Plaintiff and Class Members have suffered injuries as a direct and proximate result of Dollar General's unlawful acts regarding the sale and advertisement of Defendant's "DG" brand motor oil.

## Count II
### Violations of the New Jersey Consumer Fraud Act (NJCFA)
### Acts of Omission
### *N.J.S.A.* 56:8-1, *et seq.*

75. Plaintiff herby incorporates by reference each of the proceeding allegations as if fully set forth herein.

76. Plaintiff and Class Members have suffered an ascertainable loss and have lost money or property as a result of Dollar General's violation of *N.J.S.A.* 56:8-1, *et seq.*

77. By placing nothing more than an inconspicuous, fine print warning obscured by other text on the back of their "DG" brand motor oil, packaged in containers similar to legitimate and useful motor oils, Defendant knowingly concealed, hid/suppressed, kept from being known/omitted, left out, or did not mention the fact that their motor oil was obsolete and not suitable for modern day engines. This act of omission was committed purposely and/or with the intent that consumers would rely on that concealment/suppression and/or omission in connection with the sale and/or advertisement of the "DG" brand motor oil.

78. Dollar General knowingly concealed knowledge from consumers that their product was obsolete by placing their product on the same shelf as legitimate motor oils and including only a fine print, inconspicuous warning on the back of their product that the product was in fact obsolete. Defendant had a duty to reveal the fact that their motor oil was obsolete to consumers in a conspicuous and fair manner. This concealing, secreting, hiding from observation, covering

23

from sight and preventing discovery of kept Plaintiff and Class Members in ignorance of the true nature of Defendant's "DG" brand motor oil.

79. Defendant had a duty to disclose the material characteristics of its motor oil because it (i) knew about these characteristics at the time that Plaintiff and other Class Members purchased Dollar General's motor oil; (ii) had exclusive knowledge of material facts that were not known to Plaintiff; and (iii) made representations regarding the quality of its motor oil without disclosing that its motor oil was not suitable for the vehicles driven by most of its customers.

80. Defendant's knowing concealment of the obsolete nature of "DG" brand motor oils was perpetuated with the intent that Plaintiff and Class Members rely on the facts as communicated to them, i.e., that the product was on the same shelf as legitimate motor oils and not conspicuously advertised as obsolete in modern engines, without having the opportunity to also consider the concealed fact that the "DG" brand motor oil was not suitable in most all modern day engines.

81. As a result of Defendant's concealment and/or acts of omission, Plaintiff and Class Members were caused to suffer an ascertainable loss when they purchased "DG" brand motor oil.

82. Defendant further hid/suppressed the obsolete nature of "DG" brand motor oil from consumers by placing the product on the same shelf as legitimate motor oils in similarly dressed up containers and failing to conspicuously or meaningfully warn Plaintiff and the Class Members of the true nature of their store brand motor oil.

83. By placing the "DG" brand motor oil on the shelf as legitimate motor oils and failing to meaningfully warn of the product's true nature, Defendant prevented and/or subdued Plaintiff and Class Members from ascertaining the true obsolete nature of "DG" brand motor oil.

24

84. This suppression was accomplished knowingly and with the intent that Plaintiff and Class Members rely on the facts as communicated to them, *i.e.*, that the product was on the same shelf as legitimate motor oils and not conspicuously advertised as obsolete in modern engines, and be prevented from considering the hid/suppressed fact that the "DG" brand motor oil was not suitable in most all modern day engines.

85. The acts of omission complained of herein caused Plaintiff and Class Members to suffer ascertainable losses in connection with the sale and advertisement of "DG" brand motor oil.

<u>Count III</u>
Violations of the New Jersey Consumer Fraud Act (NJCFA)
False Advertising
*N.J.S.A. 56:8-1, et seq.*

86. Plaintiff herby incorporates by reference each of the proceeding allegations as if fully set forth herein.

87. By placing their obsolete oil on the shelf next to legitimate motor oils suitable for modern-day automobiles, Defendant attempted to directly and/or indirectly induce consumers to purchase "DG" brand oil.   This act was unconscionable, deceptive, fraudulent, false and misrepresentative and was thereby unlawful under the NJCFA.

88. This act was done with the purpose of misleadingly marketing the "DG" obsolete oil as comparable to same shelf legitimate motor oils.  This act was designed to attract public attention and directly and or indirectly was an attempt by publication, dissemination, solicitation, endorsement, circulation or in any other way to induce Plaintiff and Class Members to purchase "DG" brand motor oil.

89. Defendant's act of unconscionable, deceptive, fraudulent, false and/or misrepresentative advertising and/or marketing presents a continuing threat to members of the public because their advertisements induces and has the potential to induce consumers to purchase its motor oil,

25

which is unsafe and not suitable for use in their automobiles, instead of other legitimate motor oils.

90. By its actions, Dollar General is engaging in unfair, deceptive, untrue, or misleading acts in connection with the advertisement and/or marketing of their "DG" brand motor oil within the meaning of the NJCFA. Such advertisements are likely to mislead and/or deceive, have the potential to mislead and/or deceive and continue to mislead and/or deceive, the consuming public for the reasons detailed above.

91. The above-described false, misleading and deceptive advertising Dollar General disseminated continues to have a likelihood to deceive in that Dollar General has failed to disclose that its motor oil is not suitable for use in the vehicles driven by the overwhelming majority of its customers.

92. In making and disseminating the statements alleged herein, Dollar General should have known its practices were deceptive and/or misleading in violation of *N.J.S.A.* 56:8-1, *et seq.* Plaintiff and Class Members based their decisions to purchase the obsolete motor oil in substantial part on Dollar General's advertisement, product placement, misrepresentations and omitted material facts. The revenues to Dollar General attributable to products sold in those false and misleading advertisements amount to millions of dollars. Plaintiff and Class Members were injured in fact, suffered an ascertainable loss and lost money or property as a result of Defendant's actions in relation to the advertisement of "DG" brand motor oil.

## COUNT IV
### Violation of *N.J.S.A.* 12A:2A-212 for
### Breach of Implied Warranty of Merchantability,

93.   Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

94.   Plaintiff and Class Members who purchased "DG" brand motor oils were and are purchasers of goods.

95.   Dollar General is and was a "merchant" with respect to "DG" brand motor oils which were sold to Plaintiff and Class Members. Encompassed in the sale to Plaintiff and other consumers of this merchandise was an implied warranty that the "DG" brand motor oil was merchantable within the meaning of *N.J.S.A.* 12A:2-314.

96.   Dollar General breached the implied warranty of merchantability to Plaintiff and Class Members because DG SAE 10W-30, DG SAE 10W-40 and DG SAE 30 (i) are not fit for the ordinary purpose for which they are used; (ii) are not adequately contained, packaged and labeled (*I.e.*, it lacked a sufficiently conspicuous caution label about the risk posed by the motor oil when used according to the directions on the product packaging); and (iii) do not conform to the promises or affirmations of fact made on the container or label (*i.e.*, that it was at all suitable to use).

97.   Dollar General's failure to warn Plaintiff and Class Members adequately about the defective and unsafe quality of the product was willful.

98.   As a proximate result of Dollar General's breach of the implied warranty of merchantability, Plaintiff and Class Members sustained damages including but not limited to the receipt of goods they would not have otherwise purchased and which are likely to cause damage to their automobiles if used in the manner intended.

27

99.   Pursuant to *N.J.S.A.* 12A:2-714 and 2-715, Plaintiff and Class Members are entitled to damages, civil penalties and other legal and equitable relief including, a right of reimbursement, as well as costs, expenses and attorneys' fees.

Count V
Violations of *N.J.S.A.* 12A:2-315 for Breach of Implied Warranty
of Fitness For a Particular Purpose

100.   Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

101.   Plaintiff and Members of the Class purchased "DG" brand motor oils based on representations, lack thereof, product placement and other means.

102.   Dollar General is and was a seller with respect to "DG" brand motor oils which were sold to Plaintiff and Class Members.

103.   Defendant specifically marketed DG SAE 10W-30, DG SAE 10W-40 and DG SAE 30 as motor oils that could be used in its customer's automobiles.   At the time of the sale of the product, Defendant knew or should have known that Plaintiff and Class Members would use DG SAE 10W-30, DG SAE 10W-40 and DG SAE 30 as motor oil in their modern day motor vehicles and be exposed to these products' potentially harmful qualities.   Defendant also knew, or should have known, Plaintiff and the Class would reasonably rely on Dollar General's skill or judgment to select or furnish suitable goods.

104.   Plaintiff and Class Members did in fact purchase DG SAE 10W-30, DG SAE 10W-40 and DG SAE 30 with the particular purpose of using them as motor oil for their automobiles.

105.   Plaintiff and Class Members did in fact reasonably rely on Dollar General's skill or judgment to furnish suitable goods.

28

106. By manufacturing, marketing, and distributing such products without an adequate warning and by deceptively placing on the shelf next to legitimate motor oils, Dollar General breached its implied warranty of fitness for a particular purpose and is liable to Plaintiff and the Class.

107. Dollar General's failure to warn Plaintiff and Class Members adequately about the defective and unsafe quality of the product was willful.

108. As a proximate result of Dollar General's breach of the implied warranty of fitness for a particular purpose, Plaintiff and Class Members sustained damages, including but not limited to the receipt of goods they would not have otherwise purchased and which are likely to cause damage to their automobiles if used in the manner intended.

109. Pursuant to *N.J.S.A.* 12A:2-714 and 2-715 of the New Jersey Civil Code, Plaintiff and Class Members are entitled to damages, civil penalties and other legal and equitable relief including, a right of reimbursement, as well as costs, expenses and attorneys' fees.

## COUNT VI
### Unjust Enrichment

110. Plaintiff incorporates the above allegations by reference as if fully set forth herein.

111. A benefit has been conferred upon Dollar General by Plaintiff and Class Members in their purchase of Defendant's DG-branded motor oil.

112. If consumers were aware that Dollar General's DG-branded motor oil was not suitable for use in their vehicles, they would not have purchased the product.

113. Under principles of equity and good conscience, Dollar General should not be permitted to retain revenue that it acquired by virtue of its unlawful conduct. All funds, revenue, and benefits received by Dollar General rightfully belong to Plaintiff and Class Members, which Dollar General has unjustly received as a result of its actions.

## DEMAND/PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself and members of the Class defined herein, prays for judgment and relief as follows:

A. An order certifying that this action may be maintained as a class action;

B. Award to Plaintiff and Class Members full restitution;

C. Treble Damages;

D. An order enjoining Defendant from engaging in the unlawful, unconscionable, fraudulent, deceptive, misleading, misrepresentative acts or practices, as set forth in this Complaint;

E. Compensatory damages;

F. Punitive Damages;

G. Restitution and disgorgement of the unlawful profits collected by the Defendant;

H. An order providing for declaratory and/or injunctive relief:

    1. Declaring that Defendant must provide accurate representations of the quality of the motor oil sold at its stores;

    2. Enjoining Defendant from continuing the deceptive practices alleged herein; and

    3. Granting other extraordinary equitable and/or injunctive relief as permitted by law, including specific performance, reformation and imposition of a constructive trust;

I. Prejudgment and post-judgment interest at the prevailing legal rate;

J. Plaintiff's attorneys' fees and costs of suit; and

K. Such other and further relief as the Court may deem necessary and appropriate.

30

## JURY DEMAND

Plaintiff and Class Members, pursuant to Fed. R. Civ. P. 38(b), hereby demand trial by jury.

Respectfully submitted,
**CLARK LAW FIRM, PC**

By:    _[signature]_
**GERALD H. CLARK, ESQ.**

Gerald H. Clark, Esq. NJ Bar No.048281997
William S. Peck, Esq. NJ Bar No. 020821999
Mark W. Morris, Esq. NJ Bar No. 118292015
811 Sixteenth Avenue
Belmar, New Jersey 07719
Phone: (732) 443-0333
Fax (732) 894-9647

**KANNER & WHITELEY, LLC**

Allan Kanner, Esq. NJ Bar No. 033981980
Cynthia St. Amant, Esq. (*Pro Hac Vice*)
701 Camp Street
New Orleans, LA 70130
Tel: (504) 524-5777
Fax: (504) 524-5763

*Attorneys for Plaintiff*

Dated: December 17, 2015

Complaint.docx